Joseph R. Saveri (State Bar No. 130064)
Nicomedes S. Herrera (State Bar No. 275332)
Jiamin Chen (*pro hac vice* to be submitted)
Demetrius X. Lambrinos (State Bar No. 246027)
James Dallal (State Bar No. 277826)
V Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           nherrera@saverilawfirm.com
           jchen@saverilawfirm.com
           dlambrinos@saverilawfirm.com
           jdallal@saverilawfirm.com
           vprentice@saverilawfirm.com

*Counsel for Plaintiff*
*Five Rivers Electronic Innovations LLC*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| DEPENDABLE COMPONENT SUPPLY CORP. | Case No. 5:18-cv-00198-EJD |
| v. | |
| MURATA MANUFACTURING CO., LTD., *et al.* | |
| POWERWEB, INC., *et al.* | Case No. 5:18-cv-00349-EJD |
| v. | |
| MURATA MANUFACTURING CO., LTD., *et al.* | |
| LIFETIME SERVICE CENTER, INC. | Case No. 5:18-cv-00511-EJD |
| v. | |
| MURATA MANUFACTURING CO., LTD., *et al.* | |
| CAMBRIDGE CAPITAL CORPORATION | Case No.  5:18-cv-00686-EJD |
| v. | |
| MURATA MANUFACTURING CO., LTD., *et al.* | |

## I.   INTRODUCTION

Five Rivers Electronic Innovations LLC ("Five Rivers"), the plaintiff in *Five Rivers Elec. Innovations LLC v. KEMET Corp.*, 4:18-cv-00851-KAW (N.D. Cal., filed Feb. 8, 2018), opposes the motion of Bleichmar, Fonti, & Auld LLP ("BFA") and Hausfeld LLP ("Hausfeld") (the "Motion") to be appointed interim co-lead class counsel for the direct purchaser plaintiffs. Dkt. No. 21. Counsel for Five Rivers asked counsel for the movants here to take their Motion off calendar so that the litigation could proceed in an orderly fashion. That request was denied, requiring this opposition.

The Motion is premature. Appointing class counsel while this complex litigation remains in its initial organizational phase would contradict basic case management principles and deprive interested parties of the opportunity to be heard. A pending motion seeks to relate the *Five Rivers* action to the *Capacitors* antitrust litigation now proceeding before Judge Donato.[1] Many of the defendants that BFA and Hausfeld name have not yet been served or appeared. In the interest of judicial economy and efficiency, interested parties should have the opportunity to appear and address case management issues and the appointment of interim class counsel by consent, rather than burdening the Court with unnecessary filings and motion practice.

Consistent with the practice of Judges in this District in antitrust cases of this type, and as recommended by the Manual for Complex Litigation, Five Rivers respectfully requests that the Court set an initial scheduling or status conference to address initial case management issues and set a schedule for any necessary motion practice. *See* Manual for Complex Litigation, Fourth, §§ 11.1 and 11.2 (recommending that the court schedule an initial conference with counsel generally within 30 to 60 days after filing, "before any adversary activity begins, such as filing of motions or discovery requests, and the order setting the conference may require that all such activity be deferred.").

Counsel in the *Five Rivers* action intend to seek appointment as Interim Lead Counsel under Fed. R. Civ. P. 23(g) at the appropriate time. These counsel conducted an exhaustive investigation over many months before filing their complaint, and they have extensive expertise in cases of this type, including in this District.

---

[1] On February 13, 2018, Five Rivers filed an administrative motion to relate all Inductors cases to *In re Capacitors Antitrust Litig.*, 3:14-cv-03264-JD (N.D. Cal.). *See* 3:14-cv-03264-JD, at Dkt. # 2067.

## II.     PROCEDURAL BACKGROUND

Counsel for Five Rivers, the Joseph Saveri Law Firm ("JSLF"), began investigating the Inductors market for cartel activity and obtained Inductors market reports by no later than August 2016.[2] JSFL has engaged top economic consultants and Japanese language attorneys to conduct the most comprehensive pre-discovery investigation possible. Moreover, the courts have entrusted JSLF with an important lead role in prosecuting claims involving the larger passive electronics market. JSLF currently serves as sole Interim Lead Counsel for the direct purchaser class in *In re Capacitors Antitrust Litig.*, 3:14-cv-03264-JD (N.D. Cal.). The other counsel signing this opposition—including Girard Gibbs LLP; Stueve Siegel  Hanson LLP; Cera LLP; Berger & Montague, P.C.; Heins Mills & Olson, P.L.C.; Levin Sedran & Berman; and Fine, Kaplan and Black, R.P.C.—are each widely respected leaders of the plaintiffs' bar. They have successfully led and resolved hundreds of antitrust cases. They joined JSLF in filing the *Five Rivers* action because this group of expert antitrust attorneys have efficiently and expertly prosecuted claims on behalf of the class of direct purchasers in *Capacitors*. Together, these firms have efficiently worked together and have already obtained remarkable results on behalf of direct purchasers in that case.

