Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

*Attorneys for Plaintiff Dependable Component Supply Corp.*

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
Christopher L. Lebsock (SBN 184546)
Samantha Stein (SBN 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

*Attorneys for Plaintiffs Powerweb, Inc., Powerweb Energy, Inc.,*
*and Arch Electronics, Inc.*
[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEPENDABLE COMPONENT SUPPLY CORP., on behalf of itself and others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MURATA MANUFACTURING CO., LTD.; MURATA ELECTRONICS NORTH AMERICA, INC.; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; PANASONIC ELECTRONIC DEVICES CO. | Case No. 3:18-cv-00198-EJD<br><br>**JOINT OPPOSITION TO BERMAN TOBACCO'S MOTION TO BE APPOINTED SOLE INTERIM LEAD COUNSEL**<br><br>Date: April 26, 2018<br>Time: 9:00 AM<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

1  LTD; PANASONIC ELECTRONIC
   DEVICES CORPORATION OF AMERICA;
2  SUMIDA CORPORATION; SUMIDA
   ELECTRIC CO., LTD.; SUMIDA AMERICA
3  COMPONENTS, INC.; TAIYO YUDEN CO.,
   LTD.; TAIYO YUDEN (U.S.A.) INC.; TDK
4  CORPORATION; TDK-EPC
   CORPORATION; TDK CORPORATION OF
5  AMERICA, and TDK U.S.A.
   CORPORATION,

6                    Defendants.

7  POWERWEB, INC. AND POWERWEB              Case No. 3:18-cv-00349-EJD
   ENERGY, INC., on behalf of themselves and
8  others similarly situated,                 Related Action

9             Plaintiffs,

10       v.

11 MURATA MANUFACTURING CO., LTD.;
   MURATA ELECTRONICS NORTH
12 AMERICA, INC.; PANASONIC
   CORPORATION; PANASONIC
13 CORPORATION OF NORTH AMERICA;
   PANASONIC ELECTRONIC DEVICES CO.
14 LTD; PANASONIC ELECTRONIC
   DEVICES CORPORATION OF AMERICA;
15 SUMIDA CORPORATION; SUMIDA
   ELECTRIC CO., LTD.; SUMIDA AMERICA
16 COMPONENTS, INC.; TAIYO YUDEN
   CO., LTD.; TAIYO YUDEN (U.S.A.) INC.;
17 TDK CORPORATION; TDK-EPC
   CORPORATION; TDK CORPORATION OF
18 AMERICA, and TDK U.S.A.
   CORPORATION,

19
                    Defendants.
20

21

22

23

24

25

26

27

28

1  **I.      INTRODUCTION**

2          Plaintiffs in the *Dependable* and *Powerweb* actions,[1] represented by the firms of

3  Bleichmar, Fonti & Auld ("BFA") and Hausfeld LLP ("Hausfeld"), respectively, oppose the

4  motion by Berman Tabacco LLP ("BT") to appoint it as sole lead in these *Inductors* cases.

5  BFA and Hausfeld filed the first two cases seeking to represent direct purchasers of Inductors

6  (the "DPP Class"), and have demonstrated leadership in litigating the early stages of this

7  litigation and marshalling the support of most firms that have filed cases seeking to represent

8  the DPP Class.[2] BT, while a competent and respected firm, has not justified its request for

9  sole interim leadership in these cases and that request should not displace the interim

10  leadership bid of BFA and Hausfeld. If the Court wishes to appoint BT in some capacity,

11  BFA and Hausfeld are certainly willing to work with BT. However, under Fed. R. Civ. P.

12  23(g), the Court should reject BT's request to run these cases by itself.

13  **II.     LEGAL STANDARD**

14          In appointing interim class counsel under Rule 23(g), the Court should select the

15  "most qualified" applicant, using factors such as the work done on behalf of the class,

16  counsel's relevant experience and knowledge of the law, the degree of its investigation and

17  research in developing claims, the resources the applicants can offer the class, and the efforts

18  to bring together counsel. *See Bernal v. Netflix, Inc.,* No. 5:11-cv-00379, 00820, 01218,

19  01309, & 01359, 2011 WL 13157369, at *2 (N.D. Cal. Aug. 12, 2011) ("*Bernal*") (Davila, J.);

20

21

22

23

---

24  [1] *Dependable Component Supply Corp. v. Murata Manufacturing Co. Ltd. et al.*, No. 18-cv-
00198-EJD (N.D. Cal.) ("*Dependable*") (filed by BFA); *Powerweb, Inc. et al. v. Murata
25  Manufacturing Co. Ltd. et al.*, No. 18-cv-00349-EJD (N.D. Cal.) (N.D. Cal. filed Jan. 16,
2018) ("*Powerweb*") (filed by Hausfeld).
26
[2] Counsel in the related cases of *Lifetime Service Center, Inc. v. Murata Manufacturing Co.
27  Ltd. et al.*, No. 18-cv-00511-EJD (N.D. Cal.) ("*Lifetime*") and *Arch Electronics, Inc. v.
Murata Mfg. Co*., No. 3:18-cv-01128 (N.D. Cal. filed Feb. 21, 2018) ("*Arch*") support this
28  opposition.

