Lesley E. Weaver (Cal. Bar No. 191305)
Matthew S. Weiler (Cal. Bar No. 236052)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
E-mail: lweaver@bfalaw.com
E-mail: mweiler@bfalaw.com

*Attorneys for Plaintiff Dependable Component Supply Corp.*

Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
Samantha Stein (Cal. Bar. No. 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail:  mlehmann@hausfeld.com
E-mail:  bsweeney@hausfeld.com
E-mail:  clebsock@hausfeld.com
E-mail:  sstein@hausfeld.com

*Attorneys for Powerweb, Inc., Powerweb Energy, Inc., and Arch Electronics, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEPENDABLE COMPONENT SUPPLY CORP., on behalf of itself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MURATA MANUFACTURING CO., LTD.; MURATA ELECTRONICS NORTH AMERICA, INC.; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; PANASONIC ELECTRONIC DEVICES CO. LTD; PANASONIC ELECTRONIC DEVICES CORPORATION OF AMERICA; SUMIDA CORPORATION; SUMIDA ELECTRIC CO., LTD.; SUMIDA AMERICA COMPONENTS, INC.; TAIYO YUDEN CO., LTD.; TAIYO YUDEN (U.S.A.) INC.; TDK CORPORATION; TDK-EPC | Case No. 18-cv-00198-EJD<br><br>**DEPENDABLE, POWERWEB, AND ARCH ELECTRONICS PLAINTIFFS' OPPOSITION TO THE MOTION TO BE APPOINTED SOLE INTERIM LEAD COUNSEL FILED BY THE JOSEPH L. SAVERI LAW FIRM** |

CORPORATION; TDK CORPORATION OF AMERICA, and TDK U.S.A. CORPORATION,

Defendants.

POWERWEB, INC. AND POWERWEB ENERGY, INC., on behalf of themselves and others similarly situated,

Plaintiffs,

v.

MURATA MANUFACTURING CO., LTD.; MURATA ELECTRONICS NORTH AMERICA, INC.; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; PANASONIC ELECTRONIC DEVICES CO. LTD; PANASONIC ELECTRONIC DEVICES CORPORATION OF AMERICA; SUMIDA CORPORATION; SUMIDA ELECTRIC CO., LTD.; SUMIDA AMERICA COMPONENTS, INC.; TAIYO YUDEN CO., LTD.; TAIYO YUDEN (U.S.A.) INC.; TDK CORPORATION; TDK-EPC CORPORATION; TDK CORPORATION OF AMERICA, and TDK U.S.A. CORPORATION,

Defendants.

Case No. 18-cv-00349-EJD

ARCH ELECTRONICS, INC., on behalf of itself and others similarly situated,

Plaintiff,

v.

MURATA MANUFACTURING CO., LTD.; MURATA ELECTRONICS NORTH AMERICA, INC.; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; PANASONIC ELECTRONIC DEVICES CO. LTD; PANASONIC ELECTRONIC DEVICES CORPORATION OF AMERICA; SUMIDA CORPORATION; SUMIDA ELECTRIC CO., LTD.; SUMIDA AMERICA COMPONENTS, INC.; TAIYO YUDEN CO., LTD.; TAIYO YUDEN (U.S.A.) INC.; TDK CORPORATION; TDK-EPC CORPORATION; TDK CORPORATION OF AMERICA; TDK U.S.A. CORPORATION; and JAPANESE ELECTRONICS AND INFORMATION TECHNOLOGY INDUSTRIES ASSOCIATION,

Defendants.

Case No. 18-cv-01128-EJD

## Table of Contents

I.      INTRODUCTION.................................................................................................1

II.     LEGAL STANDARD .........................................................................................3

III.    DISCUSSION.....................................................................................................3

   A.     JSLF's Work Does Not Justify Its Appointment As Sole Lead. .................................4

   B.     JSLF's Appointment in *Capacitors* Does Not Merit Its Appointment as Sole Lead in this Action. .................................................................................................9

   C.     A Single Firm Leadership Structure Is Not Preferable to Two Co-Leads Here. .......10

   D.     The Alternative Structure Proposed By JSLF Is Unwieldly And Inefficient. ...........12

   E.     JSLF Lacks The Resources To Effectively Lead This Case.....................................13

   F.     Hausfeld Has No Conflict of Interest. ....................................................14

IV.     CONCLUSION ...............................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

**Cases**

*Arch Elecs., Inc. v. Murata Mfg. Co. Ltd.*, No. 18-cv-01128 (N.D. Cal.) ............................. 1, 7

*Bates v. Kashi Co.*, No. 11-cv-01967, 2012 WL 12846999 (S.D. Cal. Jan. 18, 2012) ........... 14

*Bernal v. Netflix, Inc.*, No. 11-cv-00820-EJD, 2011 WL 13157369 (N.D. Cal. Aug. 12, 2011)
................................................................................................................................................. 3, 4

*Cambridge Capital Corp. v Murata Mfg. Co., Ltd.*, No. 18-cv-00686-EJD (N.D. Cal.) .......... 6

*Cooperman v. Galeos LLC*, No. 10-cv-01815-JVS, 2011 WL 13227858 (C.D. Cal. April 18,
2011) .................................................................................................................................... 12

*Dependable Component Supply Corp. v. Murata Mfg. Co. Ltd.*, No. 18-cv-00198-EJD (N.D.
Cal.) ................................................................................................................................ *passim*

*DIK Drug Co. v. Altana Pharma AG*, No. 07-5849 (JLL), 2008 WL 2264586 (D.N.J. June 2,
2008) ..................................................................................................................................... 16

*Five Rivers Elec. Innovations LLC v. Kemet Corp.*, No. 18-cv-00851-EJD (N.D. Cal.) .. *passim*

*In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................... 10

*In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD (N.D. Cal.) ................................. *passim*

*In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656, Misc. No. 15-1404 (CKK)
(D.D.C.) ............................................................................................................................ 11, 13

*In re Flash Memory Antitrust Litig.*, No. 07-cv-00086-SBA (N.D. Cal.) ................................. 11

*In re German Auto. Mfrs. Antitrust Litig.*, No. 17-md-2796-CRB (N.D. Cal.) ......................... 2

*In re Int'l Air Passenger Surcharge Antitrust Litig.*, MDL No. 1793 (N.D. Cal.) ................... 11

