

Re:  *In re Inductors Antitrust Litigation*, No. 5:18-cv-198-EJD-NC

August 30, 2018

Dear Judge Cousins:

The Direct Purchaser Plaintiffs ("Plaintiffs") and Defendants in the *Inductors Antitrust Litigation* jointly submit this letter to determine whether non-merits discovery should proceed while the Court considers Defendants' forthcoming motion to dismiss.  Briefing on the motion to dismiss will be complete on January 28, 2019.

Merits discovery is currently stayed pursuant to a stipulation between Plaintiffs and the United States Department of Justice ("DOJ") that the Court endorsed on June 29, 2018.  Defendants were not party to that stipulation, and the Court's order endorsing the stipulation stated that the order did not preclude Defendants from raising objections to any discovery Plaintiffs might serve.  ECF No. 181.

On May 25, 2018, Plaintiffs served document requests ("RFPs") on five of the seven Defendants (*i.e.*, those Defendants that had appeared in the litigation and participated in an initial Rule 26(f) conference) seeking production of transactional data and other non-merits documents relating to costs, prices and markets for products at issue in the CAC.  Those five Defendants objected to the RFPs on June 25, 2018, asserting, *inter alia*, that the requested discovery was burdensome and premature, and that discovery should be stayed until the plausibility of the CAC is decided.  Plaintiffs conducted a Rule 37-1 conference with those five Defendants on July 27, 2018 and reached impasse as to whether the discovery sought in the RFPs should be stayed.

After the Sagami and Tokin Defendants were added to the CAC on July 2, 2018, Plaintiffs subsequently served RFPs on those Defendants on August 17, 2018 seeking production of the same types of documents.  The Sagami and Tokin Defendants also believe that discovery should be stayed pending resolution of Defendants' forthcoming motion to dismiss.

The parties now submit this joint letter under this Court's procedures to resolve discovery disputes.

### Plaintiffs' Position

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Singh v. Google, Inc.*, 16-cv-03734-BLF, 2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016) (internal quotation marks and citation omitted). Only where it is clear that a complaint will be dismissed in entirety, with no leave to amend, **and** the discovery will not bear on the pending motions should all discovery be stayed. *Id.* The rationale for this conjunctive test is that a court cannot decide that a case has no merit (a) before a motion to dismiss is even filed, and (b) before it determines whether leave to amend should be denied.  *See, e.g., In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2013 WL 2237887, at *3 (N.D. Cal. May 21, 2013) ("With no motion to dismiss pending, it is premature to disallow discovery on the bases that a yet-to-be-filed complaint may fail to state a

Hon. Nathanael Cousins
August 30, 2018
Page 2

plausible claim for relief.").[1]  A motion to stay discovery cannot be granted unless Defendants show a motion to dismiss is likely to be entirely dispositive of all claims: "Defendants have not convinced the Court that their motion is meritorious or that it will otherwise be granted without leave to amend, which courts grant liberally. . . . For this reason, the Court cannot conclude that the pending motion, though it challenges the sole claim in the operative complaint, will be potentially dispositive of the entire case." *Garcia v. Enter. Holdings, Inc.*, 14-cv-596-SBA-KAW, 2014 WL 4623007, at *3 (N.D. Cal. Sept. 15, 2014).

Defendants' position that no discovery should be permitted until future motions to dismiss are resolved is also at odds with what Defendants in other antitrust cases—including some of the same Defendants here—have done. In the *Cathode Ray Tube Antitrust Litigation*, No. 07-cv-05944-SC (N.D. Cal.), the plaintiffs, the DOJ, and the defendants agreed to similar types of limited discovery. ECF No. 379. A similar multiparty agreement was reached in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-1827-SI (N.D. Cal.). ECF No. 306. The same was true in *In re Packaged Seafood Products Antitrust Litigation*, No. 15-md-2670-JLS (DD) (S.D. Cal.). ECF Nos. 130 & 137.

