Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com

*Interim Co-Lead Counsel for the Direct Purchaser Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INDUCTORS ANTITRUST LITIGATION | Case No. 5:18-cv-00198-EJD-NC<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT FOR SEPTEMBER 13, 2018 INITIAL CASE MANAGEMENT CONFERENCE** |

1   In connection with the Case Management Conference scheduled in this matter for September

2   13, 2018, the Direct Purchaser Plaintiffs ("Plaintiffs") and Defendants submit this Joint Case

3   Management Conference Statement pursuant to Federal Rule of Civil Procedure 26(f), the Standing

4   Order for All Judges of the Northern District of California dated July 1, 2011, and Civil Local Rule

5   16-9.

6   **I.   JURISDICTION AND SERVICE**

7   The initial complaint in this action, which alleged cartel activity concerning Inductors, was

8   filed on January 9, 2018. ECF No. 1 in *Dependable Component Supply Corp. v. Murata*

9   *Manufacturing Ltd., et al.*, Case No. 5:18-cv-198-EJD (N.D. Cal.). [1]  Shortly after the *Dependable*

10   complaint was filed, additional complaints alleging cartel activity concerning Inductors were filed

11   as follows: (1) *Powerweb, Inc. et al. v. Murata Manufacturing Co. Ltd. et al.*, No. 3:18-cv-00349-

12   EJD (N.D. Cal.) ("*Powerweb*") was filed on January 16, 2018; (2) *Lifetime Service Center, Inc. v.*

13   *Murata Manufacturing Co. Ltd. et al.*, No. 3:18-cv-00511-EJD (N.D. Cal.) ("*Lifetime*") was filed

14   on January 23, 2018; (3) *Cambridge Capital Corporation v. Murata Manufacturing Co., Ltd.*, No.

15   18-cv-00686-EJD (N.D. Cal.) ("*Cambridge Capital*") was filed on January 31, 2018,; (4) *Five*

16   *Rivers Electronic Innovations LLC v. Kemet Corp.*, No. 4:18-cv-00851-EJD (N.D. Cal.) ("*Five*

17   *Rivers*") was filed on February 9, 2018; (5) *Arch Electronics, Inc. v. Murata Manufacturing Co.*

18   *Ltd. et al.*, No. 18-cv-1128 (N.D. Cal. Feb. 21, 2018) ("*Arch Electronics*") was filed on February

19   21, 2018; and (6) *Inductors, Inc. v. Kemet Corporation, et al.*, Case No. 18-cv-2175-EJD (N.D. Cal.)

20   ("*Inductors Inc.*") was filed on April 11, 2018.

21   On April 27, 2018, this Court consolidated the *Dependable*, *Powerweb*, *Lifetime*, *Cambridge*

22   *Capital*, *Five Rivers*, *Arch Electronics*, and *Inductors, Inc.* lawsuits, and appointed Interim Co-Lead

23   Counsel for the Plaintiffs. ECF No. 124. On July 2, 2018, Plaintiffs filed their Consolidated

24   Amended Complaint ("CAC"), naming as defendants Murata Manufacturing Co., Ltd.; Murata

25

26   [1] As alleged in the Consolidated Amended Complaint, "Inductors" "refers to electronic
    components that store energy in the form of a magnetic field, taking many forms and

27   arrangements, including: beads; coils; chokes; 'chip inductors'; 'chip coils'; and wire-wound, air
    core, and multi-layer Inductors for power applications, EMI (Electromagnetic Interference)

28   filtering/suppression and oscillation matching." ECF No. 184, ¶ 3.

Electronics North America, Inc.; Panasonic Corporation; Panasonic Corporation of North America; Sumida Corporation; Sumida Electric Co., Ltd.; Sumida America Components, Inc.; Taiyo Yuden Co., Ltd.; Taiyo Yuden (U.S.A.) Inc.; TDK Corporation; TDK-EPC Corporation; TDK Corporation of America; and TDK U.S.A. Corporation; TOKIN Corporation; TOKIN America, Inc.; Sagami Elec Co., Ltd.; and Sagami America, Ltd.   (collectively, "Defendants"). ECF No. 184. The CAC superseded all previously-filed complaints. The named Plaintiffs and proposed class representatives identified in the CAC were the Plaintiffs from the *Dependable*, *Powerweb*, *Cambridge Capital*, and *Arch Electronics* complaints.

Without waiver of any of Defendants' Rule 12 defenses, including as to jurisdiction, all Defendants have accepted service of the CAC.  Pursuant to agreements negotiated between the parties, Defendants waived service of the CAC in exchange for receiving a CAC that was translated into Japanese. Plaintiffs have provided a translated version of the CAC to all Defendants and, at Defendants' request, have provided all Defendants with information concerning the Kanji characters of individuals who are identified in the CAC.

