Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
Christopher L. Lebsock (SBN 184546)
Megan Jones (SBN 296274)
Samantha Stein (SBN 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiff Class*

[additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INDUCTORS ANTITRUST LITIGATION | Case No. 5:18-cv-00198-EJD-NC |
| | **STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

1 | **1.     PURPOSE**

2 |      This Order shall govern discovery of electronically stored information ("ESI") and

3 | hard copy documents (collectively, "Document" or "Documents") in the above-captioned

4 | matter and all actions that are later consolidated with this matter (collectively, the

5 | "Litigation"), as a supplement to the Federal Rules of Civil Procedure (but not modifying the

6 | parties' obligations under the Federal Rules unless set forth specifically herein), this Court's

7 | Guidelines for the Discovery of Electronically Stored Information, and any other applicable

8 | orders and rules.

9 | **2.     COOPERATION**

10 |      The parties are aware of the importance the Court places on cooperation and commit

11 | to cooperate in good faith throughout the Litigation consistent with this Court's Guidelines

12 | for the Discovery of ESI.  Accordingly, the parties will include a statement in any motion to

13 | compel detailing the precise steps that were taken to resolve the issue, as well affirming the

14 | parties have conferred and reached impasse.

15 | **3.     PRESERVATION**

16 |      a)     The parties and their counsel acknowledge that they have an obligation to take

17 | reasonable and proportional steps to preserve discoverable information in the party's

18 | possession, custody or control.   Until such time as this action concluded, the parties will

19 | provide preservation reminders on a bi-annual basis.  Each party shall maintain a record of

20 | compliance with this sub-paragraph.

21 |      b)     The parties will only preserve ESI dated (created/modified/received) between

22 | January 1, 2002 and December 1, 2016; ESI for the 33 personnel identified in the Consolidated

23 | Amended Complaint shall be preserved between January 1, 2000 and December 1, 2016. Such

24 | ESI will be preserved to the extent it can be located after a reasonable and diligent search

25 | (steps of which ESI Liaison Counsel shall document) with the understanding that document

26 | retention periods for the parties during this timeframe may have been such that ESI was not

27 | retained in the ordinary course of business during this time period.

28 |      c)     As soon as practicable and appropriate for this Litigation, the parties agree to

exchange information regarding ESI that is being preserved, including information concerning the types, categories, and locations of ESI that has been preserved, during meet and confer communications on a party-by-party basis, which should include:

    i.    The number and names or general job titles or descriptions of custodians for whom ESI will be preserved (e.g., "HR head," "scientist," "marketing manager").

    ii.    Whether to continue any interdiction of any document-destruction program, such as ongoing erasures of e-mails, voicemails, and other electronically recorded material.

    iii.    The list of systems and/or most likely sources, if any, that contain ESI not associated with individual custodians and that will be preserved, including identification of non-custodial sources of potentially relevant ESI.

    iv.    Any disputes related to scope or manner of preservation, including whether a party has made a reasonable and diligent search.

    d)    As soon as practicable and appropriate for this Litigation, the parties will confer about sources of ESI that are not reasonably accessible because of undue burden or cost.  This should include, but not be limited to, descriptions of ESI from sources that: (a) the party believes could contain relevant information; and/or (b) has determined, under the proportionality factors, is not discoverable and should not be preserved.

    e)    All parties have advised that litigation holds have been implemented and that reasonable and diligent steps have been taken to preserve all existing company and custodial files dating from the preservation period to the extent that they are relevant or potentially relevant to the allegations in the Consolidated Amended Complaint.

    f)    In accordance with ESI Guideline 2.01, the parties will meet and confer if there is a dispute concerning the scope of a party's preservation efforts.

    g)    Provided that a party takes reasonable steps to comply with this Stipulated Order, no other party will seek sanctions against that party for failing to produce ESI lost inadvertently.