In fact, both BFA and Hausfeld acknowledge in their respective complaints the importance of *Capacitors* to this action. As those complaints correctly allege, the investigation of the United States Department of Justice Antitrust Division ("DOJ") in this case arose out of the same underlying investigation in the *Capacitors* case. *See, e.g., Dependable Component Supply Corp. v. Murata Mfg. Co., Ltd.*, 3:18-cv-00198, at Dkt. #1, ¶¶ 7, 9; *Powerweb, Inc. v. Murata Mfg. Co., Ltd.*, 3:18-cv-00349, at Dkt. #1, ¶¶ 11-14.

In its complaint, Five Rivers alleges similar facts to those at issue in *Capacitors*, namely: (a) the same type of collusive conduct (b) by some of the same managers and employees (c) of many of the same defendants (d) that harmed a substantially overlapping group of direct purchaser plaintiffs (e) in

---

[2] BFA neglected to inform the Court that Mr. Matthew Weiler—an attorney at BFA referenced on page 9 of the Motion—was privy to JSLF's investigation. Mr. Weiler previously was an associate at JSLF and received some investigatory material prior to his departure from JSLF in June 2017.

2

the same way (f) during the same period of time as. *See Five Rivers Elec. Innovations LLC v. KEMET Corp.*, 4:18-cv-00851-KAW, at Dkt. #1, ¶¶ 2, 5, 8-12, 88, 89, 105, 106, 108, 111, 112, 120.

In particular, Five Rivers alleges that the defendants named in its complaint ("Defendants")—including a number of Defendants BFA and Hausfeld do not mention—manufacture, sell, and distribute both capacitors and Inductors (in many instances to the same customers). *Id*. Five Rivers further alleges that some of the same managers and employees who conspired and fixed the prices of capacitors also conspired and fixed the price of Inductors using the same or similar means and methods. *Id*. For example, our investigation has revealed that at least one manager of a Defendant company who was criminally indicted for the central role he played in the capacitors price-fixing conspiracy also exercised managerial responsibility over Inductors during the same time that he conspired and fixed the price of capacitors. *Id*. Based on the investigation of counsel, Five Rivers also alleges that the Defendant companies exchanged the same types of competitively sensitive information and formed or reached similar anticompetitive agreements and understandings at the same or similar meetings with regard to capacitors and Inductors. *Id*.

By contrast, BFA, by its own admission, investigated Inductors for five days before filing its complaint.[3] Hausfeld investigated for less than two weeks before filing its complaint.[4] Both BFA and Hausfeld stated that they began their Inductors investigation only after *mLex* reported on January 4, 2018 that the United States Department of Justice Antitrust Division ("DOJ Antitrust") had issued subpoenas to several Inductors manufacturers in connection with a price-fixing investigation. In their rush to the courthouse, however, those counsel failed to uncover, address, or allege important aspects of the price-fixing conspiracy that may prove critical in opposing defendants' anticipated motions to dismiss. Counsel also failed to identify and name Defendants that likely played important roles in the conspiracy.

---

[3] BFA states that on January 4, 2018, the firm "ordered the first of multiple industry reports" that would launch its investigation into cartel activity in the Inductors market. (Motion, at 8) BFA filed suit on January 9, 2018.

[4] Hausfeld states that it began its investigation "[u]pon learning of the DOJ's investigation of the Inductors market . . . ." (Motion, at 16). Hausfeld filed suit a week after BFA.

1    After racing to file their complaints, BFA and Hausfeld now rush to have themselves appointed

2    interim co-lead counsel. BFA and Hausfeld filed their Motion on January 31, 2018, when they knew of

3    only one additional filed action. (Motion, at 3-4). There are now three additional filed actions, with

4    more actions likely. It appears that counsel filed their Motion with such haste to secure their

5    appointment before the Court could consider, in a careful and deliberate fashion, whether other firms

6    may be better suited to represent the proposed class of direct purchasers (the "Class"). *See* Manual for

7    Complex Litigation, Fourth, § 21.27.

8    The Class deserves better. Five Rivers respectfully requests the Court deny the Motion to allow

9    the Court to establish an orderly process for the case to proceed in an organized fashion, and to consider

10   carefully which law firm or firms will best represent the interests of the Class under the criteria set forth

11   in Fed. R. Civ. P. 23(g).