1  *In re Municipal Derivatives Antitrust Litig*., 252 F.R.D. 184, 186 (S.D.N. Y. 2008)

2  ("*Municipal Derivatives*").

3  **III.      DISCUSSION**

4          In considering the various 23(g) factors the Court must weigh in appointing interim

5  lead counsel, BT has not adequately made the case that it is the "most qualified" to represent

6  the DPP Class based upon the work it has done for the class in this case. Rather than engaging

7  resources to further develop this case, BT relied on the work of Hausfeld and BFA for the

8  factual allegations, economic and legal allegations in the complaint it filed. Nor has BT

9  shown that it is more experienced than BFA and Hausfeld in antitrust litigation, or that it has

10  superior resources to BFA and Hausfeld. While BT has antitrust experience, and has been

11  successful in other cases, BT has not shown it is best positioned to solely represent the DPP

12  Class in the *Inductors* cases.

13          **A.      BT Has Not Done Original Work In this Case, Compared to the Work of**

14                  **BFA and Hausfeld.**

15          As the Court suggested in *Bernal* and *Municipal Derivatives*, the key factor that a

16  court must consider in selecting interim lead counsel under Fed. R. Civ. P. 23(g) is work done

17  on the litigation. BFA and Hausfeld have done much—both individually and together. Other

18  than filing its own case, BT has done very little.  BFA and Hausfeld have undertaken not just

19  complex economic analysis and retained experts but have also coordinated this action among

20  multiple Plaintiffs and Defendants.

21          BT has not shown that it engaged in work done in advancing this litigation. For

22  example, BT did not prepare or file a motion to consolidate the *Inductors* cases. *See* ECF Nos.

23  18, 23, 65 in *Dependable*.  Instead, it seconded the motion already on file that was prepared

24  by BFA and Hausfeld. *See* ECF No. 55 ("BT Mot.") at 5 in *Dependable*. BT did not prepare a

25  proposed case management order concerning the future structure of the cases (*see* ECF Nos.

26  18, 23, 65 in *Dependable*); instead, it rests upon the work that BFA and Hausfeld have already

27  done. And those two firms, not BT, negotiated and had approved stipulations for deadlines to

28

respond to any consolidated amended complaint. *See* ECF Nos. 25, 33, 45, 57 in *Dependable*. Likewise, BFA and Hausfeld, not BT, negotiated and had approved a stipulation regarding alternative service of process on foreign Defendants in these cases. *See* ECF Nos. 45 at 3-4, 57 at 3-4 in *Dependable*. Nor did BT indicate that it sent "ACPERA letters" to the Defendants, *i.e.*, formal inquiries to them about whether they applied for leniency to the United States Department of Justice ("DOJ") and are willing to supply the early cooperation to Plaintiffs contemplated by the Antitrust Criminal Penalty Enhancement & Reform Act ("ACPERA"). BFA and Hausfeld have already done that. They have also already submitted a proposed protective order to Defendants that will be finally negotiated once the issue of leadership is resolved. In terms of demonstrated leadership, Hausfeld and BFA have unquestionably done more than BT.

BT also has not done the original work undertaken by BFA and Hausfeld (together and independently) in these cases. BT's leadership motion says that after it learned of the *mLex* article disclosing DOJ subpoenas in connection with cartel activity involving Inductors, it "thereafter consulted industry data and researched the inductors market to understand the types of inductors involved, the finished products in which inductors are incorporated, and types of purchasers affected by defendants' alleged misconduct." BT Mot. at 6. BT does not indicate that it has retained any expert or that it has itself invested in any proprietary research concerning the Inductors market in the relevant period.  BFA, in contrast, filed the first complaint in this action only after vetting its economic analysis with respected economic experts previously engaged in other electronic component antitrust actions. Hausfeld has likewise retained an expert and invested in proprietary economic research, as discussed below.

BT filed a complaint on behalf of its client, Cambridge Capital Corporation ("Cambridge")[3] that does not reflect significant original work. Instead, BT essentially copied the factual and legal theories, including the citations to economic evidence, proprietary

---

[3] *Cambridge Capital Corp. v. Murata Mfg. Co., Ltd.*, No. 5:18-cv-00686-EJD (N.D. Cal., filed Jan. 31, 2018) ("*Cambridge*").

1    studies, and allegations of collusive conduct contained in the previously-filed complaint of the

2    *Powerweb* entities, which was prepared and filed by Hausfeld weeks earlier.