*In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685 (9th Cir. 2011) ............................. 15

*In re Korean Ramen Direct Purchaser Antitrust Litig.*, No. 13-cv-04148 WHO (N.D. Cal.) . 11

*In re Lenovo Adware Antitrust Litig.*, No. 15-md-02624-RMW, 2015 WL 10890657 (N.D.
Cal. July 7, 2015) ................................................................................................................. 12

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 YGR, 2014 WL 4955377 (N.D.
Cal. Oct. 2, 2014) ................................................................................................................ 15

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 995-96 (E.D. Mich. 2010) ............ 15

*In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2009 WL 1518428 (E.D. Mich. June 1, 2009) ........................................................................................................................... 3

*In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-02670-JLS (S.D. Cal.) .............. 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 29 (D.D.C. 2008)..... 15

*In re Resistors Antitrust Litig.*, No. 15-cv-03820-JD (N.D. Cal.) ....................................*passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.)............... 11, 15

*In re Transpacific Air Transp. Antitrust Litig.*, MDL No. 913 (N.D. Cal.) ............................ 11

*Kamakahi v. Am. Soc'y for Reproductive Med.*, No. 11-cv-01781 SBA, 2012 WL 892163 (N.D. Cal. Mar. 14, 2012) ............................................................................................... 12

*Lifetime Serv. Ctr., Inc. v. Murata Mfg. Co. Ltd.*, No. 18-cv-00511-EJD (N.D. Cal.).............. 1

*Lowery v. Spotify, USA, Inc.*, No. 15-cv-09929-BRO, 2016 WL 6818756 (C.D. Cal. May 23, 2016) ....................................................................................................................... 11

*Paraggua v. LinkedIn Corp.*, No. 12-cv-03088 EJD, 2012 WL 3763889 (N.D. Cal. Aug. 25, 2012)......................................................................................................................... 4

*Powerweb, Inc. v. Murata Mfg. Co. Ltd.*, No. 18-cv-00349-EJD (N.D. Cal.) .................. 1, 4, 7

**Other Authorities**

Federal Rule of Civil Procedure 23(g) ...........................................................................*passim*

Manual for Complex Litig. (Fourth) .................................................................................. 3

1  **I.  INTRODUCTION**

2      Plaintiffs in *Dependable* and *Powerweb*,[1] the two earliest cases filed in these related

3  actions, who are represented respectively by the law firms of Bleichmar, Fonti & Auld LLP

4  ("BFA") and Hausfeld LLP ("Hausfeld"), jointly oppose the motion by the Joseph Saveri Law

5  Firm ("JSLF"), which filed the *Five Rivers*[2] case now related before this Court, to appoint

6  JSLF as sole lead counsel and seven other firms from the *Five Rivers* complaint to an

7  Executive Committee in these *Inductors* cases, thereby displacing all other counsel.[3]  BFA

8  and Hausfeld have demonstrated leadership in this case by independently pleading strong,

9  well-supported complaints, and then joining forces to coordinate with plaintiffs' and defense

10  counsel alike, acting in the best interests of the class with efficiency and professionalism.

11  They have earned the co-lead positions they seek.

12      JSLF as a firm cannot match the class action and antitrust expertise of the lawyers at

13  BFA and Hausfeld who will be working on this case.  Hausfeld's Michael Lehmann has been

14  practicing antitrust law, both in the class action and individual action contexts, for over forty

15  years and is recognized by Best Lawyers in America.[4]  Bonny Sweeney, a Managing Partner

16  of Hausfeld, has been practicing for thirty years, twenty-two of which have been devoted to

17  representing plaintiffs in antitrust class actions.  In addition to serving as lead or co-lead

18  counsel in numerous similar cases, Ms. Sweeney has demonstrated her substantive antitrust

19  expertise through publications, teaching, board memberships, and participation on antitrust

20  panels.  Her work has been repeatedly recognized, most recently by *LawDragon*, which

---

[1]    *Dependable Component Supply Corp. v. Murata Mfg. Co. Ltd.*, No. 18-cv-00198-EJD (N.D. Cal.) ("*Dependable*"), *Powerweb, Inc. v. Murata Mfg. Co. Ltd.*, No. 18-cv-00349-EJD (N.D. Cal.) ("*Powerweb*").  The plaintiffs in *Lifetime Serv. Ctr., Inc. v. Murata Manufacturing Co. Ltd.*, No. 18-cv-00511-EJD (N.D. Cal.), and *Arch Electronics, Inc. v. Murata Manufacturing Co. Ltd.*, No. 18-cv-01128 (N.D. Cal.) ("*Arch*"), support this opposition.

[2]    *Five Rivers Elec. Innovations LLC v. Kemet Corp.*, No. 18-cv-00851-EJD (N.D. Cal.).

[3]    It appears from the complaint that all eight of these law firms represent the same client.

[4]    https://www.bestlawyers.com/Search?query=Michael%20Lehmann.

1    named Ms. Sweeney as one of the top 500 lawyers in the country in 2018.[5]  Christopher

2    Lebsock, another partner at Hausfeld, has been practicing for twenty-two years and has

3    overseen numerous antitrust class actions.  Among its many accomplishments, Hausfeld has

4    most recently won plaudits from Chambers & Partners, the Legal 500, and *Global*

5    *Competition Review*.[6]  Hausfeld's team has unmatched experience in leading and litigating

6    claims in multi-defendant, complex actions such as this one.

7        Lesley Weaver, a partner at BFA and the head of its Antitrust and Consumer practice

8    group, has practiced class action law for over twenty years, with fifteen years of experience in

9    antitrust class actions in particular.  Her recent appointment to the Plaintiffs' Steering

10   Committee of *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products*

11   *Liability Litigation*—chosen from a field of 150 of the nation's finest class action lawyers—

12   reflects her experience and the quality of her work, as does her recognition as a 2018

13   California Lawyer of the Year and her selection by the *National Law Journal* as a 2018

14   Trailblazer in the Plaintiffs' bar.  Most recently, Ms. Weaver was appointed to the Plaintiffs'

15   Steering Committee of *In re German Automotive Manufacturers Antitrust Litigation*, No. 17-

16   md-2796-CRB (N.D. Cal.), again over a talented field of counsel, including JSLF.  Likewise,

17   her partners Joseph Fonti and Javier Bleichmar of BFA have equally impressive experience

18   and reputations.  While Mr. Fonti and Mr. Bleichmar would not lead the *Inductors* cases, they

19   are invaluable resources to Ms. Weaver and her team.