Plaintiffs are not seeking discovery to establish the merits of a dubious action.  The conspiracy alleged here has triggered a DOJ investigation and follows on the heels of numerous other similar conspiracies, some by the same corporate actors, enabled through the same mechanisms in play in this industry, consistent with economic indicators as assessed by experts. The CAC is very detailed (laying out the "who," "what," "where," "when," and "why" of the alleged conspiracy) and highly plausible, meeting the standard applied to other similar cases where documents turned over to regulators have not yet been produced. CAC ¶¶ 187-209. *See, e.g., In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133, 1142 (N.D. Cal. 2009); *In re TFT-LCD (Flat Panel) Antitrust Litig*., 586 F. Supp. 2d 1109, 1113-15 (N.D. Cal. 2008). To the extent the CAC relies on average, rather than Defendant-specific, data, doing so is sufficient for pleading purposes. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.,* 290 F. Supp. 3d 772, 797 (N.D. Ill. 2017); *In re Domestic Airline Travel Antitrust Litig*., 221 F. Supp. 3d 46, 63-64 (D.D.C. 2016). Similarly, while Defendants seek to minimize the significance of intercompetitor exchanges of future price information alleged in the CAC, courts in this district deem such allegations as supporting an inference of conspiracy. *E.g.*, *In re Static Random Access (SRAM) Antitrust Litig*., 580 F. Supp. 2d 896, 901-02 (N.D. Cal. 2008).

Plaintiffs have been more than reasonable, agreeing to the limited stay sought by the DOJ. Plaintiffs seek only the limited types of documents permitted under the stay order: documents concerning purchases or sales of Inductors or products containing them; transactional data; documents concerning capacity, costs, inventories, sales volumes and terms, and market share with respect to Inductors; identities of persons in charge of Defendants' respective Inductors operations;

---

[1] *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-2843-VC, ECF No. 130 (N.D. Cal. Aug. 27, 2018) (ordering limited discovery prior to filing of consolidated amended complaint and motions to dismiss); *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2015 WL 7874238 (N.D. Cal. July 31, 2015) ("[D]iscovery will start in this case as soon as lead Plaintiffs' counsel has been appointed.").

Hon. Nathanael Cousins
August 30, 2018
Page 3

documents showing the storage, retention, or destruction of relevant corporate records; and information relating to personal jurisdiction.

Defendants' objections rely on authorities that do not address the standard for staying discovery and are readily distinguishable. *See Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014). In *Mujica*, following dismissal of a complaint and ten years of litigation, plaintiff's counsel "candidly represented" he would be unable to satisfy "the specificity required by *Iqbal*, absent discovery." *Id.* at 593. But Plaintiffs here do not ask for this discovery to satisfy *Iqbal* and have actually agreed to stay merits discovery, demonstrating that they are unafraid of Defendants' motions.

Defendants now object in this letter, for the first time, that the discovery Plaintiffs seek is burdensome. First, to the extent that such documents have already been collected and produced to government entities or regulators, including DOJ, there is no burden. Second, Defendants have been completely unwilling even to discuss burden or even the scope of the requests, so it is manifestly unfair for them to assert any here. In any event, burden alone does not relieve parties of their duty to produce responsive materials, and those concerns are lessened here. Plaintiffs simply seek production of Defendants' transactional data and market information. Indeed, Judge Davila recently held that the burdens of antitrust discovery generally will not warrant a stay: "Defendants have not offered a particularized showing describing why discovery in this case is any more burdensome than it is on parties to other civil litigations. Discovery is not stayed just because it imposes some unarticulated burden. Thus, any interest Defendants may have in resisting discovery is outweighed by the interests of Plaintiff, the public, and the court in maintaining an orderly and expeditious schedule." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 5:16-cv-06370-EJD, 2018 WL 1569811, at *2 (N.D. Cal. Feb. 16, 2018). Notably, when ordered to confer in the *Apple* consumer litigation, defendants reached a reasonable accommodation with plaintiffs. *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD (N.D. Cal.) (ECF No. 182) (case management statement setting forth agreement among the parties). Defendants here are notably not so reasonable.