Plaintiffs allege that this Court has original federal question jurisdiction over the Plaintiffs' claims for violations of Sections 1 and 3 of Sherman Act (15 U.S.C. §§ 1, 3), pursuant to 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26). In Plaintiffs' view, this Court has personal jurisdiction over Defendants because their alleged cartel activity was directed towards customers in the United States, including many purchasers of Inductors in this District. Plaintiffs allege that Defendants' ties to the United States include marketing and sales of Inductors in the United States; cross-selling agreements with United States Inductor manufacturers; and the acquisition of United States companies that manufacture Inductors.   Defendants reserve all of their defenses to subject matter and personal jurisdiction and will timely assert any jurisdictional defenses.

## II. FACTS

### Plaintiffs' Statement

Plaintiffs seek to recover damages for cartel activity that occurred among manufacturers of Inductors during the time period January 1, 2003 through December 1, 2016 (the "Class Period"). Inductors are ubiquitous passive electronic components that are found in consumer electronic products such as computers, smartphones, televisions, video game consoles, and in automobiles.

Defendants are the leading manufacturers of Inductors who together controlled between two-thirds and three-fourths of the market for Inductors during the Class Period. They are alleged to have met and exchanged competitively sensitive information about their Inductor products for the purpose of fixing the prices of those products, which occurred. As the CAC makes clear, the conspiratorial conduct was facilitated and effected in part at trade association meetings, such as those arranged through the Japan Electronics and Information Technology Industries Association ("JEITA"). Defendants also engaged in this conspiracy through meetings and communications occurring outside of trade association meetings.

Defendants' cartel activity arose out of a need to protect profits of these Japan-based companies from the competition introduced by a trade treaty, the Information Technology Agreement, which erased tariff protections starting in 1997 and caused Defendants to face competition from Taiwanese and Korean manufacturers, and eventually (in 2003) from Chinese manufacturers. The global market for Inductors during the Class Period was in excess of two or three billion dollars a year.

As alleged in the CAC, prices for Inductors defied the laws of supply and demand due to Defendants' efforts to fix or stabilize prices. "[P]rices for Inductors started to plummet drastically in January of 1998 and reached a nadir by October of 2003, six months after China agreed to enter into the ITA. Thereafter, the import prices of Inductors increased radically, including two major price spikes in July of 2008 and April of 2009, the period of the worldwide recession. Import prices of Inductors climbed steadily, reaching a peak in August of 2014." ECF No. 184, ¶ 9. Costs of raw

1    materials do not explain these pricing trends, which reversed a price decline during the worst period

2    of economic recession since the Great Depression. *Id.*, ¶ 9.

3         Plaintiffs are purchasers of Inductors sold by the Defendants or products that incorporate

4    Defendants' Inductors and are sold directly by Defendants. Plaintiffs allege that markets for

5    Inductors demonstrated the hallmarks of cartel activity. For example, prices for Inductors remained

6    flat or rose during times of falling demand during the Class Period. Defendants' activities were

7    directed towards stabilizing or inflating Inductors prices, and as a result of Defendants'

8    anticompetitive activities, Plaintiffs paid supracompetitive prices for both Inductors and for products

9    that incorporated Inductors and were directly sold by Defendants.

10        The United States Department of Justice ("DOJ") is investigating Defendants' cartel activity,

11   has issued grand jury subpoenas to certain of Defendants, and has moved to intervene in this action.

12   Magistrate Judge Cousins granted the DOJ's motion to intervene on May 18, 2018. ECF No. 163.

13        **Defendants' Statement**

14        There is robust competition for the sale, manufacturing, marketing, and distribution of

15   Inductors, and Defendants deny the allegations in the Complaint.  That the Department of Justice

16   may have issued subpoenas to certain defendants is not evidence of any wrongdoing by any

17   Defendant.

18        The CAC alleges an implausible conspiracy among a subset of the many inductors producers

19   to control prices for a large number of non-interchangeable products as well as countless finished

20   products containing "off-the-shelf" inductors.  Plaintiffs allege that only a single Defendant sells

21   those finished products.  The CAC relies heavily on conjecture and wholly conclusory allegations

22   and surmise about connections to the *Capacitors* and *Resistors* matters, but does not include the

23   types of factual allegations on which the *Capacitors* and *Resistors* court relied in permitting the

24   cases to proceed past the pleading stage.  The CAC's allegations about market share and new entry

25   highlight the implausibility of the CAC's conspiracy allegations.  *See* CAC ¶¶ 120-21, 152 (alleging

26   that many other companies produce and sell Inductors, that hundreds of new producers have entered,

27   and that Defendants' share of "Inductors" sales ***decreased*** dramatically over the period of the alleged

28

conspiracy).  Plaintiffs allege no facts to support their contention that Defendants had the power to control prices despite significant competition from other manufacturers.  Nor does the CAC contain factual allegations, for instance, that would explain why Defendants would have entered into—let alone maintained—a conspiracy for a decade and a half that caused them to lose market share. Likewise, there is no rational motivation for the largest suppliers with alleged efficiency and other advantages over smaller rivals (*see* CAC ¶ 154) to keep their prices high in response to massive new entry (*see* CAC ¶ 152) and thereby make it easier for less efficient rivals to compete and enter the alleged market.