**4.      LIAISON**

Each party agrees to designate an ESI Liaison who will be knowledgeable about and responsible for discussing their respective ESI. An e-discovery liaison will be knowledgeable about the location, nature, accessibility, format, collection, searching, preservation and production of ESI in the matter.  Regardless of whether the e-discovery liaison is an attorney (in- house or outside counsel), an employee of the party, or a third party consultant, the e-discovery liaison should:

a)      Be prepared to participate in e-discovery dispute resolution to limit the need for Court intervention;

b)      Be knowledgeable about the party's e-discovery efforts;

c)      Be familiar with the party's electronic systems and capabilities in order to explain those systems and answer related questions; and

d)      Be familiar with the technical aspects of e-discovery in the matter, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Each party shall designate its ESI Liaison as soon as practicable and appropriate for this Litigation.  Any party is free to change its designated ESI Liaison by providing written notice to the other parties.

**5.      SEARCH**

a)      The parties agree that, at an appropriate juncture, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

b)      This Order neither forecloses nor permits the use of TAR. The parties will continue to discuss whether TAR may be used and the proper procedures for its use.

**6.      SCOPE**

a)      The procedures and protocols set forth in this Order shall govern the production format of paper Documents and ESI in this Litigation, to the extent available. This stipulation does not govern any procedures or criteria used to define or limit the scope of

production such as identification and preservation of potentially responsive data types and systems, custodian selection, or any technology-assisted culling or review processes, such as the use of keyword search terms. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation, or whether a party has made a reasonable and diligent search for ESI. Nothing in this Order establishes any agreement to any search protocol, including which sources shall be searched for Documents, Email, or Instant Messages. Such procedures or criteria are to be separately agreed upon.

b) This Order does not constitute a waiver, by any party, of any objection to the production of particular ESI as unduly burdensome or not reasonably accessible, nor does it constitute a waiver of any right to discovery by any party. This Order shall not apply to any documents produced in this case that have been produced both to any government Entity and to plaintiffs in this case before the entry of this Order, whether by compulsion or otherwise, provided, however, that any documents produced under this exception shall at a minimum be produced in a format including TIFF image files, text files, and load files with metadata. To the extent that a party collected and processed documents prior to the entry of this Order, and production of such documents cannot be made in accordance with the terms of this Order, the parties will meet and confer concerning the format of the production of any such documents.

## 7.    PRODUCTION FORMAT

a) Productions shall be made by secure file transfer, if practical, to agreed-upon email addresses. In the event the producing party deems it is not practical to upload a voluminous production to a secure file transfer site, it shall be sent to the receiving parties by overnight mail. Each production shall be accompanied by a cover letter that includes the Bates range of all documents being produced and the corresponding production volume identifier, as well as the confidentiality designation for the production (if practicable).

b) **Format Guidelines:** The parties shall, to the extent reasonably and technically possible, produce Documents according to the processing and delivery specifications provided in Appendixes 1 and 2. To the extent that Documents have previously been

processed and produced to other entities in accordance with differing ESI specifications, the documents need not be reformatted prior to production in this case (except for populating the redaction metadata field).  The parties shall meet and confer if differing ESI specifications make it unreasonable or impractical for the receiving party to load and review a production.

c)   **TIFF Image Files:**  The parties agree that all Documents will be produced as single page black and white Group IV TIFF image files of at least 300 dpi resolution, except as provided in section 7.h). Page size shall be 8.5 x 11 inches unless in the reasonable judgment of the producing party, a particular item requires a different page size.  Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).  Color images should be produced in color. All images which contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.

d)   **Text Files:**  Each Document produced under this Order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page.  Each text file shall be named to use the Bates number of the first page of the corresponding production item.

i.   <u>OCR</u>: The text for each paper document shall be generated by applying optical character recognition (OCR) technology to the scanned image of the document.  The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.  OCR text files should indicate page breaks where possible.

ii.   <u>ESI</u>: The text of each ESI item shall be extracted directly from the ESI native file. Extracted text shall be provided in UTF-8 with Byte Order Mark

format text, but only to the extent this option is available from the producing party's ESI discovery vendor and not unduly burdensome. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.  To the extent that is not technically possible to extract text directly from the native file (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above.  For contacts and calendars collected and/or processed after the execution date of this Order, user modifiable fields should be extracted and produced as text.

iii.   <u>Redacted Text:</u>  The text file corresponding to a redacted document may be generated by applying OCR to the redacted file under the provision above. The redacted document must bear the mark "REDACTED" and be marked as such in the accompanying metadata.