12   ### III.   LEGAL STANDARD

13   The Court possesses broad authority in appointing class counsel. The Court may "designate

14   interim counsel to act on behalf of the putative class before determining whether to certify the action as

15   a class action." Fed. R. Civ. P. 23(g)(3). In appointing interim counsel, the courts in this district typically

16   consider the factors in Fed. R. Civ. P. 23(g)(1). *Letizia v. Facebook Inc.*, No. 16-CV-06232-TEH, 2017

17   WL 1477158, at *2 (N.D. Cal. Apr. 25, 2017). The factors include counsel's investigation; experience

18   handling similar claims and actions; knowledge of the applicable law; and resources. Fed. R. Civ. P.

19   23(g)(1)(A)(i)-(iv). The Federal Judicial Center ("FJC") similarly recommends as follows:

20   In every case, the judge must inquire into the work counsel has done in investigating and
21   identifying the particular case; counsel's experience in handling class actions, other
     complex litigation, and claims of the type asserted in the action; counsel's knowledge of
22   the applicable law; the resources counsel will commit to representing the class; and any
     other factors that bear on the attorney's ability to represent the class fairly and adequately.
23

24   Manual for Complex Litigation, Fourth, § 21.271. Moreover, in selecting counsel "best able to represent

25   the interests of the class," courts should consider counsel's "involvement in parallel cases." *Id*.

26   Most relevant here, the FJC recommends that "a reasonable period after commencement of the

27   action should be allowed" by the court before making such a determination. *Id*. at § 21.273. And to

28   facilitate a fully informed comparison among competing applications, the FJC suggests that courts

consider "ordering applicants to follow a common format designed to elicit information about the court's appointment criterion." *Id.*

## IV.   THE COURT SHOULD DENY THE PREMATURE MOTION AND INSTEAD APPOINT INTERIM LEAD CLASS COUNSEL IN DUE COURSE

At this early stage, the Court should deny the Motion in favor of allowing counsel to negotiate and propose a leadership structure. Should counsel be unable to agree on a leadership structure, the Court should set an orderly briefing schedule for competing firms to submit applications following a "common format" based on the Court's appointment criteria, as the FJC recommends in the Manual for Complex Litigation.

As discussed above, neither the *Dependable* nor the *Powerweb* complaint identifies or alleges the important overlap in the ringleaders overseeing the related conspiracies to fix the prices of Inductors and capacitors. This oversight highlights the difference in the quality of the investigations supporting those complaints and the *Five Rivers* complaint.

Moreover, neither *Dependable* nor *Powerweb* named defendants Okaya Electric Industries Co., Ltd.; Okaya Electric America Inc.; KEMET Corporation; KEMET Electronics Corp.; TOKIN Corporation; TOKIN America, Inc.; and NEC Corporation. These defendants played significant roles in the *Capacitors* conspiracy but have been named only in the *Five Rivers* action. Indeed, the *Dependable* and *Powerweb* complaints are far narrower than (and subsumed by) the *Five Rivers* complaint. These differences demonstrate the importance of the deliberate and careful investigation undertaken by the firms filing *Five Rivers*; and they highlight the advantages that counsel in *Five Rivers* bring for the benefit of the direct purchaser class.

The care and diligence underlying the *Five Rivers* complaint was the product of counsel's expertise and experience in obtaining extremely favorable results on behalf of the direct purchasers in *Capacitors*—the overwhelming majority of which are likely to be class members here. For example, to date, undersigned counsel have publicly announced settlements for over $100 million with seven out of 22 corporate defendant families in *Capacitors*. In many of those settlements, the settling defendants **agreed to pay more than their entire gross sales** during the relevant class period to compensate the direct purchaser class.

The Class members in this case deserve the same level of careful diligence and professional competency. To obtain the outstanding results in *Capacitors*, undersigned counsel did not rush their work; instead, they have efficiently managed the review of nearly 16 million files spanning over 39 million unique Bates-numbered pages. The vast majority of the defendants' productions were in Japanese, and counsel created an efficient and cost-effective procedure to review them, having assembled a team of native and fluent Japanese speakers.

The *Capacitors* defendants also produced more than 500 gigabytes of sales data comprising over seven million transactions, one of the largest and most complex databases for transaction-level data. These transactions collectively represented tens of billions of capacitor units and billions of dollars of commerce. Counsel's compilation and analysis of the transactional data were crucial to developing a quantitative framework proving defendants' price-fixing on a class-wide basis; overcoming defendants' motions for summary judgment relating to the Foreign Trade Antitrust Improvement Act; and giving direct notice to the settlement classes.