3           BT has incorporated large parts of the *Powerweb* complaint filed by Hausfeld, much

4    of it *verbatim* or with minor wording changes. The *Powerweb* complaint has extensive

5    allegations about Federal Reserve Economic Data on import prices of Inductors (¶ 6) price

6    trends of raw materials used to make Inductors (¶ 7), demand for Inductors over time (¶¶ 8-9),

7    similarities between some of the allegations in these cases and the antitrust litigations

8    involving Resistors and Capacitors (¶¶ 10-14), the nature of the Inductor products at issue and

9    their market shares (¶¶ 65-68), a chart showing values, volumes and pricing forecasts for

10   inductors and text discussing global market sales (¶ 69), discussion of the size of the North

11   American Inductor market (¶¶ 47, 70), United Nations data on the commodification of

12   Inductors (¶ 71), a chart showing Defendants' collective controlling share of the worldwide

13   Inductor market (¶ 75), data on costs of entry (¶ 77), involvement of Panasonic Corporation in

14   other conspiracies and its internal recognition of its cartel problems (¶¶ 87-91), extensive

15   discussion of two trade associations—the Electronic Components Industry Association and

16   the Japan Electronics and Information Technology Industries Association ("JEITA")—with

17   copious references to their respective websites (¶¶ 97-103), a class definition that (unlike

18   BFA's) that extended through the end of 2016 and included sales of Inductors in both the

19   United States and its territories (¶ 107), and a cause of action (again, unlike BFA's) that

20   encompassed claims under both Sections 1 and 3 of the Sherman Act (¶¶ 117-24).

21          BT largely copied these allegations, sometimes word for word, using the proprietary

22   and other statistical data and charts, narrative allegations (including trade association

23   allegations), class definition and cause of action presented in the *Powerweb* complaint. *See*

24   *Cambridge* Compl., ¶¶ 9-10, 51, 53, 55, 59-61, 64, 67-74, 75-85, 89, 99-106.  The *Cambridge*

25   complaint reflects hardly any original economic or factual research. While BT claims it added

26   to this litigation by crafting a class definition encompassing purchases of finished products

27   containing Inductors (ECF No. 55 at 6 in *Dependable*), the class definitions proposed by BFA

28

1  and Hausfeld already did so. And, lest there be any doubt on that topic, Hausfeld also

2  represents a purchaser of finished products containing Inductors and has filed the *Arch*

3  complaint on its behalf. In short, has not demonstrated work on these cases that justifies a sole

4  leadership position.

5     **B.    BT's Experience Is Not So Substantial or Unique to Justify Its Sole**

6          **Leadership Bid.**

7     BT emphasizes its experience in other electronics antitrust cases, but that experience is

8  also not enough to justify its sole leadership bid. As an initial matter, BT does not claim that it

9  has worked on any other passive electronic component antitrust litigation, such as the

10  *Capacitors* or the *Resistors* litigations. Although it is the work done on these *Inductors*

11  matters that matters the most, attorneys at both BFA and Hausfeld have experience in one or

12  the other of these actions.

13    While BT lists its role on the Executive Committee in the *Optical Disk Drive* antitrust

14  litigation (BT Mot. at 7), Hausfeld also served on the same committee in that case. BT also

15  cites its participation in the *DRAM Antitrust Litigation*, the *TFT-LCD (Flat Panel) Antitrust*

16  *Litigation*, and the *Cathode Ray Tubes Antitrust Litigation.* Michael Lehmann and

17  Christopher Lebsock of Hausfeld were deeply involved in all three of those cases, taking

18  significant roles in discovery and drafting of key pleadings.

19    BT's most recent leadership antitrust class action was in the *Batteries* antitrust

20  litigation, where it served as co-lead counsel for the Direct Purchaser Class. However, its

21  involvement in that case is not exclusive; BFA also represents the cities of Palo Alto and

22  Richmond in a municipal subclass in that case.

23    BT notes that now that *Batteries* is coming to an end, it has 20 foreign language

24  attorneys it can put on this case who can read Japanese or Korean. *Id*. at 9. Of course, there

25  are no Korean defendants in the *Inductors* cases, and it is by no means clear at this early date

26  that all of BT's foreign language attorneys will be needed. In any event, both BFA and

27  Hausfeld have also used such multilingual attorneys in other cases, such as *Batteries* and *In*

28

1   *Re Transpacific Passenger Air Transportation Antitrust Litigation*, No. 07-CV-5634-

2   CRB (N.D. Cal.), which involves, *inter alia*, Japanese defendants, and are prepared to marshal

3   such resources as necessary for this action. Presumably, even if BT is not made interim lead

4   counsel in this litigation, it will continue to extend this offer to provide the services of its

5   foreign language attorneys in these cases. As for any experience gained from the *Batteries*

6   litigation, BT's co-lead in that litigation—Saveri & Saveri—is among the counsel on the *Arch*

7   complaint and fully supports the interim leadership bid of BFA and Hausfeld. As does the

8   Steyer Lowenthal firm, which also worked on *Batteries*. BFA and Hausfeld are unaware of

9   any other firm which support BT's bid for sole leadership.