20       To be clear, JLSF's two partners, Joseph Saveri and Steven Williams (who joined

21   JSLF on April 2, 2018) are talented and experienced antitrust lawyers.  These capable lawyers

22   could play a useful role in this litigation and, if the Court chooses to appoint JSLF in some

23   capacity, BFA and Hausfeld will work with them.  However, JSLF and the seven additional

24   firms it seeks to appoint to an Executive Committee have not demonstrated that in this case

25   they are "the applicant[s] best able to represent the interests of the class."  Fed. R. Civ. P.

26   _____

     [5]   http://www.lawdragon.com/the-2018-lawdragon-500-leading-lawyers/.

27   [6]   https://www.hausfeld.com/news-press/hausfeld-lauded-as-band-one-top-tier-and-elite-

28   in-competition-law-across-mu.

1    23(g)(2).  JSLF has not accomplished enough *in this case* to justify a sole interim leadership

2    position.  It filed the fifth of six pending complaints and has since engaged in non-productive

3    duplicative efforts for the sole purpose of enhancing its leadership bid (including filing

4    redundant motions to relate and to consolidate).  This belated effort should not displace the

5    interim leadership demonstrated by BFA and Hausfeld, let alone exclude them from

6    participation in an action they initiated.

7    **II.     LEGAL STANDARD**

8           In appointing interim class counsel under Rule 23(g), the Court should select the

9    "most qualified" applicants, using factors such as the work done on behalf of the class,

10   counsel's relevant experience and knowledge of the law, the degree of investigation and

11   research in developing claims, the resources the applicants can offer the class, and the efforts

12   to bring together counsel.  *See Bernal v. Netflix, Inc.*, No. 11-cv-00820-EJD, 2011 WL

13   13157369, at *2 (N.D. Cal. Aug. 12, 2011).  Those factors weigh in favor of appointing BFA

14   and Hausfeld as co-lead counsel.

15   **III.    DISCUSSION**

16          Courts appoint interim lead counsel to ensure that the proposed class is fairly and

17   adequately represented, while at the same time ensuring that designated counsel will act

18   fairly, efficiently, and economically in the interests of all parties and parties' counsel, as well

19   as the Court.  *See* MANUAL FOR COMPLEX LITIG. (Fourth) § 10.22; *In re Packaged Ice*

20   *Antitrust Litig.*, No. 08-md-01952, 2009 WL 1518428, at *1 (E.D. Mich. June 1, 2009) ("In

21   appointing lead class counsel, a court should conduct an independent review to ensure that

22   counsel appointed to leading roles are qualified and responsible, that they will fairly and

23   adequately represent all of the parties on their side, and that their charges will be

24   reasonable.").

25          JSLF has done little to advance the interests of the proposed plaintiff class in this case.

26   After filing the *Five Rivers* complaint, JSLF filed a duplicative motion to relate these cases to

27   *In re Capacitors Antitrust Litigation*, No. 14-cv-03264-JD (N.D. Cal.) ("*Capacitors*")—

28

despite the fact that Judge James Donato (who presides over *Capacitors*) had previously rejected a motion to relate *Inductors* to *In re Resistors Antitrust Litigation*, No. 15-cv-03820-JD (N.D. Cal.) ("*Resistors*").  In this, as in other matters as described below, JSLF has made no serious effort to coordinate with counsel representing other plaintiffs in these related actions.

Furthermore, JSLF's experience in *Capacitors* does not trump the other Rule 23(g) factors in play in here.  Although JSLF's complaint is not an exact copy of BFA and Hausfeld's previously-filed complaints, JSLF benefited from BFA's and Hausfeld's early analysis and leadership.  Moreover, the *Dependable* and *Powerweb* complaints contain factual and economic allegations distinct from those in *Five Rivers*, based on proprietary work that JSLF could not simply copy.  In addition, the Court should consider whether JSLF can lead this case in a cost-effective manner in light of its size and other litigation commitments.  In contrast, BFA and Hausfeld have already demonstrated professional and efficient leadership in this case, and the two firms have the superior resources and capacity to lead this case.  They therefore jointly request that JLSF's application for sole lead be denied.

### A.  JSLF's Work Does Not Justify Its Appointment As Sole Lead.

As suggested by this Court in *Bernal*, 2011 WL 13157369, and *Paraggua v. LinkedIn Corp.*, No. 12-cv-03088-EJD, 2012 WL 3763889 (N.D. Cal. Aug. 25, 2012), a key factor that a court must consider in selecting interim lead counsel under Fed. R. Civ. P. 23(g) is the work counsel has done in identifying or investigating potential claims and organizing the cases after a complaint is filed.  JSLF claims that it should be appointed as sole lead because it alone began researching the inductors industry in August of 2016 and because its complaint—in which additional defendants are named—is the most comprehensive.  *Dependable* ECF No. 81 at 2, 5-9.  Neither of these factors justifies JSLF's request that the eight firms on the *Five Rivers* complaint should control leadership to the exclusion of all other Plaintiffs' counsel.

To the extent that JSLF began examining the inductors industry in 2016, such investigative work is neither unique nor decisive on the issue of leadership.  Conspiratorial

1   activity in various sectors of the passive components industry has been widely suspected since

2   the revelations of the United States Department of Justice's ("DOJ") investigation into

3   capacitors in 2014.  Many practitioners in this field have been aware of the potential for

4   additional cases arising from price-fixing of passive electronic components.  *See* Decl. of

5   Lesley E. Weaver ("Weaver Decl."), Ex. 1 (Oct. 1, 2015 *Law360* article entitled "Current

6   Capacitor Investigation May Be Tip of Large Iceberg").  Yet no firm—including JSLF—took

7   action until it became clear in January of 2018 that the DOJ had begun issuing criminal

8   subpoenas relating to inductors.  Indeed, JSLF noted that the *Resistors* case is a "spin off"

9   from *Capacitor*s (*Dependable* ECF No. 81 at 2 n.3).  The same is true here.