Plaintiffs' motion to compel this limited, targeted discovery should be granted.

**<u>Defendants' Position</u>**

Plaintiffs seek broad pre-motion-to-dismiss discovery concerning the worldwide production, pricing, and sale of a wide array of products—including various forms of inductors and an enormous range of finished products containing inductors—over at least a fifteen-year period.[2] The discovery sought in the RFPs is—as Plaintiffs admit—irrelevant to establishing the plausibility of the CAC and would be entirely unnecessary if Defendants' motion to dismiss is granted.

Merits discovery is already stayed at the request of the DOJ and Plaintiffs.[3] Extending that stay to the RFPs is consistent with Ninth Circuit and Supreme Court precedent which

---

[2] The RFPs seek worldwide transactional data back to 1997, *but see* ECF No. 168 at ¶ 4b-c (limited to transactions "in the United States"), and other documents and information back to 2003. The inclusion of products containing inductors is particularly burdensome for those defendants selling many different electronics products.

[3] The DOJ took no position concerning discovery sought now.

Hon. Nathanael Cousins
August 30, 2018
Page 4

unequivocally holds that Rule 8 "'does not unlock the doors of discovery.'" *Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) (quoting *Iqbal*).

A stay pending consideration of Defendants' motions to dismiss will ensure that the proceedings are conducted in a "just, speedy, and ***inexpensive***" manner. *See* F.R.C.P. 1 (emphasis added). The discovery is burdensome; and it would be unnecessary in whole or in part if Defendants' motion is successful. Contrary to Plaintiffs' suggestion, this joint letter is not the first time Defendants have raised objections related to the burden of responding to Plaintiffs' RFPs. The substantial burden of production is inextricably intertwined with Defendants' objections regarding timing and was specifically mentioned in Defendants' objections: requiring the parties to engage in this discovery now will impose the unnecessary burden of collecting, processing, reviewing, and producing potentially two decades of documents and data when, as Defendants anticipate, the CAC is likely to be dismissed wholly or partially. At least certain Defendants are uninvolved in any inductors investigation and have not produced (and will not produce) any materials to the DOJ. *See* ECF No. 147, Declaration of D. Swanson ¶ 5, Ex. 5 (DOJ Letter stating Panasonic is uninvolved in any DOJ inductors investigation).

Plaintiffs do not identify any reason why they are entitled now to the vast quantities of documents and data they seek,[4] well in advance of any merits discovery, and how production of such materials now will do anything to advance the litigation. This silence stands in contrast to the motion that the same counsel made for "limited" discovery in the *Facebook* case, where the court in fact ***stayed*** most discovery and permitted only narrow discovery that Plaintiffs' counsel argued "has largely already [been] reviewed and collected, requiring little to no burden for Facebook to produce" ***and*** argued that limited discovery was needed "to assess what steps need to be taken in the short term to protect the public from ***ongoing harm***," including "preliminary injunctive relief."[5] Here, no similar arguments are made and a stay will not delay the progress of this litigation. If any claims in the CAC are found to be valid, non-merits discovery relevant to ***those claims*** can be conducted in parallel with and on the same schedule as the merits discovery that is currently stayed.

Plaintiffs claim Defendants must satisfy a two-prong test for a discovery stay pending resolution of dispositive motions: (a) the dispositive motion has the potential to completely dispose of the case, and (b) discovery is not necessary to decide the dispositive motion. *See supra* at 2, citing *Singh*, 2016 WL 10807598, at *1. Plaintiffs concede that the RFPs would not "have bearing on the motion" and thus the second prong is easily satisfied.