Plaintiffs allege a few information exchanges among defendants regarding historical or average pricing information or expectations, but they allege no specific agreements concerning prices.  They do not allege that the claimed information exchanges related to "off-the-shelf" Inductors – the alleged subject of the conspiracy – and they, in fact, specifically allege that "off the shelf" pricing is publicly available on any supplier's website.  CAC ¶127.  *See* CAC ¶¶ 172-177. Regardless, "gathering information about pricing and competition in the industry is standard fare for trade associations.  If [the court] allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action." *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999).  *Compare* Order re Motions to Dismiss, ECF No. 326, slip op. at 3-4, *In re Resistors Antitrust Litig.*, No. 3:15-cv-03820-JD (N.D. Cal. Sept. 5, 2017), (discussing allegations of only information exchanges – like those alleged here – in the latter time period of the alleged Resistors conspiracy and observing that "these allegations . . . would not have been enough to cross the *Twombly* bar," but denying the motion to dismiss because those allegations were combined with "detailed examples of [earlier] meetings . . . in which participants facilitated their common scheme to reduce competition" and their "plan[s] to raise prices" and discussions of "pricing to specific customers," all of which are lacking here in the CAC).

Plaintiffs' pricing allegations are also lacking under binding Ninth Circuit precedent. Plaintiffs allege no defendant-specific pricing at all much less parallel pricing.  They cannot rely

solely upon *average* pricing information covering pricing by defendants *and* non-defendants of *both* "off the shelf" inductors and *wholly irrelevant* products to support their claim that defendants fixed "off the shelf" inductor prices. *In re Musical Instruments and Equipment Antitrust Litigation*, 798 F.3d 1186, 1197 (9th Cir. 2015).

Lastly, Defendants note that Plaintiffs assert above that they are "purchasers of Inductors or *products that incorporate Defendants' Inductors*" (emphasis added). Purchasers of Inductors and purchasers of products that incorporate Inductors are obviously different in material ways, as are the economic forces at work on the products they supposedly purchased. The legal and factual defenses to their claims will therefore vary substantially. In any event, the CAC virtually ignores the claims by Plaintiffs related to products that contain Inductors.

Defendants believe the Complaint should be dismissed and intend to file a Motion seeking that relief.

## III. FACTUAL AND LEGAL ISSUES

Plaintiffs seek to resolve the following issues of fact in this litigation:

1. Whether the Defendants reached agreements or understandings to exchange competitively sensitive information, and to fix, raise, or stabilize prices of Inductors, and which Defendants, if any, reached such agreements.

2. When these agreements started, and when they ended.

3. The scope of these agreements, including the types of Inductors covered, the manufacturers involved, and the geographical scope of their coverage.

4. The nature and frequency of Defendants' exchanges of competitively sensitive information, including the means of communication, the content of communications, and location of meetings.

5. The names and responsibilities of Defendants' personnel, if any, that engaged in the exchange of competitively sensitive information or entered into agreements.

6. Whether evidence of the alleged agreements was concealed, destroyed or otherwise spoliated.

7. Whether the Plaintiffs suffered an injury in fact as a result of Defendants' illegal conduct.

8. Whether Defendants caused prices for Inductors to be set at artificially high or supracompetitive levels.

9. Whether Plaintiffs paid supracompetitive prices for Inductors.

Plaintiffs anticipate raising the following legal issues in this litigation:

1. Whether the requirements of Fed. R. Civ. Proc. 23(a) have been met, and whether common factual and legal issues predominate over individualized issues such that a class of direct purchasers may be certified under Fed. R. Civ. Proc. 23(b)(3).

2. Whether Defendants reached agreements among or between themselves to exchange competitively sensitive information and fix, stabilize, or raise prices of Inductors in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

3. The effect, if any, of Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA") on the claims presented in this litigation, including whether any of Plaintiffs claims are barred by the FTAIA.

4. Whether Plaintiffs' antitrust injuries are proximately caused by Defendants' conduct for purposes of Section 4 of the Clayton Act (15 U.S.C. §15).

5. Whether Plaintiffs have suffered damages, and in what amount.

6. Whether Plaintiffs are entitled to injunctive relief under Section 16 of the Clayton Act (15 U.S.C. §26).

7. Whether Defendants can state or prove any of their affirmative defenses.

Defendants anticipate the following additional legal issues may be raised in this litigation:

1. Whether the Court has subject matter and personal jurisdiction over certain claims or certain Defendants.

2. Whether an (erroneous) media article about Department of Justice subpoenas is sufficient to state a plausible claim related to Inductors.

3. Whether Plaintiffs are indirect purchasers of products containing inductors and thereby lack standing to sue under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

Pursuant this Court's Standing Order on the Contents of Joint Case Management Statement, Defendants do not include in this section anything other than "Legal Issues."

## IV. MOTIONS

The Court has ordered a schedule whereby any motion to dismiss Plaintiffs' CAC is due September 28, 2018; Plaintiffs' opposition is due December 19, 2018; and Defendants' reply briefs are due January 28, 2019. The Court has set Defendants' motion for hearing on March 7, 2019. *See* ECF No. 194.