iv.   <u>Foreign Language Text</u>:  The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Document – including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

e)   **Bates Numbering:**

i.   Each TIFF image produced under this Order must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of the numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

ii.     The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size of no less than 10-point font.  The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

f)     **Parent-Child Relationships:** Parent-child relationships for all groups of paper documents as specified in section 7.p).iii, and for all embedded ESI documents (e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is producing an e-mail with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail.

g)     **Attachments:** The parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced.

h)     **Color:**  For all other paper documents or ESI items containing color, a producing party shall produce documents in color if color is reasonably necessary to review and interpret the document; otherwise documents shall be produced in black and white as specified in section 7.c). The production of such documents and/or ESI in color shall be made in single-page JPEG format, provided JPEG format offers sufficient quality for the review of these documents and/or ESI.  If either party deems the quality of the document produced in JPEG format to be insufficient, the producing party may produce the color image in TIFF format or natively.   All requirements for productions stated in this Order regarding productions in TIFF black and white format apply to any productions of documents and/or ESI made in color JPEG or TIFF format.

i)     **Confidentiality Designations:** Documents produced in the Litigation shall be

subject to the terms of the Stipulated Protective Order agreed upon by the parties, and entered by the Court. If a particular paper document or ESI item has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such item/document, in the lower left-hand corner of the document as specified in section 7.e).ii. The confidentiality designation should also be reflected in the "Confidentiality" field specified in Appendix 2.

j)      **Load Files:** All productions will be provided with data load files and image load file as detailed in Appendix 1.  Each party will designate its preferred load file format. The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.  Each deliverable volume should limit directory contents to approximately 1000 files per folder.

k)      **Metadata Fields and Processing:**

i.    ESI items shall be processed in a manner that preserves the source native file and all metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Order.

ii.   Auto date/time stamps: ESI items shall be processed so as to preserve and display the date/time shown in the document as it was last saved by the custodian or end user, not the date of collection or processing.

iii.  ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be disclosed set forth in the production transmittal letter, and shall be consistent across each party's productions.

iv.   Hidden text: ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked

changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the Document to the extent reasonably and technically possible.

     v.    ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

    vi.    The parties are not obligated to manually populate any of the fields in Appendix 2 if such fields cannot be extracted from the native file or created using an automated process with the exception of the following fields, if available: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Custodian; (6) Redacted (Y/N); (7) Confidentiality; (8) HashValue; and [1] (9) Attach Count.

    l)    **Production of Native Items:**

    i.    The parties agree in sections 7.c) and 7.j) that ESI shall be produced as TIFF images with an accompanying data load file, which will contain the ESI metadata listed in Appendix 2 hereto, except the parties agree that the following types of files should be produced in native format: presentation-application files (e.g., MS PowerPoint); spreadsheet-application files (e.g., MS Excel, Google Sheets); databases if mutually agreed by the parties (e.g., MS Access); only upon specific request by the requesting party, word processing files (e.g., MS Word); and multimedia audio/visual files such as voice and video recordings, if any (e.g., .wav, .mpeg, and .avi). In addition to producing the above file types in native format, the producing party shall produce a single-page TIFF slipsheet for each native file, indicating that a native item was produced. The corresponding load file shall include NativeLink information for each native file that is produced.

    ii.    If a document to be produced in Native format contains privileged

---

[1] In the case of Documents that were scanned from paper, the HashValue field is not required.

1    information, the document will be produced in TIFF format with redactions

2    and OCR text to remove the privileged material from the searchable text.

3        iii.    The parties agree to meet and confer regarding the production of

4    information available from one or more databases (e.g., MS Access, SQL,

5    SAP) to determine the most reasonable form of production based on the

6    specific circumstances.

7        iv.    Through the pendency of this Litigation, the producing party shall exercise

8    reasonable, good faith efforts to maintain all preserved and collected native

9    files in a manner that does not materially alter or modify the file or the

10   metadata.

11       m)    **Requests for Other Native Files:**  Other than as specifically set forth in

12   section 7.l).i., supra, a producing party need not produce documents in native format. If a

13   party wants a particular document produced in native format, and this Order does not require

14   the production of that document in its native format, the parties involved will meet and confer

15   to discuss the reasonableness of such request.