Because of the similarity in the price-fixing conspiracies and the significant overlap in common defendants between this action and *Capacitors*, undersigned counsel are uniquely qualified to efficiently pursue this litigation, minimize burdens on the Court, and conserve judicial and party resources. Undersigned counsel have developed and implemented efficient discovery procedures tailored for litigating price-fixing in the passive electronics component industry by predominantly Japan-based cartelists, and they have litigated many of the same legal issues that are likely to recur here. They have also forged good working relations with many of the Defendants' counsel with respect to Capacitors, which will reduce unnecessary discovery disputes or motion practice. Counsel have also demonstrated the ability to work together cooperatively and efficiently in a complex international antitrust case involving dozens of foreign defendants. Placed at the helm of this litigation, undersigned counsel can significantly reduce the burden on the Court by avoiding motion practice for issues previously resolved in *Capacitors*. They—and the attorneys for any other plaintiffs that file suit in the near future—should be afforded the opportunity to submit in an orderly and efficient fashion competing applications to be appointed interim lead counsel, should that be necessary.

*     *     *

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion without prejudice to allow counsel to confer over a leadership structure; and if necessary, submit applications following a common format based on the court's appointment criteria.

Dated: February 14, 2018

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:        */s/ Joseph R. Saveri*
           Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Nicomedes S. Herrera (State Bar No. 275332)
Jiamin Chen (*pro hac vice* to be submitted)
Demetrius X. Lambrinos (State Bar No. 246027)
James Dallal (State Bar No. 277826)
V Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:    jsaveri@saverilawfirm.com
          nherrera@saverilawfirm.com
          jchen@saverilawfirm.com
          dlambrinos@saverilawfirm.com
          jdallal@saverilawfirm.com
          vprentice@saverilawfirm.com

Eric L. Cramer (*pro hac vice* to be submitted)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email:  ecramer@bm.net

Vincent J. Esades (*pro hac vice* to be submitted)
HEINS MILLS & OLSON, P.L.C
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: 612-338-4605
Facsimile: 612-338-4692
Email: vesades@heinsmills.com

1    Howard J. Sedran (*pro hac vice* to be submitted)
Austin B. Cohen (*pro hac vice* to be submitted)

2    LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500

3    Philadelphia, PA 19106
Telephone:   (215) 592-1500

4    Facsimile:   (215) 592-4663
Email:     hsedran@lfsblaw.com

5    acohen@lfsblaw.com

6

7    Roberta D. Liebenberg, (*pro hac vice* to be submitted)
Paul Costa (*pro hac vice* to be submitted)

8    FINE, KAPLAN AND BLACK R.P.C.
One South Broad Street, 23rd Floor

9    Philadelphia, PA 19107
Telephone:   (215) 567-6565

10    Facsimile:   (215) 568-5872
Email:     rliebenberg@finekaplan.com

11    pcosta@finekaplan.com

12    Jason S. Hartley (State Bar No. 192514)
STUEVE SIEGEL HANSON LLP

13    550 West C Street, Suite 1750
San Diego, CA 92101

14    Tel: 619-400-5822
Fax: 619-400-5832

15    Email: hartley@stuevesiegel.com

16

17    Solomon B. Cera (State Bar No. 99467)
CERA LLP

18    595 Market Street, Suite 2300
San Francisco, CA 94105

19    Telephone:   (415) 777-2230
Facsimile:   (415) 777-5189

20    Email:     scera@cerallp.com

21    C. Andrew Dirksen (State Bar No. 197378)
CERA LLP

22    800 Boylston St., 16th Floor
Boston, MA 02199

23    Telephone:   (857) 453-6555
Email:     cdirksen@cerallp.com

24

25

26

27

28

PLAINTIFF FIVE RIVERS ELECTRONICS INNOVATIONS LLC'S OPPOSITION TO MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL FOR THE DIRECT PURCHASER CLASS

Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94118
Telephone:    (415) 981-4800
Facsimile:    (415) 981-4846
Email:        dcg@girardgibbs.com
              je@girardgibbs.com


*Counsel for Five Rivers Electronic Innovations LLC*

PLAINTIFF FIVE RIVERS ELECTRONICS INNOVATIONS LLC'S OPPOSITION TO MOTION TO APPOINT
INTERIM LEAD CLASS COUNSEL FOR THE DIRECT PURCHASER CLASS