10          As a final point, BFA and Hausfeld are prepared to try this case if necessary and have

11   recent experience to call upon in so doing.  As noted in its prior leadership filing, Hausfeld

12   (including the attorneys in its San Francisco office who will work on this case) has

13   participated in numerous antitrust class action trials. ECF No. 21 at 11 & n.8 in *Dependable*.

14   Similarly, in 2014, Ms. Weaver tried a consumer class action, delivering opening and closing

15   statements.  The jury awarded $1.5 million in compensatory damages, which was a 100%

16   recovery of economic damages, and $15 million in punitive damages under the California

17   Legal Remedies Act.  *See Doe v. Positive Singles.com*, Case No. 1-11-CV-211205.  While not

18   an antitrust action, trial experience of this nature can inform many early tactical decisions, a

19   unique attribute that BFA brings to its partnership with Hausfeld.

20          **C.      BT Has Not Provided Any Other Rationale to Justify Its Sole Leadership**

21                  **Bid.**

22          BT has 34 attorneys with offices in Boston and San Francisco. *See* BT Mot. at 7.

23   Hausfeld, by contrast, has over 75 attorneys located in ten offices in the United States and

24   Europe, five of which are in the United States (including San Francisco). Although if

25   Hausfeld is appointed, several individuals from its San Francisco office would be primarily

26   responsible for litigating this action (ECF No. 21 at 13-16 in *Dependable*), its main office in

27   the United States is in Washington, D.C., not far from the domestic office of JEITA. Its

28

European offices include one in Brussels, Belgium, where both the European office of JEITA and the headquarters of another key trade association (the European Passive Components Industry Association, discussed in paragraph 102 of the *Arch* complaint) are located. Hausfeld also has ties to an extensive network of counsel located in Asia with whom it works. BFA has 19 attorneys in three locations (Oakland, New York City and Toronto, Ontario). Its Oakland office is staffed with experienced antitrust litigators with impressive pedigrees, including as clerks or at top tier defense firms before joining BFA. *See id.* at 5-7.

Hausfeld and BFA collectively have unparalleled extensive antitrust experience, including the fact that Hausfeld specializes predominantly in antitrust litigation (something that is not true of BT).  *Id.* at 11-16. While an experienced firm, BT cannot match these levels of expertise and resources.  This is particularly important in this case, given the number of Defendants and the likely complexities associated with litigating a case of this potential magnitude. Without something more, BT has not shown how it is "most qualified" to litigate this case alone.

## IV.    CONCLUSION

BFA and Hausfeld wish to emphasize that they consider BT a competent firm with whom they have worked successfully in the past and with whom they expect to work successfully in these cases. There is obviously a useful role BT can play in this litigation, but it is simply not the role of sole interim lead counsel.


Dated: February 28, 2018                              Respectfully submitted,

                                                     /s/ Lesley E. Weaver

                                                     Lesley E. Weaver (SBN 191305)
                                                     Matthew S. Weiler (SBN 236052)
                                                     BLEICHMAR FONTI & AULD LLP
                                                     555 12th Street, Suite 1600
                                                     Oakland, CA 94607
                                                     Tel.: (415) 445-4003
                                                     Fax: (415) 445-4020
                                                     lweaver@bfalaw.com
                                                     mweiler@bfalaw.com

1

2

*Attorneys for Plaintiff Dependable*
*Component Supply Corp.*

3

4

/s/ Christopher L. Lebsock

5

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)

6

Christopher L. Lebsock (SBN 184546)
Samantha Stein (SBN 302034)

7

HAUSFELD LLP

8

600 Montgomery Street, Suite 3200
San Francisco, CA 94111

9

Tel: (415) 633-1908
Fax: (415) 358-4980

10

mlehmann@hausfeld.com
bsweeney@hausfeld.com

11

clebsock@hausfeld.com
sstein@hausfeld.com

12

13

Marc H. Edelson (admitted *pro hac vice*)
EDELSON & ASSOCIATES, LLC

14

3 Terry Drive, Suite 205
Newtown, PA 18940

15

Tel.: (215) 867-2399
medelson@edelson-law.com

16

17

Joshua H. Grabar (admitted *pro hac vice*)
GRABAR LAW OFFICE

18

1735 Market Street, Suite 3750
Philadelphia, PA 19103

19

Tel.: (267) 507-6085
jgrabar@grabarlaw.com

20

21

*Attorneys for Plaintiffs Powerweb, Inc.,*
*Powerweb Energy, Inc., and Arch*

22

*Electronics, Inc.*

23

24

25

26

27

28