10          In addition, JSLF's complaint does not contain significantly more information than the

11   prior complaints, and lacks the expert analyses found in the complaints prepared by BFA and

12   Hausfeld, which each independently expended significant resources in investigating these

13   claims, including purchasing proprietary economic reports and retaining economic consultants

14   with extensive experience in electronic component cases.

15          Specifically, BFA developed its own economic analysis, illustrated in part by the

16   proprietary graphs and charts in its complaint, analyzing price trends and overall structure of

17   the market. *See*, *e.g.*, *Dependable* ECF No. 1 at ¶¶ 90-91 (alleging that "prices for Inductors

18   remained stubbornly high" during the Class Period and that "[p]rices of Inductors barely

19   budged from 2009 to 2011, despite the excess capacity that firms would face due to the Great

20   Recession," whereas "during the 2001 recession prices of Inductors fell 27.6%").  The

21   *Dependable* complaint plausibly alleges conspiracy based on the tendency of inductors' prices

22   to defy the laws of supply and demand: "Prices of Inductors would remain stubbornly flat

23   from 2003 onward, hovering just above $0.03 a piece, despite the forces (such as competing

24   semiconductor chip technology and increased competition from Chinese and Taiwanese

25   competitors) that should have lowered the competitive prices for Defendants' products." *Id.*

26   at ¶ 89.  This analysis by BFA, relying on fifteen years' worth of data from several sources,

27   distinguishes its complaint.  Many of the other factual and legal theories pled by BFA were

28


1    substantially incorporated in the other *Inductors* complaints by plaintiffs separately seeking

2    sole leadership. *See*, *e.g.*, *id.* at ¶¶ 19, 21, 23, 25, 30 (alleging that five defendant families

3    were involved in cartel activity and identifying 2007 North American sales figures for these

4    Defendants); *Five Rivers* ECF No. 1 at ¶¶ 24, 36, 41, 45, 51 (alleging the same 2007 North

5    American sales figures first alleged by BFA for five defendant families); *Cambridge Capital*

6    *Corp. v Murata Mfg. Co., Ltd.*, No. 18-cv-00686-EJD (N.D. Cal.), ECF No. 1 at ¶¶ 17-38

7    (identifying the same five defendant family group alleged by BFA).

8       BFA's *Dependable* complaint also contains other analyses not found in the *Five*

9    *Rivers* complaint. First, the *Dependable* complaint focuses on analysis of the inductors

10   market and the unusual conditions during the Class Period—including prices rising while

11   demand falls—that is indicative of cartel activity. The *Five Rivers* complaint focuses instead

12   on passive electronics more generally, including the theme that inductors are subsumed in a

13   larger passive electronic components market. *Five Rivers* ECF No. 1 at ¶¶ 8 (alleging all

14   inductors Defendants manufacture capacitors), 11, 94 ("Capacitors comprised about 78% of

15   the overall industry, while Inductors and resistors each accounted for about 11% of total

16   sales.").[7] Five Rivers' allegations conflate the types of capacitors that are at issue in the

17   *Capacitors* action with those that are not, and *Capacitors* Judge Donato has twice rejected

18   these conclusions. The *Dependable* complaint cites data, including pricing information, from

19   2000 through 2015, and includes an analysis of the market at the beginning and the end of the

20   Class Period. *Dependable* ECF No. 1 at ¶¶ 87-91, 96 ("As of 2004, Defendants had over 80%

21   of the market in Inductors."), 98 ("In 2016, Defendants had two-thirds of the Inductors

22   market."). By comparison, the *Five Rivers* complaint has no analysis at all of pricing or

23   market share prior to 2007. In short, BFA filed a unique and substantive complaint first

24   because it was nimble enough and had significant enough resources to pour them into the

25   case, something it will continue to do as co-lead counsel if it is appointed.

26

      [7]   This analysis by JSLF conflates ceramic capacitors (which are not at issue in the

27   *Capacitors* litigation and are most of the global capacitors market by revenue) with distinct markets for film and electrolytic capacitors. In 2015, for example, 56% of capacitors sold in

28   the North American channel were ceramic capacitors. *See* Weaver Decl., Ex. 4.

1    Hausfeld's *Powerweb* and *Arch* complaints likewise contain many allegations not

2    found in the *Five Rivers* complaint, such as: (a) Federal Reserve Economic Data on import

3    prices correlated to milestones associated with the Information Technology Agreement

4    (*Powerweb* ECF No. 1 at ¶ 6); (b) comparisons with raw materials cost indices and statistical

5    demand evidence during the same period (*id*. at ¶¶ 7-8); (c) detailed analysis of the United

6    States inductors market based on a proprietary 2017 economic report that JSLF does not

7    appear to have consulted, as well as internet resesarch (*id*. at ¶¶ 48-52); market charts and

8    analyses derived from the aforementioned 2017 report (*id*. at ¶¶ 3-4, 67-68, 75, 80); (f) a chart

9    of 2016 values, volume and pricing forecasts from Paumanok Group Consulting (*id*. at ¶ 69));

10   (g) United Nations data on inductors as a commoditized product (*id*. at ¶ 72); (g) important

11   admissions about collusion contained in Panasonic's public filings (*id*. at ¶¶ 90-91); extensive

12   information on the Electronic Components Industry Association (*id*. at ¶¶ 97-100); (h)

13   detailed discussion of the structure and purposes of the Japanese Electronics and Information

14   Technology Association ("JEITA") including (contrary to JSLF's arguments) identification of

15   key corporate employees of Defendants that had important roles in JEITA (*id*. at ¶¶ 100-01).