Defendants' forthcoming motion also satisfies the first prong of the test. Defendants' motion will challenge the plausibility of the conspiracy Plaintiffs allege and will seek dismissal of

---

[4] The cases cited by Plaintiffs are distinguishable. For example, in *Cathode Ray Tube Antitrust Litigation*, only certain defendants agreed to produce limited discovery, whereas others filed objections to Plaintiffs' RFPs. *See, e.g.*, ECF Nos. 398-400, 403; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, (ECF No. 306, at n.1 ("Defendants filed a response stating their view that a complete stay was appropriate.")). The comparison Plaintiffs seek to draw with *In re Apple Inc. Device Performance Litigation* is misconceived. The discovery sought and produced in *Apple* amounted to "documents already exchanged with regulators and other government entities, or exchanged in other litigation." Case No. 5:18-md-02827-EJD (N.D. Cal.), ECF No. 182, at ¶ 3. Plaintiffs' requests are vastly broader.

[5] *See Facebook, Inc. Consumer Privacy User Profile Litig.*, *supra* n. 1, ECF No. 130 (ordering staying most discovery); *id.*, ECF No. 112 at 1, 8 (*Facebook* plaintiffs' motion).

Hon. Nathanael Cousins
August 30, 2018
Page 5

the CAC in its entirety.  The CAC alleges an implausible conspiracy among a small subset of Inductors producers to control prices for a large number of non-interchangeable products.

Those conspiracy allegations make no sense, as the CAC itself makes clear.  The CAC, for instance, alleges that many other companies produce and sell Inductors, that hundreds of new producers entered the market during the alleged conspiracy period, and that Defendants' share of "Inductors" sales *decreased* dramatically over the period of the alleged conspiracy.  *See* CAC ¶¶ 120-21, 152.  Those allegations are directly at odds with the central tenet of Plaintiffs' conspiracy allegations: that Defendants had the power to control prices for "Inductors."  Nor does it make any logical sense that Defendants would have entered into, let alone maintained, a conspiracy for 15 years that caused them to lose market share.  Likewise, there is no rational motivation for the largest suppliers with alleged efficiency and other advantages over smaller rivals (*see* CAC ¶ 154) to keep their prices high in response to massive new entry (*see* CAC ¶ 152) and thereby make it easier for less efficient rivals to compete and enter the alleged market.

Plaintiffs allege a few information exchanges among defendants regarding historical or average pricing information or expectations, but they allege no specific agreements concerning prices.  *See* CAC ¶¶ 172-177. They also do not allege that these information exchanges related to the "off-the-shelf" inductors Plaintiffs claim were the subject of the purported conspiracy; and they, in fact, effectively allege that any such information exchange would have no competitive effect, since they allege that "off the shelf" pricing is publicly available on any supplier's website.  CAC ¶ 127.  Regardless, "gathering information about pricing and competition in the industry is standard fare for trade associations.  If [the court] allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action." *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999).[6]

Plaintiffs' pricing allegations are also lacking under binding Ninth Circuit precedent.  Plaintiffs allege no defendant-specific pricing at all much less parallel pricing.  They cannot rely solely upon *average* pricing information covering pricing by defendants *and* non-defendants of *both* "off the shelf" inductors and *wholly irrelevant* products to support their claim that defendants fixed "off the shelf" inductor prices.  *In re Musical Instruments and Equipment Antitrust Litig.*, 798 F.3d 1186, 1197 (9th Cir. 2015).

Here, Plaintiffs' allegations are insufficient "to cross the *Twombly* bar."  *Resistors*, *supra*, slip op. at 4.  Defendants request a discovery stay or, alternatively, submit that the parties can discuss with the Court whether a stay is appropriate at the September 13 Initial Case Management conference.

---

[6] *Compare* Order re Mot. to Dismiss, ECF No. 326, slip op. at 3-4, *In re Resistors Antitrust Litig.*, No. 3:15-cv-03820-JD (N.D. Cal. Sept. 5, 2017) (discussing allegations of only information exchanges—like those alleged here—in the latter time period of the alleged conspiracy and observing that "these allegations . . . would not have been enough to cross the *Twombly* bar," but denying motion because those allegations were combined with "detailed examples of [earlier] meetings . . . in which participants facilitated their common scheme to reduce competition" and their "plan[s] to raise prices" and discussions of "pricing to specific customers," all of which are lacking here).