Plaintiffs have stipulated to an interim stay of merits discovery out of deference to the Department of Justice's inquiry for a six month period ending December 29, 2018. In the meantime, Plaintiffs have sought production of non-merits documents. Defendants contend that these document requests should be stayed pending resolution of the motion to dismiss. Accordingly, the parties have submitted a joint letter brief pursuant to Judge Cousins' procedures addressing whether non-merits requests for production should be stayed until the plausibility of the CAC is decided by the Court.

Plaintiffs intend to file a motion for class certification under Rule 23 as set forth below, as well as summary judgment and *in limine* motions pursuant to the proposed schedule set forth in paragraph 17 (or any alternative schedule selected by the Court). It is too early to determine whether Plaintiffs will file any additional motions at this time.

To the extent that this case survives the pleading stage, it is too early to determine whether and what other motions Defendants will file. It is likely that certain Defendants will file summary

judgment and *in limine* motions.  As stated further below, in Defendants' view, it is premature to set a schedule for this litigation beyond the existing schedule for motions to dismiss.

## V.  AMENDMENT OF PLEADINGS

Plaintiffs' CAC was filed on July 2, 2018. Plaintiffs reserve the right to amend their CAC to incorporate information from any documents that Defendants subsequently produce, including documents that any Defendant named in the CAC may have already produced in connection with any governmental investigation concerning Inductors.

Defendants reserve all objections to any amendment of the CAC.

## VI.  EVIDENCE PRESERVATION

This Court has issued an order requiring that "each party shall take reasonable steps to preserve all evidence that may be relevant to this litigation" and that Counsel, as officers of the court, are obligated to exercise all reasonable efforts to identify and notify parties and non-parties, including employees of foreign corporate or institutional parties, of their preservation obligations." ECF No. 124. At the Rule 26(f) conferences in this matter that took place on May 17, 2018 and August 15, 2018, the parties acknowledged their respective duties, as imposed by the Court, to preserve documents and to take reasonable steps to preserve all relevant evidence until the parties agree on a preservation plan.

### A.  Plaintiffs' Statement on Preservation of Evidence

Plaintiffs believe an additional meeting pursuant to Rule 26(f) conference devoted to ESI will need to occur consistent with Northern District Guidelines Section 2.02 and the parties' preservation obligations. Plaintiffs disagree that this discussion should await a ruling on Defendants' legal challenges to the CAC.

One issue of particular concern to Plaintiffs is that a change in employment status by Defendants' personnel with responsibilities for Inductors may impede the availability of witnesses. In the *Resistors* litigation, witnesses residing in Japan previously employed by defendant companies have apparently been reassigned to other positions, making them arguably unavailable for testimony.  *In re Resistors Antitrust Litig.*, Case No. 15-cv-3820-JD, ECF No. 452 (July 10, 2018)

(plaintiffs' motion to file reply brief regarding motion to compel attendance at deposition). The concern is heightened here, where merits discovery is stayed.  This issue will impact issues such as choosing custodians and scheduling depositions.

Plaintiffs have raised this issue by two separate letters to Defendants.  Principles of sound case management compel the conclusion that Defendants keep Plaintiffs informed about the availability of witnesses to this litigation, including the personnel identified in the CAC. To assist Defendants in identifying the personnel in the CAC and consistent with their agreement to provide a translated CAC, Plaintiffs have provided Defendants with Kanji character identifying information for the personnel named in the CAC.  Defendants have not responded to repeated requests to engage on this topic. Plaintiffs have asked Defendants to confirm that Defendants have preserved ESI from former employees with responsibilities for Inductors, including those who were named in the CAC.

**B.  Defendants' Statement on Evidence Preservation**

Defendants certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and that they are aware of this Court's orders on preservation. Defendants have confirmed that they are aware of the Court's order on preservation, as well as their general preservation obligations.  In accordance with this Court's orders and during the Rule 26(f) conferences and at other times, Defendants have confirmed to Plaintiffs that if Defendants identify any preservation issues that require discussion with Plaintiffs, Defendants will raise them in a timely manner.

Defendants are working with Plaintiffs and their respective ESI vendors on an ESI stipulation.  Defendants agree with Plaintiffs that ESI should be a topic for continued discussion at the appropriate times, but believe that it is premature and unduly burdensome to devote extensive resources to specific ESI that may need to be searched in connection with discovery in this Litigation before the plausibility of the CAC is decided.  Defendants have provided consolidated comments on a proposed ESI stipulation, and the parties are continuing to negotiate that stipulation.

Defendants note that only Panasonic is a defendant in the *Resistors* litigation that Plaintiffs reference above.  Discovery disputes in unrelated litigation do not create obligations on Defendants

in separate litigation.  Defendants have responded in writing and at the August 15 Rule 26(f) conference to Plaintiffs' proposal that Defendants inform Plaintiffs of every personnel change for every employee with any responsibility for any of the seven companies' Inductors businesses. Defendants have informed Plaintiffs that their demand is unreasonable, overbroad, and unduly burdensome.  Nothing in the Federal Rules of Civil Procedure gives any basis for that demand.  Nor have Plaintiffs identified for Defendants any authority in support of that obligation, especially before the plausibility of the CAC has been upheld and where Plaintiffs have identified no actual evidence implicating any employee in any agreement to fix prices.  *Compare In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420-YGR (DMR), 2015 WL 5440789, at *2  (N.D. Cal. Sept. 15, 2015) (defendant pleaded guilty and admitted "in interrogatory responses that [employee] participated in 11 meetings and communications" and employee "drafted documents describing meetings" including document describing request "'for mutual collaboration' regarding pricing").