16       n)    **Redaction:**

17       i.    The parties agree that where non-Excel-type spreadsheet ESI items need to

18   be redacted, they shall be produced solely in TIFF with each redaction

19   clearly indicated on the document.  Any unaffected data fields specified in

20   Appendix 2 shall be provided.  For example, if attorney-client privilege

21   requires that the BCC field of a document needs to be redacted, all other

22   available data fields specified in Appendix 2 shall be provided and the

23   redacted metadata fields will be clearly indicated.

24       ii.    Documents redacted or withheld for privilege should be logged.

25       iii.    Where Excel-type spreadsheets need to be redacted, the producing party

26   may choose whether to redact electronically or in a TIFF format so long as

27   such redactions do not affect the operation of the file.  Formulas may be

28   "flattened" and replaced with actual value.  The party shall maintain the

original Excel-type spreadsheet before redactions are applied as to maintain the original metadata fields (e.g., DateLastModified).

iv. If the items redacted and partially withheld from production are PowerPoint type presentation decks or Excel-type spreadsheets as addressed in section 7.l), supra, and the native items are also withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user.  For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes.   For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, formulas, annotations and notes.  The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible.  For example, column widths should be formatted so that the numbers in the column will display rather than "#########."

v. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unprivileged portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the content.

o) **Encryption:**

i. To the extent practicable, before the application of search terms to a database of documents, the searching party shall use reasonable efforts to de-encrypt encrypted documents in the database if otherwise, without de-encryption, the search terms will not pick up hits in the encrypted documents. If encrypted documents are not able to be de-encrypted using reasonable means, following the application of search terms, the parties will meet and confer regarding that issue, and as part of that process,

1    disclose the party's use and/or prevalence of encrypted documents.

2    ii.   The Parties will make reasonable efforts to ensure that all encrypted or
3          password-protected Documents are successfully processed for review and
4          production under the requirements of this Order, and if produced in Native
5          format, the decrypted Document is produced. To the extent encrypted or
6          password-protected Documents are successfully processed according to the
7          requirements of this Order, the Parties have no duty to identify the prior
8          encrypted status of such Documents but will produce such processed
9          Documents in accordance with the specifications of this Order. If
10         documents are not successfully processed despite use of reasonable efforts,
11         a placeholder TIFF image will be produced stating the file is password
12         protected. Upon request from either Party, the Parties shall meet and confer
13         in good faith regarding reasonable efforts or mechanisms to remove such
14         security protection or production of available Metadata.

15   p)   **Hard Copy Documents:**

16    i.    <u>Coding Fields</u>:  All coding information defined in Appendix 2 as applicable
17          to "All Items" or "Paper," shall be produced in the data load file
18          accompanying production of paper documents.

19    ii.   <u>Unitization of Paper Documents</u>:  Paper documents should be logically
20          unitized for production.  Therefore, when scanning or producing paper
21          documents, documents should be scanned as they as they are kept in the
22          regular course of business, distinct documents shall not be merged into a
23          single file or database record, and distinct documents shall not be split into
24          multiple files or database records. The parties will make their best efforts
25          to unitize documents correctly.

26    iii.  <u>File/Binder Structures (Parent-Child Unitization)</u>:  Where  multiple
27          documents were organized into groups, such as folders, clipped bundles
28          and binders, each distinct document shall be unitized as described in section

7.p).ii above, but maintained together in a parent-child relationship as specified in section 7.f).  The parties will make their best efforts to unitize parent children groups correctly.

iv.  <u>Identification</u>:  Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

v.  <u>Custodian Identification</u>:  The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

q)  **System Files:**  ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology.  The parties recognize that to reduce the document review population, additional file types will need to be excluded.  But before a party excludes additional file types from its document review population, the parties shall meet and confer to negotiate separately a culling protocol that addresses file-type exclusion and other culling parameters to the extent necessary. If a party intends to produce ESI that was previously filtered and processed to remove system files, the party shall identify what additional types of system files (if any) were excluded beyond the industry standard list.

r)  **De-duplication:**  The producing party need only produce a single copy of a particular ESI item, and may de-duplicate ESI vertically by custodian, or horizontally (globally) across the population of records.

i.  Duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only. The resulting hash value for each item shall be reflected in the HashValue field specified in Appendix 2.

ii.  If a producing party elects to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in the