16   The *Arch* complaint contains detailed discussion and quotations from the website of another

17   industry trade association, the European Passive Components Industry Association.  *Arch*

18   ECF No. 1 at ¶ 102.  It also includes a chart depicting the organizational structure of JEITA

19   and includes a discussion of JEITA's own recognition of its antitrust violations in 2014,

20   something absent from the *Five Rivers* complaint.  *Id*. at ¶ 108.  In short, BFA, Hausfeld, and

21   JSLF all conducted research that is reflected in differing allegations in their respective

22   complaints.  It is thus inaccurate for JSLF to suggest that it has a monopoly on careful

23   investigative work here.[8]

24

25   _____

      [8]   In similar circumstances, JSLF previously, and correctly, criticized an attempt by
      firms that filed late for seeking to supplant the participation of all other plaintiffs who had
26   filed cases.  In opposing a competing leadership bid in *Capacitors*, JSLF noted that "the *only*
      firms that support PSW and LGN are the firms included on the *Home Tech* Complaint, filed
27   nearly three months after this litigation commenced."  *Capacitors* ECF No. 265 at 8.  JSLF
      observed that "[a]ppointing PSW and LGN to lead these actions would be bad policy as it
      would (1) penalize firms for privately ordering in an efficient and timely manner; (2)
28   discourage tag-along plaintiffs from participating and collaborating with those who have

1       Nor is JSLF's leadership bid enhanced by naming additional defendants.  Despite

2  JSLF's claim that the addition of several defendants from the *Capacitors* litigation

3  demonstrates the superiority of its complaint, the centrality of those defendants here is far

4  from clear.  According to a leading industry publication, as of 2007, JSLF's defined

5  "Common Defendants"[9] had only 2.8% of the inductors commerce in the North American

6  channel, more than half of that coming from Panasonic, which also was named as a defendant

7  by both BFA and Hausfeld.[10] The defendants named by BFA and Hausfeld, in contrast,

8  controlled between two-thirds and four-fifths of the market share for inductors during the

9  Class Period.  *See, e.g.*, *Dependable* ECF No. 1 at ¶ 96.  On the basis of available information,

10  it was thus a well-reasoned choice not to add additional defendants with only 1.4% of the

11  commerce.  JSLF's decision to add these small players at this juncture may have been

12  motivated by a desire to make the *Five Rivers* complaint as coextensive as possible with the

13  *Capacitors* complaint, thereby furthering JSLF's ultimately unsuccessful attempt to relate the

14  *Inductors* cases to *Capacitors*, in which JSLF is lead counsel for direct purchasers.[11]  *See*

15  *Capacitors* ECF No. 2067 at 3-4 & n.2.

---

already filed lawsuits; (3) incentivize firms to avoid compromising until the very last second out of fear that a late filer could upset the compromise and supplant the consensus group; and (4) upend the progress made by counsel who diligently advanced the litigation." *Id.* These same arguments apply here.

   [9]  The *Five Rivers* complaint refers to "Common Defendants" between both the *Inductors* and *Capacitors* cases, which are Okaya Electric Industries Co., Ltd., Okaya Electric America Inc., Panasonic Corporation, Panasonic Electronic Devices Co. Ltd., Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corporation, KEMET Corporation, KEMET Electronics Corp., TOKIN Corporation, TOKIN America, Inc., and NEC Corporation.  BFA and Hausfeld have sued the Panasonic Defendants, which are affiliated with Sanyo.  *See Dependable* ECF No. 1 at ¶ 123.

   [10]  *Discrete Inductor Markets in North America: 2007-2014 Market Outlook Report* (2007).

   [11]  This is the not the first time that JSLF has named additional parties to lend the impression that a case is more closely related to the *Capacitors* litigation.  In *Resistors*, JSLF also filed an initial complaint on behalf of direct purchaser plaintiffs that named numerous defendants.  JSLF named nine parties—AVX Corporation, KEMET Corporation, KEMET Electronics Corporation, SANYO Electric Co., Ltd., SANYO North America Corporation, TDK Corporation, TDK-EPC Corporation, TDK U.S.A. Corporation, and Vishay Intertechnology, Inc.—that had been named in the *Capacitors* actions.  Notably, these entities were not named as defendants following the appointment of lead counsel.

1    Indeed, JSLF's unnecessary relation motion, and the other tasks it claims demonstrate

2    leadership, suggest that JSLF will not litigate this case efficiently or cooperatively.  For

3    example, Judge Donato had earlier declined to relate *Dependable* to *Resistors*, but JSLF

4    brought a very similar motion to relate these cases to *Capacitors*.  *Resistors* ECF No. 383;

5    *Dependable* ECF No. 76.  JSLF's correspondence with Defendants demanding cooperation

6    from any potential leniency applicant under ACPERA was also duplicative.  *Dependable* ECF

7    No. 81 at 9.  Such outreach is an important first step, but BFA and Hausfeld had already made

8    ACPERA cooperation demands on Defendants before JSLF filed its complaint.  JSLF's

9    failure to coordinate with BFA or Hausfeld before sending these copycat letters resulted in

10    unnecessary work for Plaintiffs and Defendants alike.  The same is true of JSLF's efforts to

11    initiate service on Japanese entities, which BFA and Hausfeld had already done.  *Dependable*

12    ECF Nos. 45 at 3-4, 57 at 3-4.  Most recently, JSLF filed a motion to consolidate, despite that

13    BFA and Hausfeld already moved to consolidate the then-pending cases and all subsequently-

14    filed related cases.  *See id.* ECF Nos. 18, 82.  In contrast, BFA and Hausfeld also proposed an

15    initial case management order and have sought early production of the documents Defendants

16    produced to the DOJ in response to the subpoenas.  *Id.* ECF Nos. 18, 23, 65.  This reflects

17    both proactive efforts and appropriate deference to the Court and its processes.

18    **B.  JSLF's Appointment in *Capacitors* Does Not Merit Its Appointment as Sole**

19    **Lead in this Action.**

20    JSLF's next argument—that its role as lead counsel for the direct purchaser class in

21    *Capacitors* justifies its appointment as sole lead in this action (*Dependable* ECF No. 81 at 9-

22    11)—fails for several reasons.

23    *First*, any efficiencies from having the same lead counsel in both cases are absent now

24    that Judge Donato has found the two cases are not sufficiently related to have them formally

25    proceed together.