Hon. Nathanael Cousins
August 30, 2018
Page 6


Respectfully Submitted,

*/s/ Lesley E. Weaver*
Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

*/s/ Michael Lehmann*
Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com

Interim Co-Lead Counsel for the Direct Purchaser Class


ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Michael A. Rubin*
James L. Cooper (*pro hac vice*)
Michael A. Rubin (*pro hac vice*)
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: 202.942.5000
Facsimile: 202.942.4999
Email: james.cooper@arnoldporter.com
Email: michael.rubin@arnoldporter.com

Daniel B. Asimow (SBN 165661)
Matthew H. Fine (SBN 300808)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400
Email: daniel.asimow@arnoldporter.com
Email: matthew.fine@arnoldporter.com

Hon. Nathanael Cousins
August 30, 2018
Page 7


Attorneys for Defendants
TAIYO YUDEN CO. LTD. AND
TAIYO YUDEN (USA) INC.


GIBSON, DUNN & CRUTCHER LLP

*/s/ Daniel G. Swanson*
Daniel G. Swanson (SBN 116656)
Frances A. Smithson (SBN 313700)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: dswanson@gibsondunn.com
Email: fsmithson@gibsondunn.com

Scott D. Hammond (*pro hac vice*)
Cynthia E. Richman (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 415.393.8200
Facsimile: 415.393.8306
Email: shammond@gibsondunn.com
Email: crichman@gibsondunn.com

Attorneys for Defendants
PANASONIC CORPORATION AND
PANASONIC CORPORATION OF NORTH AMERICA


LATHAM & WATKINS LLP

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone: 202.637.2200
Facsimile: 202.637.2201
Email: marguerite.sullivan@lw.com
Email: allyson.maltas@lw.com

Hon. Nathanael Cousins
August 30, 2018
Page 8

Alfred C. Pfeiffer, Jr. (SBN 120965)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: al.pfeiffer@lw.com

Attorneys for Defendants
SUMIDA CORPORATION,
SUMIDA ELECTRIC CO. LTD.,
AND SUMIDA AMERICA COMPONENTS INC.


MORGAN, LEWIS & BOCKIUS LLP

 */s/ Michelle Park Chiu*
Michelle Park Chiu (SBN 248421)
One Market, Spear Street Tower
San Francisco, California 94105-1596
Telephone: 415.442.1000
Facsimile: 415.442.1001
Email: michelle.chiu@morganlewis.com

Scott A. Stempel (*pro hac vice*)
J. Clayton Everett, Jr. (*pro hac vice*)
Greta L. Burkholder (*pro hac vice*)
Cindy Seunghee Hong (*pro hac vice*)
1111 Pennsylvania Ave., NW
Washington, DC  20004
Telephone: 202.739.3000
Facsimile: 202.739.3001
Email: scott.stempel@morganlewis.com
Email: clay.everett@morganlewis.com
Email: greta.burkholder@morganlewis.com
Email: cindy.hong@morganlewis.com

Attorneys for Defendants
TDK (USA) CORPORATION
AND TDK CORPORATION OF AMERICA

KIRKLAND & ELLIS LLP

 */s/ Eliot A. Adelson*
Eliot A. Adelson (SBN 205284)
Margaret A. Webb (SBN 319269)
555 California Street
San Francisco, CA  94104
Telephone: 415.439.1400
Facsimile: 415.439.1500
Email: eadelson@kirkland.com
Email: margaret.webb@kirkland.com

Hon. Nathanael Cousins
August 30, 2018
Page 9

Tammy A. Tsoumas (SBN 250487)
Heather F. Canner (SBN 292837)
333 South Hope Street
Los Angeles, CA  90071
Telephone: 213.680.8400
Facsimile: 213.680.8500
Email: ttsoumas@kirkland.com
Email: heather.canner@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
300 North LaSalle
Chicago, Illinois  60654
Telephone: 312.862.2000
Facsimile: 312.862.2200
Email: jmutchnik@kirkland.com

Attorneys for Defendants
MURATA ELECTRONICS NORTH AMERICA, INC.
AND MURATA MANUFACTURING CO., LTD