Defendants' position is that the filing of a CAC with unsubstantiated allegations does not give Plaintiffs the right to be involved in the employment decisions of multiple multi-national corporations.  Moreover, Plaintiffs have not narrowed their request in any way during discussions and have provided no basis for any employee-specific balancing of relevance and proportionality under Rule 26.  *See* Fed. R. Civ. P. 26(b)(1) (limiting scope of discovery to that which is "relevant to any party's claim . . . and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").  Even when Defendants simply asked for the proper Japanese characters of employees identified in the CAC, Plaintiffs stated that Defendants were not entitled to further information underlying their allegations about those employees (but ultimately provided the information as part of their previously stipulated obligation to translate the CAC).

## VII.  DISCOVERY

The parties have agreed that with respect to interrogatories and depositions under Fed. R. Civ. P. 30(b)(6), they will proceed under the Federal Rules of Civil Procedure and Defendants would

apply discovery limitations—*e.g.*, limits on the number of interrogatories—per Defendant group. They parties may negotiate these limits at a later date.

### Plaintiffs' Position on Initiation of Discovery

As noted in the parties' Joint Report on Discovery Plan Pursuant to Rule 26(f), the DOJ has sought to stay discovery on the merits for six months, and Plaintiffs and the DOJ have stipulated that DOJ would not object to certain limited requests for discovery during the period of the stay. ECF No. 178 at 2-3. The Defendants did not join in that stipulation. On June 29, 2018 Judge Cousins entered an order "stay[ing] merits discovery for six months from this order and allow[ing] certain nonmerits discovery to begin." ECF No. 181. Judge Cousins noted that "[t]he stipulation does not preclude defendants from asserting objections to any discovery." *Id.* As noted below, Defendants have taken the position that they will engage in no discovery until the Court rules on their motion to dismiss.

On May 25, 2018, Plaintiffs propounded to five Defendant families requests for documents under Fed. R. Civ. P. 34 ("First RFPs") on subjects that DOJ deemed permissible. Plaintiffs provided the DOJ the opportunity to review their request and state an objection, and the DOJ did no object to these requests. On August 17, 2018, Plaintiffs served their RFPs on the remaining Defendants, following the further meeting of counsel in connection with Rule 26(f), which took place on August 15, 2018.   This is a complex case that will involve foreign language discovery, sophisticated economic analysis, and concerns conduct that stretches back fifteen years.   For discovery to be completed efficiently and for this case to be set for trial within three years, discovery except as subject to the DOJ's stay should begin immediately. Although Defendants will likely file motions challenging the sufficiency of Plaintiffs' pleadings, a stay of discovery pending resolution of motions to dismiss are disfavored, unduly delay the progress of litigation, and are thus an exception rather than the rule in antitrust litigation. *See, e.g., In re Lithium Ion Batteries Antitrust Litig.*, 2013 U.S. Dist. LEXIS 72868, at *30 (N.D. Cal. May 21, 2013) ("[T]he costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint."); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-3264,

1    ECF No. 514, at 2 (N.D. Cal. Jan. 14, 2015) (directing discovery to proceed pending a motion to

2    dismiss); *Castro v. Sanofi Pasteur, Inc.*, No. 2:11-cv-7178, ECF No. 102 (D.N.J. July 18, 2012)

3    (denying motion to stay discovery, rejecting defendant's argument that "failure to grant a stay could

4    impose significant, needless, and asymmetric costs").

5        The parties have filed a joint letter brief on this issue under Judge Cousins' procedures. ECF

6    No. 195.

7        The discovery sought by Plaintiffs in their First RFPs are transactional data concerning

8    Defendants' sales of Inductors, and other information about the Inductors market. This complex

9    transactional data must be analyzed for purposes of showing "common impact" in Plaintiffs' motion

10   for class certification and is critical to understanding the size of the market and identifying direct

11   purchasers of Inductors. Early discovery concerning transactional data and Defendants' channels of

12   distribution will also help narrow issues concerning the application of the FTAIA to sales of

13   Inductors in this litigation. Delay does not serve the interests of the Court or the Plaintiffs, and

14   antitrust cases such as this require the early analysis of market information and complex

15   transactional data.

16       Upon the dissolution of the stay sought by the DOJ (should it be granted by the Court),

17   Plaintiffs will promptly seek the production of all documents that Defendants have produced in

18   connection with any investigation into anticompetitive activity in the Inductors market and may seek

19   to amend their complaint at that time to add additional parties.

20       Plaintiffs believe that the general burden objections that Defendants have made are

21   overstated, especially to the extent there are non-merits documents that have already been searched

22   for and produced to a regulator, such as the DOJ. Plaintiffs look forward to meeting and conferring

23   on these issues once the Court resolves the threshold question of whether all discovery is stayed.