Duplicate Custodians field specified in Appendix 2.  To the extent it is technologically possible by and not unduly burdensome for the producing party's software/vendor, the producing party must also identify the filepath(s), filename(s), and mailfolder(s) for all duplicate custodians, as set out in the DuplicateFilepaths, DuplicateFilenames, and DuplicateMailFolders fields in Appendix 2. Alternatively, if the producing party is unable to break these values into separate metadata fields, the producing party may produce this information in one field called DuplicateMetadata. Additionally, all BCC recipients whose names would have been included in the BCC metadata field but are excluded because of either horizontal or vertical de-duplication, must be identified in the BCC metadata field specified in Appendix 2.  In the event of a rolling production of documents or ESI items, the producing party shall provide an overlay load file with updated Duplicate Custodians upon request or at regular intervals. and BCC information along with each production.

iii.   De-duplication shall be performed only at the Document family level so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the HashValue field in Appendix 2.

iv.   Where email threading is available as a review tool, producing parties agree that it can be employed in the review process, but they will not remove lesser included emails in an email thread from productions through a de-duplication process.  However, if the thread includes a redaction, then the producing parties may in their discretion remove from production lesser included emails in that thread through a de-duplication process.

**8.   DOCUMENTS PROTECTED FROM DISCOVERY**

a)   Protection against waiver of privilege or other protection from discovery shall

be governed by the Stipulated Protective Order. The parties do not waive the right to conduct a full and comprehensive review for relevance, privilege, or other protections.

b)      Communications involving litigation counsel (both outside counsel and in-house counsel responsible for the litigation, including their staff or consultants) that post-date the filing of the first-filed complaint in this action, need not be placed on a privilege log.

c)      The parties agree that where emails are combined in an email string, the metadata from the top email in the string will be provided on the log and the metadata for the other emails, lower down in the email string, will not be included in the log entry for that string.   The parties also agree, however, that non-inclusive emails in a thread that are identified as privileged will be included on the log (along with the metadata from only the top email in the non-inclusive strings) and the log will contain an identifier for the email thread group to the extent available.

d)      The parties reserve the right to discuss other methods of logging data if the procedures described in this ESI protocol impose an undue burden.

**9.      MISCELLANEOUS PROVISIONS**

a)      **Objections Preserved:**  Nothing in this Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.  Nothing in this Order waives the right of any party to petition the Court for an order modifying its terms upon sufficient demonstration that compliance with such terms is unreasonably burdensome or that the production of particular documents in a different format or with different metadata fields is reasonably necessary, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing parties and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Order prior to seeking relief from the Court.

b)      **Retention of Original Documents:** Each party agrees to retain native

electronic source documents for all ESI produced in this litigation unless another manner is mutually decided upon by the parties. Each party agrees to use reasonable measures to maintain the original native source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of the original production in the event the review of such metadata becomes necessary.

c) **Phasing:** When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to discuss whether the phased production of ESI is appropriate. Following the initial production, the parties will continue to prioritize the order of subsequent productions if mutually agreed upon.

d) **Modifications:**  Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI.  If the parties cannot resolve their disagreements regarding modifications, the parties may submit their competing proposals and a summary of their dispute to the Court. Proposed modifications or disputes regarding ESI that counsel for the parties are unable to resolve will be presented to the Court at the initial case management conference, Fed. R. Civ. P. Rule 16(b) Scheduling Conference, or as soon as possible thereafter.

e) **Timing of Productions:** Production in the Litigation is anticipated to be conducted on a rolling basis with parties making reasonable efforts to expedite the process.  If any party feels production has been unreasonably delayed, the parties agree to confer via telephone or in person to reach a mutually agreeable consensus prior to court involvement.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: November 1, 2018

**BLEICHMAR FONTI & AULD LLP**

By:  */s/ Lesley E. Weaver*
     Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)

555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

**HAUSFELD LLP**

By:  */s/ Michael P. Lehmann*
      Michael P. Lehmann

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
Christopher L. Lebsock (SBN 184546)
Samantha Stein (SBN 302034)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

*Interim Co-Lead Counsel for the Direct Purchaser Class*

**KIRKLAND & ELLIS LLP**

By: */s/ Eliot A. Adelson*
Eliot A. Adelson

Eliot A. Adelson (State Bar No. 205284)
Margaret A. Webb (State Bar No. 319269)
555 California Street, 27th Floor
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: margaret.webb@kirkland.com