26    *Second*, JSLF's experience in *Capacitors* does not trump all Rule 23(g) factors that the

27    Court must consider.  In assessing JSLF's leadership bid, it is instructive to review Judge

28

Whyte's consideration of the same argument when JSLF sought, and was denied, leadership in *Resistors*.  There, JSLF and another firm, Cera LLP ("Cera"), sought co-leadership; unlike here, no sole leadership was proposed.  As it does here, JSLF cited its expertise derived from *Capacitors* and its extensive pre-filing investigation and research. Weaver Decl., Ex. 2 (*Resistors* ECF No. 69 at 9, 12-13, No. 81 at 1-2, 8).  Upon careful consideration of Rule 23(g) factors, the Court chose two other firms over JSLF and Cera.  *Resistors* ECF No. 89 at 3.  The Court also noted JSLF's role in *Capacitors*, but thought that the demands of that case operated adversely to a leadership role in *Resistors*.  *Id.*

   *Third*, JSLF asserts that all Defendants named in the *Inductors* actions manufacture capacitors as well as inductors, presumably to make the point that JSLF's expertise in *Capacitors* should be dispositive here.  However, this is a misleading argument.  While it is true that these defendants manufacture capacitors, they manufacture ceramic capacitors, which are not part of the conspiracy alleged in the *Capacitors* litigation.  *See In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1062 (N.D. Cal. 2015) (capacitors cartel activity concerned meetings organized around the types of capacitors at issue—aluminum, tantalum, and film).  As JSLF is presumably aware, the *leading* inductor manufacturers are not currently parties to the *Capacitors* litigation.  *See* Weaver Decl., Ex. 3 (identifying Murata, Taiyo Yuden, and TDK as leading ceramic capacitor manufacturers).  These distinctions in the markets at issue in *Capacitors* and *Inductors* support Judge Donato's decision to deem the *Inductors* litigation unrelated to *Capacitors*.  In any event, as this discussion suggests, BFA and Hausfeld are equally capable of analyzing the inductors market, and perhaps more focused on pleading the best case for the class.

   **C.  A Single Firm Leadership Structure Is Not Preferable to Two Co-Leads Here.**

   JSLF asserts that having a sole lead here is more efficient and preferable to having two co-leads, but BFA and Hausfeld have already demonstrated their efficiency and cooperation in this case.  As JSLF has acknowledged before, there are good reasons to appoint a two-firm co-lead leadership team, particularly in a case such as this one and based on the facts before

1    this Court.  A two-firm leadership structure generally allows for a cross-check on resources

2    expended on behalf of the class.  This becomes particularly important in antitrust cases, which

3    in general last longer and involve more complicated claims, and thus will, over time, require

4    significant expenditure of time and resources.  *See In re Domestic Airline Travel Antitrust*

5    *Litig.*, MDL No. 2656, Misc. No. 15-1404 (CKK) (D.D.C.), ECF No. 76 (appointing two

6    firms, including Hausfeld, as co-lead counsel over a proposal that involved one firm).

7    Moreover, where firms work efficiently and well together, there are benefits to external

8    analysis and collaboration that are subtle but important.  Critical but constructive input

9    outside of one defined thought paradigm is important in cases of such complexity.  Courts

10   recognize that one firm is not inherently more efficient than two firms working closely

11   together.  *See, e.g.*, *Lowery v. Spotify, USA, Inc*., No. 15-cv-09929-BRO, 2016 WL 6818756,

12   at *5 (C.D. Cal. May 23, 2016).

13         There are numerous examples in antitrust class actions in this district where a two-firm

14   co-leadership structure was adopted.  Indeed, as noted above, in *Resistors*, JSLF and Cera

15   sought to be appointed as co-leads and Judge Whyte ultimately picked two other firms as co-

16   leads.  Hausfeld and another firm were selected as the two co-leads in two major airline

17   antitrust class actions before Judge Charles Breyer in this district.  *In re Int'l Air Passenger*

18   *Surcharge Antitrust Litig*., MDL No. 1793 (N.D. Cal.), ECF No. 320; *In re Transpacific Air*

19   *Transp. Antitrust Litig*., MDL No. 913 (N.D. Cal.), ECF No. 175.  In the *TFT-LCD* cases,

20   Judge Illston selected two co-leads each to lead the direct purchaser and indirect purchaser

21   classes.  *In re TFT-LCD (Flat Panel) Antitrust Litig*., No. 07-md-01827-SI (N.D. Cal.), ECF

22   No. 224.  Similarly, two co-leads were selected for the direct purchaser class in the flash

23   memory antitrust litigation.  *In re Flash Memory Antitrust Litig*., No. 07-cv-00086-SBA (N.D.

24   Cal.), ECF No. 258.  And Hausfeld and another firm were appointed as co-leads for the direct

25   purchaser class in the Korean ramen antitrust litigation.  *In re Korean Ramen Direct*

26   *Purchaser Antitrust Litig*., No. 13-cv-04148-WHO (N.D. Cal.), ECF Nos. 22, 30.  Thus, the

27   practice of appointing two interim co-lead counsel is well recognized in this district.  There is

28

1    good reason to do the same in this case, and JSLF has not persuasively shown why a single

2    co-lead here is preferable.

3            **D.  The Alternative Structure Proposed By JSLF Is Unwieldly And Inefficient.**

4             JSLF proposes itself as sole lead counsel *and* an Executive Committee of the seven

5    other firms on the *Five Rivers* complaint to "assist and advise" it.  *Dependable* ECF No. 81-2

6    at 2.  *See Dependable* ECF No. 81 at 14.  On the *Five Rivers* complaint, a total of *17* counsel

7    from eight firms are listed.  *Five Rivers* ECF No. 1 at 30-32.[12]  This is an inefficient and

8    bloated structure.

9            Other judges have questioned similar proposals by JSLF.  In *In re Lenovo Adware*

10   *Antitrust Litig.*, No. 15-md-02624-RMW, 2015 WL 10890657 (N.D. Cal. July 7, 2015), Judge

11   Whyte observed that JSLF's "motion is unclear regarding to what extent JSLF, despite its

12   application to be appointed sole interim lead counsel, intends to work in conjunction with

13   attorneys from Karon LLC, Heins Mills & Olson, P.L.C., and the Howard Law Firm, and

14   where they reside."  *Id.* at *2.  Here, it is known that JSLF intends to staff an Executive

15   Committee consisting of the seven other firms listed on the *Five Rivers* complaint.  JSLF's

16   motion does not delineate their roles in the advancement of the case to date, or their proposed

17   roles in the further prosecution of claims.[13]  Courts have not hesitated to refuse appointment

18   of unnecessary Executive Committees like these.  *See, e.g., Kamakahi v. Am. Soc'y for*

19   *Reproductive Med.*, No. 11-cv-01781-SBA, 2012 WL 892163, at *3 (N.D. Cal. Mar. 14,

20   2012) (after appointing two co-leads, court refused to appoint an additional Executive

21   Committee consisting of those firms and a third firm); *Cooperman v. Galeos LLC*, No. 10-cv-

22   01815-JVS, 2011 WL 13227858, at *2 (C.D. Cal. April 18, 2011) ("[T]he Court believes that

23   the benefits of additional experience and geographical diversity are substantially outweighed

24

25       [12]   All of these counsel have submitted letters of support for JSLF, but that is hardly
         surprising, given his commitment to put them on an Executive Committee to the exclusion of
26       all other Plaintiffs' counsel with clients in these cases.