24       **<u>Defendants' Position on the Initiation of Discovery</u>**

25       As Plaintiffs acknowledge, merits discovery is stayed for at least six months and the Court's

26   order granting the Plaintiffs' stipulation with DOJ preserved all of Defendants' objections to any

27   other discovery Plaintiffs might serve.  Contrary to Plaintiffs' statement above that they are now

28

seeking only "transactional data," Plaintiffs' current requests for production seek approximately 15 years of documents on top of over two decades of data and they seek discovery into all aspects of the Defendants' inductors businesses and the general inductors industry, with the only subject carved out being the merits of the alleged conspiracy.

On June 25, 2018, those five Defendants served objections, asserting, among other objections, that the requested discovery was premature, overly broad and unduly burdensome, and that this burdensome discovery should be stayed until the plausibility of the CAC is decided.  The parties conducted a Rule 37-1 conference on July 27, 2018.  Defendants again explained that these burdensome document requests should be stayed pending the resolution of Defendants' forthcoming motions to dismiss, and therefore did not discuss particular RFPs in substance.  Accordingly, the parties reached impasse as to whether discovery should be stayed pending Defendants' forthcoming motions to dismiss.  At the more recent Rule 26(f) conference on August 15, 2018, which included the Sagami and Tokin Defendants, Defendants reiterated their primary objection that each of the RFPs was premature and unduly burdensome under the circumstances and therefore discussion of other objections to each RFP would not be productive at this time.  Plaintiffs have now served those same RFPs on the Sagami and Tokin Defendants.

On August 30, 2018, the parties submitted a joint letter to Judge Cousins requesting resolution of the discovery dispute between the parties.  Defendants do not restate the merits of their arguments here.  Instead, a copy of that letter is attached for the Court's reference, and summarizes the Defendants' position as to the initiation of wide-open discovery in this case.  Defendants suggested that, in the alternative, the parties can discuss this issue with the Court at the September 13 Initial Case Management Conference.

## VIII.   DISCLOSURES

The parties have not exchanged initial disclosures. It is Defendants' position that the parties should confer 30 days prior to the expiration of any stay requested by the DOJ (to the extent one is ordered by the Court) on initial disclosures. While Plaintiffs do not oppose meeting and conferring

30 days prior to the expiration of the stay, it is Plaintiffs' position that initial disclosure should be exchanged ten days after any such stay expires.

### IX. CLASS ACTIONS

Plaintiffs seek to maintain this action as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek to represent a class of purchasers of Inductors sold by the Defendants named in the CAC and a class of purchasers of products containing those Inductors, as described further therein.

### X.  RELATED CASES

The parties are aware of no related case.

### XI. RELIEF

The CAC seeks the following relief on behalf of the Class:  (i) certification of the action pursuant to Rule 23 of the Federal Rules of Civil Procedure, including certifying certain Plaintiffs as class representatives and Interim Co-Lead Counsel as Class Counsel; (ii) damages, including treble damages under the Clayton Act, and interest in an amount to be determined; (iii) injunctive relief: (iv) Plaintiffs' reasonable costs, including attorneys' fees; and (iv) any other relief the Court deems just and proper.  *See* ECF No. 81.  The calculation of damages in this antitrust class action will be the subject of expert opinion.

Defendants will seek dismissal of the CAC under Rule 12.

### XII.   SETTLEMENT AND ADR

The parties have agreed that private mediation may be effective in this matter.  As to the timing of any private mediation, the parties propose that a private mediation be scheduled at an appropriate time based on the judgment of the experienced counsel representing all parties.

### XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to a magistrate judge for all purposes.

### XIV.   OTHER REFERENCES

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV.   NARROWING OF ISSUES

At this stage of the proceedings, the parties believe that the narrowing of issues, suggestions to expedite the presentation of evidence at trial, and requests to bifurcate issues, claims or defenses, whether by agreement or stipulation, are premature.

## XVI.   EXPEDITED TRIAL PROCEDURE

The parties do not believe that this case is appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A.

## XVII.   SCHEDULING

**Plaintiffs' Proposed Schedule**

Plaintiffs propose the following schedule, based on the assumption that the DOJ stay will expire by March 1, 2019, and with the understanding that future events may require adjustments to the schedule. Plaintiffs have proposed a schedule consistent with the Court's "preference for expedient resolution of class certification issues." *Woods v. Google LLC,* 11-CV-01263-EJD, 2018 WL 4030570, at *11 (N.D. Cal. Aug. 23, 2018).