Tammy A. Tsoumas (State Bar No. 250487)
Heather F. Canner (State Bar No. 292837)
333 South Hope Street
Los Angeles, CA  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Email: ttsoumas@kirkland.com
Email: heather.canner@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com

*Attorneys for Defendants Murata Manufacturing Co., Ltd.,
Murata Electronics North America, Inc., and Murata
Power Solutions, Inc.*

**GIBSON DUNN & CRUTCHER LLP**


By:  */s/ Daniel G. Swanson*
     Daniel G. Swanson

Daniel G. Swanson (SBN 116656)
Frances A. Smithson (SBN 313700)
333 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 229-7000
Fax: (213) 229-7520
dswanson@gibsondunn.com
fsmithson@gibsondunn.com

Scott Hammond (*pro hac vice*)
Cynthia Richman (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (415) 393-8200
Fax: (415) 393-8306
shammond@gibsondunn.com
crichman@gibsondunn.com

*Attorneys for Defendants Panasonic Corporation of
North America and Panasonic Corporation*

**LATHAM & WATKINS LLP**


By:  */s/ Marguerite M. Sullivan*
     Marguerite M. Sullivan

1  Marguerite M. Sullivan (*pro hac vice*)
   Allyson M. Maltas (*pro hac vice*)
2  555 Eleventh St., NW, Suite 1000
   Washington, D.C. 20004
3  Tel: (202) 637-2200
   Fax: (202) 637-2201
4  marguerite.sullivan@lw.com
   allyson.maltas@lw.com
5
6  Alfred Carroll Pfeiffer, Jr. (SBN 120965)
   505 Montgomery Street, Suite 2000
7  San Francisco, CA 94111
   Tel: (415) 391-0060
8  Fax: (415) 395-8095
   al.pfeiffer@lw.com
9

10

11 *Attorney for Defendants Sumida America Components, Inc.;*
   *Sumida Corporation; and Sumida Electric Co., Ltd.*
12

13 **ARNOLD & PORTER KAYE SCHOLER LLP**

14 By:  */s/ James L. Cooper*
15       James L. Cooper

16

17 Daniel B. Asimow
   Three Embarcadero Center, 10th Floor
18 San Francisco, CA 94111-4024
   Email: daniel.asimow@arnoldporter.com
19

20 James L. Cooper (*pro hac vice*)
   Michael Adam Rubin (*pro hac vice*)
21 601 Massachusetts Ave., NW
   Washington, DC 20001
22 Email: James.Cooper@arnoldporter.com
   Email: michael.rubin@arnoldporter.com
23

24 *Attorneys for Defendants Taiyo Yuden (U.S.A.) Inc. and*
   *Taiyo Yuden Co., Ltd.*
25

26

27

28

STIPULATED [PROPOSED] ESI ORDER                    CASE NO. 5:18-CV-00198-EJD-NC
                              20

1

**MORGAN LEWIS & BOCKIUS LLP**

2

By: */s/ Michelle Park Chiu*

3
        Michelle Park Chiu

4

Michelle Park Chiu (SBN 248421)

5
One Market
Spear Street Tower

6
San Francisco, California 94105-1596
Tel: (415) 442-1000

7
Fax: (415) 442-1001

8
michelle.chiu@morganlewis.com

9
J. Clayton Everett, Jr. (*pro hac vice*)
Scott A. Stempel (*pro hac vice*)

10
Greta L. Burkholder (*pro hac vice*)
Cindy Hong (*pro hac vice*)

11
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

12
San Francisco, California
Tel: (202) 739-3000

13
Fax: (202) 739-3001

14
clay.everett@morganlewis.com
scott.stempel@morganlewis.com

15
greta.burkholder@morganlewis.com
cindy.hong@morgnalewis.com

16

17
*Attorneys for Defendants TDK U.S.A. Corporation;*
*TDK Corporation; TDK-EPC Corporation; and*