27       [13]   To the extent any additional submissions are made by JSLF, BFA and Hausfeld will
         respectfully seek leave to respond to this or any other new argument or fact advanced by
28       JSLF.

1    by the organizational difficulties and leadership issues that would arise from appointing a

2    two-firm Executive Committee in addition to the two-firm Interim Co-Lead Counsel.  The

3    Court therefore finds that it is not in the best interest of the class to appoint an Executive

4    Committee.").

5         By contrast, BFA and Hausfeld propose no creation of a multi-firm Executive

6    Committee.  Neither BFA nor Hausfeld has any agreements with any other firms or lawyers

7    seeking roles in this action.  They will run this case efficiently, instructing firms to do discrete

8    assignments, monitoring the work carefully, and capping rates for attorney tasks best

9    performed by more junior lawyers.  If appointed, BFA and Hausfeld will propose that

10   accumulated lodestar be reported periodically to the Court, as it is now in *Domestic Airline*.[14]

11   BFA and Hausfeld have attached to Lesley Weaver's declaration a set of billing protocols

12   modeled on those used by Hausfeld in other cases in which it is lead counsel, including *In re*

13   *Packaged Seafood Products Antitrust Litigation*, No. 15-md-02670-JLS (S.D. Cal.).  Weaver

14   Decl., Ex. 5.

15        **E.  JSLF Lacks The Resources To Effectively Lead This Case.**

16        JSLF's inclusion of seven additional law firms on its complaint, and its proposal that

17   these firms all be appointed to "advise and assist" JSLF's work, underscores the fact that

18   JSLF lacks the resources to effectively manage this case.  This conclusion is corroborated by

19   the firm resume JSLF submitted with its motion.  *Dependable* ECF No. 81-3.  JSLF has

20   twelve attorneys.  There are only two partners at the firm, one of counsel and three staff

21   attorneys; the rest are associates.  Whether the lawyers at JSLF will be able to manage this

22   caseload with two partners, while leading *Inductors,* is simply not clear.

23        The *Capacitors* case, in which JSLF is sole lead, will continue to require substantial

24   resources.  Discovery is ongoing, and Judge Donato has not ruled on the Direct Purchaser

25   Plaintiffs' motion for class certification.  The parties have not yet filed summary judgment

26

27        [14]   BFA and Hausfeld agree that only contemporaneously recorded and accurate attorney
     hourly records should be submitted in connection with fee requests.  A billing protocol *and*

28   periodic reporting to the Court can help prevent any issues from arising.

1  motions or engaged in expert merits discovery.  *See Capacitors* ECF No. 2026 at 2 (adopting

2  schedule set forth at ECF No. 1907 and adding sixty days).  Judge Donato has indicated he

3  will set a trial date for April of 2019.  *Id.* ECF No. 1925 at 16.  The scheduling dates in

4  *Capacitors* is likely to be fluid as Judge Donato granted the DOJ's motion to stay the

5  depositions of certain witnesses.  *Id.* ECF No. 2051.

6       Upon similar facts, in *Resistors*, Judge Whyte noted that "the Saveri and Cera firms

7  have a combined total of only 11 attorneys and suggest that Saveri's and Cera's other

8  commitments—including Saveri's leadership role in the co-pending *Capacitors Antitrust*

9  *Litigation* in this district—may be an impediment to dedicating sufficient resources to this

10  case." *Resistors* ECF No. 89 at 5.  The Court concluded that "because Cohen Milstein and

11  Hagens Berman [the other two firms competing for co-leadership] have more personnel

12  within their firms, it is at least plausible that they will be able to commit more resources than

13  the Saveri and Cera firms to representing the purported class." *Id*.  The court was also

14  persuaded that the "footprint [of Hagens Berman and Cohen Milstein] on the east and west

15  coasts may tend to reduce the cost of dealing with Defendants and witnesses in multiple

16  locations." *Id.* at 6.  All of these same considerations apply here, where both BFA and

17  Hausfeld have offices on the east and west coasts and significantly lighter case loads for the

18  lawyers the firms will commit to this case.  *See Bates v. Kashi Co*., No. 11-cv-01967, 2012

19  WL 12846999, at *2 (S.D. Cal. Jan. 18, 2012) (although both groups vying for leadership had

20  "appreciable resources" to commit, the "greater collective resources" of one group led it to

21  prevail).

22       **F.  Hausfeld Has No Conflict of Interest.**

23       Finally, JSLF makes a claim that Hausfeld has a conflict of interest in this case, which

24  is both incorrect and patently strategic.  Hausfeld represents two Powerweb entities, which

25  bought discrete inductors, and Arch, which bought price-fixed inductors contained in finished

26  products made by some of the Defendants (such as some of the Panasonic entities).[15]  Each of

27

28       [15]   The fact that Arch did not have purchases from *all* Defendants is immaterial.  It is a
basic and fundamental concept in antitrust law that "[b]ecause antitrust liability is joint and

these plaintiffs purchased price-fixed goods *directly from a defendant*, and each has a *federal damages* claim under the Sherman and Clayton Acts.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR, 2014 WL 4955377, at *25 (N.D. Cal. Oct. 2, 2014) ("The DPPs allege, in essence, the beginning and the end of a chain that links the price-fixed good to their purchase . . . ."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 WL 5357906, at *2 (N.D. Cal. Nov. 7, 2011) (denying Toshiba Corporation's motion to dismiss direct purchasers' claims under *Illinois Brick* where plaintiffs had purchased computers with price-fixed screens from defendant).