| Event | Date |
|---|---|
| Defendants' Motion to Dismiss | September 18, 2018 |
| Opposition to Defendants' motion to dismiss | December 19, 2018 |
| DOJ stay expires | December 29, 2018 |
| Reply re Defendants' motion to dismiss | January 28, 2019 |
| Hearing on Defendants' motion to dismiss | March 7, 2019 |
| Initial Disclosures | March 1, 2019 |
| Deadline for Defendants to complete substantial production of transactional data | April 1, 2019 |
| Class Certification Motion | November 15, 2019 |
| Class Certification Opp. | January 14, 2020 |
| Class Certification Reply | March 26, 2020 |
| Exchange of Privilege Logs | March 26, 2020 |
| Hearing on Class Certification | April 26, 2020 or TBD |
| Deadline to amend pleadings | May 1, 2020 |
| Fact Discovery Deadline | June 16, 2020 |
| Plaintiffs' Opening Expert Reports | July 15, 2020 |

| Defendants' Opening Expert Reports | July 29, 2020 |
|---|---|
| Plaintiffs' Rebuttal Expert Reports | September 29, 2020 |
| Defendants' Rebuttal Expert Reports | October 6, 2020 |
| Expert Discovery Deadline | November 10, 2020 |
| Summary Judgment Motion | November 17, 2020 |
| Summary Judgment Opp. | January 15, 2021 |
| Summary Judgment Reply | February 17, 2021 |
| Hearing on Summary Judgment | March 25, 2021 |
| Meet and Confer re Trial Conference and Exchange Trial Exhibits | April 8, 2021 |
| Motions in Limine Due | April 20, 2021 |
| Responses to Motions in Limine | May 10, 2021 |
| Deadline to file (a) jury voir dire questions, (b) proposed jury instructions; and (c) proposed jury verdict forms. | May 21, 2021 |
| Pretrial Conference and Hearing on Motions in Limine | May 27, 2021 |
| Trial Briefs Due | June 2, 2021 |
| Trial Date (start of jury selection) | June 8, 2021 |

### Defendants' Proposed Schedule

At the initial Rule 26(f) conference, Plaintiffs raised whether the parties should discuss a case schedule and stated their view that setting a schedule beyond motions to dismiss phase was premature. Defendants agreed. Nothing has changed.

Defendants continue to believe it is premature to set a schedule that almost certainly will need to be revised in a case currently subject to a stay of merits discovery and for which there will be no determination on the plausibility of CAC until the first part of 2019. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (operative complaint must contain sufficient "factual matter" to render "a plausible claim for relief" before the burdens of discovery are imposed on defendants); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it" (emphasis in original)). Defendants should not be burdened with discovery unless and until the CAC is found plausible. And the entry of Plaintiffs'

proposed order would effectively require Defendants to begin burdensome discovery work now, especially as to transactional data.

If the Court is inclined to consider Plaintiffs' proposed schedule, Defendants note the following:

1. Fact discovery should be closed and the time to amend the complaint should have passed before class certification briefing should begin. Otherwise, class certification will be a moving target: Without the final operative complaint, neither Defendants nor the Court will be able to determine if the class certification motion is consistent with Plaintiffs' ultimate legal theories in the final operative complaint. Furthermore, any decision by the Court that denies certification will simply invite more discovery and a renewed motion. On both efficiency and fairness grounds, Defendants therefore request that any schedule that the Court ultimately sets for class certification should include a close of both fact discovery and the pleadings *before* class certification briefing – or at the very least before Defendants' opposition is due.

2. Plaintiffs will have years to prepare for class certification and for their merits experts, but offer an unreasonably truncated amount of time for Defendants to respond. Consistent with other complex antitrust class actions, Defendants will reasonably need a minimum of four months for their opposition to class certification and a similar amount time for their responsive merits experts. Likewise, Defendants reasonably need two months for their rebuttal merits experts instead of the seven days allocated by Plaintiffs.

3. As noted above, Defendants believe that whether and when initial disclosures should be served is properly a subject for a meet and confer 30 days prior to the lifting of any DOJ stay.

## XVIII. TRIAL

The parties request a jury trial. The parties do not presently have sufficient information to reasonably estimate the expected length of the trial in this action.

1    XIX.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

2        The parties have each filed a "Certification of Interested Entities or Persons," or other

3    appropriate filing pursuant to Local Rule 3-15.

4    XX.    PROFESSIONAL CONDUCT

5        All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct

6    for the Northern District of California.

7    XXI.    OTHER

8        **Electronic Service**: The Parties shall serve documents, including pleadings, discovery

9    requests, and trial materials on each other through e-mail or ECF, except to the extent that

10   transmission of any such documents electronically is impractical, in which event service shall be

11   made by hand or through overnight delivery. Service by e-mail shall be considered the same as

12   service by hand.

13       **Expert Discovery Stipulation**: Plaintiffs have provided Defendants with a draft stipulation

14   concerning procedures to streamline expert discovery in this matter, and Defendants provided

15   proposed edits to that Stipulation.  The parties are continuing to discuss the Stipulation.

16       **Protective Order Stipulation**:  Plaintiffs have provided Defendants with a draft stipulated

17   Protective Order, and Defendants provided proposed edits to that Stipulation.  The parties are

18   continuing to discuss the Stipulation.

19       **Modifications to the Schedule**:  Plaintiffs' proposed schedule is premised on discovery

20   proceeding expeditiously and without protracted disputes over, *inter alia*, production of documents

21   and witnesses or issues regarding class certification.  In the event of such protracted disputes, all

22   parties reserve the right to seek to modify the schedules set forth herein.  As stated above,

23   Defendants believe it is premature to enter Plaintiffs' proposed schedule and reserve their right to

24   seek to modify any schedules that are entered.