18
*TDK Corporation of America*

19

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

20

By: */s/ Roxane A. Polidora*

21
        Roxane A. Polidora

22
Roxane A. Polidora (SBN 135972)

23
Jacob R. Sorensen  (SBN 209134)
Four Embarcadero Center

24
22nd Floor
San Francisco, CA 94111-5998USA

25
Tel: (415) 983-1000

26
Fax: (415) 983-1200
roxane.polidora@pillsburylaw.com

27
jake.sorensen@pillsburylaw.com

28

---

1

2   *Attorneys for Defendants Tokin Corporation and Tokin America, Inc.*

3

4   **KESSENICK GAMMA & FREE LLP**

5

6   By:  */s/ J. Maxwell Cooper*
            J. Maxwell Cooper

7

8   J. Maxwell Cooper (SBN 284054)
    Michael A. Gawley (SBN 294190)

9   Scott C. Kessenick (SBN 295999)

10  44 Montgomery Street, Suite 3880
    San Francisco, CA 94104

11  Tel: (415) 362-9400
    Fax: (415) 362-9401

12  mcooper@kgf-lawfirm.com
    mgawley@kgf-lawfirm.com

13  skessenick@kgf-lawfirm.com

14

15  *Attorneys for Defendants Sagami Elec Co., Ltd. and Sagami America Ltd.*

16

17

18
        Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this
19
    document has been obtained from each of the other signatories above.
20
    Date: November 1, 2018
21
                                              */s/ Matthew S. Weiler*
22                                            Matthew S. Weiler

23

24

25

26

27

28

                                      22

1

**IT IS ORDERED** that the forgoing Agreement is approved.

2

Dated: _____

3                                                      EDWARD J. DAVILA
                                                   United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Appendix 1:**
**Production Delivery Requirements**

**General Instructions**

1. A cover letter should be included with each production. The following information should be included in the letter:  Bates ranges and production volume identifier.
2. Data can be produced using a secure file transfer protocol or similar secure electronic transmission or on physical media such as a CD, DVD, or hard drive; use the media requiring the least number of deliverables.
3. Label all media with the following:
    a. Case number;
    b. Production date;
    c. Bates range;
    d. Disk number (1 of X, 2 of X, etc.), if applicable.
4. All productions should be checked and produced free of computer viruses.
5. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via e-mail or in a separate cover letter from the data.

**Image Load Files**

Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.

The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.OPT).

The volume names should be consecutive (e.g., ABC001, ABC002, et seq.).

There should be one row in the load file for every TIFF image in the production.

Every image in the delivery volume should be cross-referenced in the image load file.

The imageID key should be named the same as the Bates number of the page.

Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Files that are the first page of a logical document should include a "Y" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

Sample Concordance Image (Opticon) Load File:

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,,
```

**Concordance Data Load Files:**
1. Data load files should be produced in Concordance .DAT format.
2. The data load file should use standard Concordance delimiters:
   a) Comma - ¶ (ASCII 20);
   b) Quote - þ (ASCII 254);
   c) Newline - ® (ASCII174).
3. The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
4. All date fields should be produced in mm/dd/yyyy format.
5. All attachments should sequentially follow the parent document/email.
6. Use carriage-return to indicate the start of the next record.
7. Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.); a separate volume should be created for each piece of media delivered.
8. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (e.g., ABC001.DAT).
9. The volume names should be consecutive (e.g., ABC001, ABC002, et seq.).
10. If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with section 7.c).iv.

Sample Concordance .DAT Load File:
þBegBatesþ¶þEndBatesþ¶þBegAttachþ¶þEndAttachþ¶þPgCountþ¶þCustodianþ

**OCR/Extracted Text Files**
1. OCR or Extracted Text files shall be provided in a separate \TEXT\ or \OCR\ directory containing Document level text files.
2. If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format, consistent with section 7.c).iv.

---

1

2

### Appendix 2:
### Production Metadata Fields

3

4

5

Parties shall produce extracted metadata for each paper and ESI document and include the following fields to the extent available and subject to other limitations above, except that if the field contains privileged information, that privileged information may be redacted. If burden or technological difficulty is claimed by the producing party, it must be disclosed to the producing party.  Any redactions for privilege reasons shall be recorded on a privilege log:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (including prefix) of an item. **No spaces or special characters. The BegBates field should be populated for all items (including single page items). |
| EndBates | Last Bates number (including prefix) of an item. **No spaces or special characters. The EndBates field should be populated for all items (including single page items). |
| BegAttach | First Bates number (including prefix) of the first document in a document family range (i.e., Bates number of the first page of the first attachment). Documents that are part of document families, i.e., containing parents and attachments, should receive a value. |
| EndAttach | Last Bates number (including prefix) of the last document in a document family range (i.e., Bates number of the last page of the last attachment). Documents that are part of document families, i.e., containing parents and attachments, should receive a value. |
| Custodian | Name of person (or other non-human data source) from whose files the item is produced. Names should be consistently formatted across production volumes. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g. Smith, John A. and Smith, John B.). |
| DuplicateCustodians | Custodians of unproduced duplicate documents. Multiple values separated by semi-colons. |
| DuplicateFilepaths (if technically possible and not unduly burdensome) | Original file/path of the locations where the unproduced duplicate items were located at the time of collection. This should include location, file name, and file source extension. Multiple values should be separated by semi-colons. |
| DuplicateMailFolders (if technically possible and not unduly burdensome) | Folder location of e-mail duplicates within the PST/OST; separated by semi-colons. |
| DuplicateFilenames (if technically possible and not unduly burdensome) | Original file names of the unproduced de-duplicated documents. Multiple values separated by semi-colons. |
| SourceFilePath | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |

| FileName | The filename of the original source native file for an ESI item as stored by the custodian. |
|---|---|
| NativeLink | Hyperlink path for documents provided in native format only.  **The linked file must be named per the BegBates value. |
| EmailSubject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item). |
| Title | Any value populated in the Title field of the source file metadata or item properties. |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |
| From | From field extracted from an Email message or calendar item, including both the display name and the SMTP address. |
| To | To or Recipient field extracted from an Email message or calendar item, including both the display name(s) and the SMTP address(es). |
| CC | CC or Carbon Copy field extracted from an Email message or calendar item, including both the display name(s) and the SMTP address(es). |
| BCC | BCC or BlindCarbon Copy field extracted from an Email message or calendar item, including both the display name(s) and the SMTP address(es). |
| DateSent | Sent date and time of an email or calendar item (mm/dd/yyyy format). |
| TimeSent | Sent time of an email, calendar item, or Instant Message (hh:mm:ss format) was sent. |
| DateReceived (if available) | Received date and time of an email or calendar item (mm/dd/yyyy format). |
| TimeReceived (if available) | Received time of an email, calendar item, or Instant Message (hh:mm:ss format). |
| TimeZoneProcessed | The originating time zone of the document. |
| DateCreated | Date the item was originally created (mm/dd/yyyy format). |
| TimeCreated | Time the item was originally created (hh:mm:ss format). |
| DateLastModified | Last modification date of item (mm/dd/yyyy format). |
| TimeLastModified | Last modification time of item (hh:mm:ss format). |
| PageCount: | The number of pages of the document, excluding the pages of documents in the same family. |
| [MD5/SHA1]HashValue | MD5 or SHA-1 hash value. |

STIPULATED [PROPOSED] ESI ORDER                CASE NO. 5:18-CV-00198-EJD-NC

| | |
|---|---|
| Conversation_Index (if available, technologically possible and not unduly burdensome) | Value assigned to an email conversation by the Exchange server (i.e., EmailThreadID or Email Conversation Index).. |
| FileExtension | Indicates file extension of source native file (e.g., .msg, .doc, .xls, etc.). |
| PST/OST/NSF filename (if technologically possible and not unduly burdensome) | PST/OST/NSF filename. |
| Folder (if technologically possible and not unduly burdensome) | Folder location of the e-mail within the PST/OST/NSF. |
| DocumentType (if technologically possible and not unduly burdensome) | Descriptor for the type of document: **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. |
| Confidentiality | "Confidential" or "Highly Confidential" if a document has been so designated under the Protective Order, otherwise blank. |
| Attach Count | Number of attached files. |
| Message-ID (MSGID) | The Outlook Message ID assigned by the Outlook mail server, if applicable. |
| Redacted (Y/N) | Whether the document contains redactions. |
| Redaction Reason | Basis of redaction. If more than one, separate reasons by semi-colons. |
| Application | Indicates software application that generated the ESI item (e.g., Outlook, word, etc.). |
| TextPath | Full relative path to the current location of the document-level text file. |