JSLF's argument is made at this stage of the litigation to advance a leadership bid, not because it has substantive power.  In support of his assertion that direct and indirect purchasers "may rely on different legal theories and damage models," JSLF misleadingly cites several cases in which indirect purchasers *lacked any federal damages claim*, and instead asserted *state law* damages claims.  In all of those cases (*see Dependable* ECF No. 81 at 16), the indirect purchasers—unlike Arch—did not purchase a price-fixed product directly from a defendant.  Instead, they purchased the priced-fixed product from the defendant's downstream customer.  *See id.*, citing *In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685, 690 (9th Cir. 2011) ("Plaintiffs are indirect purchasers of airline tickets; that is, they did not purchase tickets directly from Korean Air or Asiana but instead bought them from direct purchasers such as travel agents and consolidators."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 29 (D.D.C. 2008) ("The plaintiffs were divided into two putative classes—those who allegedly purchased rail freight transportation services directly from Defendants from July 1, 2003 until at least June 30, 2007 and who were assessed a rail fuel surcharge for the transportation services, and those who allegedly purchased rail freight transportation services indirectly from the Defendants."); *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 995-96 (E.D. Mich. 2010) ("In this multidistrict litigation involving 68

---

several, a Plaintiff injured by one Defendant as a result of the conspiracy has standing to represent a class of individuals injured by any of the Defendant's coconspirators."  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508 (S.D.N.Y. 1996).  *Accord Oxbow Carbon & Minerals v. Union Pac. Rwy.*, 81 F. Supp. 3d 1, 4 (D.D.C. 2015).

1   consolidated actions, Plaintiffs are both direct purchasers (retail stores and gas stations who

2   purchased from Defendants) and indirect purchasers (individuals who purchased from retail

3   stores and gas stations) of Packaged Ice from Defendants in the United States."); *DIK Drug*

4   *Co. v. Altana Pharma AG*, No. 07-5849 (JLL), 2008 WL 2264586, at *2 (D.N.J. June 2, 2008)

5   (addressing propriety of consolidating, rather than coordinating, separate cases: in one case

6   plaintiffs purchased drugs directly from defendants; in another, health and welfare funds

7   indirectly purchased those same drugs by paying insurance benefits).

8          The argument now advanced by JSLF is incorrect, and contradicts past positions

9   asserted by Mr. Saveri.  When he was a partner at another law firm and had part of the

10  responsibility for running the direct purchaser *TFT-LCD* case, he and his firm represented

11  both purchasers of LCD panels and purchasers of certain products containing LCD panels—

12  and reached multiple settlements on both sets of claims.[16]  They certainly perceived no

13  conflict in doing so then.  To invent one now seems to be no more than a tactical ploy to

14  advance JSLF's leadership claim.[17]

15  **IV.    CONCLUSION**

16         For all of the foregoing reasons, BFA and Hausfeld respectfully request that the motion to

17  appoint JSLF as sole lead counsel and appoint an Executive Committee consisting of the seven

18  firms on the *Five Rivers* complaint should be denied, in favor of the appointment of BFA and

19  Hausfeld as co-lead counsel.

20

21

22

23

24

---

25  [16]  *See* https://secureweb.rustconsulting.com/tftlcdclassaction/DirectPurchaserFaqs.htm.
    Similarly, settlements of direct purchaser claims in the CRTs class case involved buyers of
    both cathode ray tubes and certain products cathode ray tubes.  *See*
26  http://www.crtdirectpurchaserantitrustsettlement.com/.

27  [17]  Indeed, the *Five Rivers* complaint is ambiguous as to how class members bought
    inductors.  Paragraph 81 thereof could reasonably be read to say that a portion of the pertinent
28  import commerce consists of products incorporating inductors.

---

JOINT OPP'N TO SOLE LEAD COUNSEL MOT.                                    18-CV-198-EJD

16

1   Dated: April 5, 2018                     Respectfully submitted,

2                                            /s/ Lesley E. Weaver

3                                            Lesley E. Weaver (SBN 191305)
                                             Matthew S. Weiler (SBN 236052)
4                                            BLEICHMAR FONTI & AULD LLP
                                             555 12th Street, Suite 1600
5                                            Oakland, CA 94607
                                             Tel.: (415) 445-4003
6                                            lweaver@bfalaw.com
                                             mweiler@bfalaw.com
7

8                                            *Attorneys for Plaintiff Dependable
                                             Component Supply Corp.*
9

10                                           /s/ Michael P. Lehmann

11                                           Michael P. Lehmann (SBN 77152)
                                             Bonny E. Sweeney (SBN 176174)
12                                           Christopher L. Lebsock (SBN 184546)
                                             Samantha Stein (SBN 302034)
13                                           HAUSFELD LLP
                                             600 Montgomery Street, Suite 3200
14                                           San Francisco, CA 94111
                                             Tel: (415) 633-1908
15                                           mlehmann@hausfeld.com
                                             bsweeney@hausfeld.com
16                                           clebsock@hausfeld.com
                                             sstein@hausfeld.com
17

18                                           Joshua H. Grabar (admitted *pro hac vice*)
                                             GRABAR LAW OFFICE
19                                           1735 Market Street, Suite 3750
                                             Philadelphia, PA 19103
20                                           Tel.: (267) 507-6085
                                             jgrabar@grabarlaw.com
21

22                                           *Attorneys for Plaintiffs Powerweb, Inc.,
                                             Powerweb Energy, Inc., and Arch
23                                           Electronics, Inc.*

24                                           Marc H. Edelson (admitted *pro hac vice*)
                                             EDELSON & ASSOCIATES, LLC
25                                           3 Terry Drive, Suite 205
                                             Newtown, PA 18940
26                                           Tel.: (215) 867-2399
                                             medelson@edelson-law.com
27

28                                           *Attorney for Plaintiffs Powerweb, Inc. and
                                             Powerweb Energy, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Guido Saveri
Guido Saveri (SBN 22349)
R. Alexander Saveri (SBN 173102)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Tel: (415) 217-6810
guido@saveri.com
rick@saveri.com

*Attorneys for Arch Electronics, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE ATTESTATION

Pursuant to General Order No. 45(X)(B), I hereby attest that I have obtained the concurrence in the filing of this document from all signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document.  I have on file records to support this concurrence for subsequent production for the court if so order or for inspection upon request.

Dated: April 5, 2018                          /s/ Lesley E. Weaver

Lesley E. Weaver

*Attorney for Plaintiff Dependable Component Supply Corp.*