25

26

27

28

Dated: September 4, 2018

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Lesley E. Weaver*
      Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

**HAUSFELD LLP**

By: */s/ Michael P. Lehmann*
      Michael P. Lehmann

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
Christopher L. Lebsock (SBN 184546)
Samantha Stein (SBN 302034)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

*Interim Co-Lead Counsel for the Direct
Purchaser Class*

**KIRKLAND & ELLIS LLP**

By: */s/ Eliot A. Adelson*
      Eliot A. Adelson

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eliot A. Adelson
555 California Street
27th Floor
San Francisco, CA 94104
eadelson@kirkland.com

James Mutchnik
300 North LaSalle Street
Chicago, IL 60654
james.mutchnik@kirkland.com

*Attorneys for Defendants Murata
Electronics North America, Inc. and
Murata Manufacturing Co., Ltd.*


**GIBSON DUNN & CRUTCHER LLP**


By:  */s/ Daniel G. Swanson*
        Daniel G. Swanson

Daniel G. Swanson (SBN 116656)
Frances A. Smithson (SBN 313700)
333 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 229-7000
Fax: (213) 229-7520
dswanson@gibsondunn.com
fsmithson@gibsondunn.com

Scott Hammond (*pro hac vice*)
Cynthia Richman (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (415) 393-8200
Fax: (415) 393-8306
shammond@gibsondunn.com
crichman@gibsondunn.com

*Attorneys for Defendants Panasonic
Corporation of North America; and
Panasonic Corporation*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LATHAM & WATKINS LLP**

By:  */s/ Marguerite Sullivan*
Marguerite Sullivan

Marguerite Sullivan (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com
allyson.maltas@lw.com

Alfred Carroll Pfeiffer, Jr.
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8898
Fax: (415) 391-0600
al.pfeiffer@lw.com

*Attorneys for Defendants Sumida America*
*Components, Inc.; Sumida Corporation;*
*and Sumida Electric Co., Ltd.*

**ARNOLD & PORTER KAYE**
**SCHOLER LLP**

By:  */s/ James L. Cooper*
James L. Cooper

Daniel B. Asimow
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
daniel.asimow@arnoldporter.com

James L. Cooper
Michael Adam Rubin
601 Massachusetts Ave., NW
Washington, DC 20001
James.Cooper@apks.com
michael.rubin@apks.com

*Attorneys for Defendants Taiyo Yuden*
*(U.S.A.) Inc. and Taiyo Yuden Co., Ltd.*

1

2          **MORGAN LEWIS & BOCKIUS LLP**

3          By: */s/ Colin C. West*
                Colin C. West

4
           Colin C. West (SBN 184095)
5          One Market
           Spear Street Tower
6          San Francisco, California 94105-1596
           Tel: (415) 442-1000
7          Fax: (415) 442-1001
           colin.west@morganlewis.com
8

9          J. Clayton Everett, Jr. (*pro hac vice*)
           Scott A. Stempel (*pro hac vice*
10         forthcoming)
           Greta L. Burkholder (*pro hac vice*)
11         1111 Pennsylvania Avenue, N.W.
           Washington, D.C. 20004
12         San Francisco, California
           Tel: (202) 739-3000
13         Fax: (202) 739-3001
           clay.everett@morganlewis.com
14         scott.stempel@morganlewis.com
           greta.burkholder@morganlewis.com
15

16         *Attorneys for Defendants TDK U.S.A.
           Corporation; TDK Corporation; TDK-
17         EPC Corporation; and TDK Corporation
           of America*
18

19
           **PILLSBURY WINTHROP SHAW
20         PITTMAN LLP**

21         By: */s/ Roxane A. Polidora*
                Roxane A. Polidora
22

23         Roxane A. Polidora (SBN 135972)
           Jacob R. Sorensen  (SBN 209134)
24         Four Embarcadero Center
           22nd Floor
25         San Francisco, CA 94111-5998USA
           Tel: (415) 983-1000
26         Fax: (415) 983-1200
           roxane.polidora@pillsburylaw.com
27         jake.sorensen@pillsburylaw.com

28
---

1

2
*Attorneys for Defendants Tokin*
*Corporation and Tokin America, Inc.*

3

4
**KESSENICK GAMMA & FREE. LLP**

5
By:  */s/ J. Maxwell Cooper*
       J. Maxwell Cooper

6

7
J. Maxwell Cooper (SBN 284054)
44 Montgomery Street, Suite 3880
San Francisco, CA 94104

8
Tel: 415-362-9400
Fax: 415-362-9401

9
Email: mcooper@kgf-lawfirm.com

10
*Attorneys for Defendant Sagami Elec Co.,*

11
*Ltd. and Sagami America, Ltd.*

12

13
       Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document has

been obtained from each of the other signatories above.

14

Date: September 4, 2018

15
                                  */s/ Matthew S. Weiler*
                                   Matthew S. Weiler

16

17

18

19

20

21

22

23

24

25

26

27

28

---