

November 1, 2018

**VIA ECF**

Dear Judge Cousins:

      Pursuant to Judge Davila's Scheduling Order (ECF No. 228), the Direct Purchaser Plaintiffs ("Plaintiffs") and Defendants in *In re Inductors Antitrust Litigation*, No. 5:18-cv-198-EJD-NC, submit this joint letter to determine the form of Protective Order that should be entered in this litigation. Although the parties have met and conferred on several occasions and reached agreement on most of the provisions of a Protective Order, there remain disagreements between the parties' competing proposals.

      **Plaintiffs' Position**

1.    The Court Should Adopt Plaintiffs' Proposal for Resolving Challenges to The Privileged Status Of "Clawed Back" Documents: Plaintiffs' proposal allows a party challenging a document "clawed back" from production on the grounds of privilege to use the procedure provided by Fed. R. Civ. P. 26(b)(5)(B. On its face, the rule allows parties given notice that they have received an inadvertently produced privileged document to use the document in challenging the privilege designation. Fed. R. Civ. P. 26(b)(5)(B) (challenging party "may promptly present the information to the court under seal for a determination of the claim."). See Fed. R. Civ. P. 26(b)(5)(B) advisory committee's note (2006) (Rule 26(b)(5)(B) allows "any party that received the information to present the matter to the court for resolution" and "[i]n presenting the question, the party may use the content of the information only to the extent permitted by the applicable law of privilege, protection for trial-preparation material, and professional responsibility").

      The model protective order for standard litigation for this District adopts this procedure. See Model Protective Order for Standard Litigation, § 11. The model protective order for patent and "highly confidential" materials includes this same baseline rule, and includes only as an "alternative" the restriction that Defendants seek that acknowledges the parties "would otherwise be allowed" to use the challenged document to contest a privilege designation. See Model Protective Order for Patent or Highly Confidential Litigation, § 13, n.20.

      Use of to the latter restriction to a challenge a privilege designation here should be rejected because it deprives challenging parties of the procedures of Rule 26, and the Court of the ability to consider argument directed to the content and context of a disputed communication. Numerous decisions permit such argument and/or consideration in the context of a "claw back" challenge. *See, e.g., Carlin v. Dairy America*, No. 1:09-cv-430 AWI-EPG, 2016 WL 4382527, at *1 (E.D. Cal. Aug. 16, 2016); *Le v. Zuffa*, 15-cv-01045-RFB-PAL, 2016 WL 3035086, at *6 (D. Nev. May 26, 2016); *Surfcast, Inc. v. Microsoft Corp.*, No. 2:12-cv-

1

Hon. Nathaneal Cousins
November 1, 2018
Page 2

333-JAW, 2013 WL 4039413, at *1 (D. Maine Aug. 7, 2013); "Joint Discovery Statement" at 1-2 (oct. 30, 2017) (ECF No. 249) in *Federal Trade Comm'n v. Qualcomm, Inc.*, No. 5:17-CV-00220-LHK-NMC (N.D. Cal.) .

 Defendants have informed Plaintiffs that their interpretation of Rule 26 is that the parties may only use the "knowledge" learned from the potentially privileged document, not the document itself. But that interpretation cannot be squared with the Rule, which allows "information" (i.e., the challenged materials) to be submitted under seal. Knowledge of a document cannot similarly be presented to the Court "under seal for a determination of a claim."

 Defendants' authorities do not address ethical rules for submitting disputed materials in privilege dispute in federal courts, and no ethical rule prevents a party from using a document the privilege status of which is disputed to resolve a dispute concerning whether privilege applies. *See State Compen. Ins. Fund v. WPS, Inc*., 82 Cal. Rptr. 2d 799 (Cal. App. 2d Dist. 1999) (documents "obviously appear to be subject to an attorney-client privilege"); *Clark v. Super. Ct.*, 125 Cal. Rptr. 3d 361, 373 (Cal. App. 4th Dist. 2011) (allowing examination "to ascertain if the materials are privileged"). In any event, federal law on privilege and the Federal Rules, not California law, applies to the question of whether and how a document subject to "claw back" is used.

2. <u>Industry Witnesses Should Receive Protected Materials</u>: Defendants propose, in the guise of preventing "misuse" of Confidential information, to restrict access to discovery materials for any witness "employed by [or] otherwise engaged in commercial activities or decision-making for another manufacturer, seller or customer of Inductors," or with the "present intention" to do so. This restriction would substantially limit Plaintiffs' use of consulting and testifying witnesses, and is unnecessary in light of the existence of a Protective Order. Plaintiffs have offered to agree to a restriction on current employees serving as experts, but Defendants have rejected this compromise.

 Defendants identify no protectible interest that could possibly support this restriction. This is not a patent or trade secrets case. There is no source code or "secret sauce." Courts in analogous cases have entered protective orders that not only allowed former employees to receive this information, but have not required consent of the producing party. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 14-md-1720 (E.D.N.Y. April 3, 2015) at §18 (experts "reasonably likely to have had prior knowledge of the subject matter" allowed); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, No. 03-md-1532, 2009 WL 861845, at *11, 14 (D. Me. March 26, 2009) (Confidential and Highly Confidential information could be disclosed under a protective order to experts of each party's choosing).

Hon. Nathaneal Cousins
November 1, 2018
Page 3

Defendants' restriction on use of protected materials should be rejected because it jeopardizes Plaintiffs' ability to retain an industry expert with sufficient knowledge and experience to meet admissibility requirements imposed by Federal Rule of Evidence 702. Should the Court impose the limitation Defendants seek, Defendants should be estopped from challenging the industry qualifications of any of Plaintiffs' experts.

Defendants' restriction cannot be justified by reference to concerns about potential expert witnesses having a competitive advantage having reviewed industry data concerning inductors. The opinions in this antitrust litigation will involve subjects such as the nature of the commoditized products at issue, and historic prices of inductors; this litigation will not concern patents or designs for future products, or other information that could potentially disadvantage Defendants in their inductors businesses.

Finally, Defendants seek to restrict from serving as a witness a current or future "seller or customer" of inductors. This restriction cannot be justified by reference to any competitive concerns, as purchasers of Inductors are not Defendants' competitors.

**Defendants' Position**

1.      Use of Inadvertently Disclosed Privileged Documents.

In order to preserve as much as possible the confidentiality that is at the heart of the privilege, Defendants believe that all inadvertently produced privileged materials should be returned, destroyed or sequestered, and that no use should be made of inadvertently produced materials unless and until the Court concludes that documents are not privileged. Plaintiffs' proposal to allow retention and use of inadvertently disclosed privileged documents to make privilege challenges serves no legitimate purpose, undermines the privilege and its purpose, is inconsistent with the ethical rules applicable to California lawyers and the Federal Rules of Civil Procedure, and is inconsistent with protective orders in other similar cases.

Plaintiffs' "carve out" serves no legitimate purpose. The procedure for evaluating and challenging privilege designations is well-established. Information sufficient to evaluate the privilege is logged, and challenges can be made on the basis of the logged information. If the court deems it necessary, it may evaluate the documents or other information directly through an *in camera* review. There is no legitimate reason to use a different procedure for inadvertently produced documents. The parties have, after all, agreed that inadvertent disclosure does not waive privilege, and treating inadvertently disclosed documents differently than other documents for the purpose of a privilege challenge effectively results in at least a partial waiver of the privilege. To the extent that any party believes that review of the actual document is necessary to make a privilege determination, moreover, they are free to request *in camera* review by the court. Defendants' proposal does not preclude *in camera* review; it just precludes the parties from retaining and making use of any inadvertently disclosed privileged documents pending decision or other order of the Court.

Hon. Nathaneal Cousins
November 1, 2018
Page 4

        Contrary to Plaintiffs' contention, their proposal extends well beyond what the Federal
Rules permit and is inconsistent with ethical rules applicable to California lawyers.  The
Federal Rules allow use of inadvertently disclosed information in a privilege challenge only
insofar as permitted by ethical rules.  *See* Comment to Rule 26(b)(5).  In California, it is the
"the obligation of an attorney receiving privileged documents due to inadvertence of another" is
to "refrain from examining the materials any more than is essential to ascertain if the materials
are privileged."  *State Com. Ins. Fund v. WPS, Inc.*, 70 Cal.App.4th 644, 656, 82 Cal.Rptr.2d
799 (Cal. Ct. App. 1999).  In the context of attorney client privileged material, "once the
examination show[s] a document had been transmitted between an attorney representing [the
client] and either an officer or employee of [the client], that examination would suffice to
ascertain the materials are privileged, and further examination would exceed permissible
limits."  *Clark v. Superior Court*, 196 Cal.App.4th 37, 53 (Cal. Ct. App. 2011).  Here, plaintiffs
claim the right to review and use materials over which there is a claim of privilege after being
informed of the claim of privilege, and presumably after reviewing sufficient information to
make a privilege determination.  California law does not allow this result, as it unnecessarily
undermines the very confidentiality that the privilege is intended to protect.  Thus, it should not
be surprising that the clawback procedures incorporated in various protective orders in similar
types of cases require the immediate return or destruction of any inadvertently produced
documents, prior to any potential privilege challenge.  *See In re Cathode Ray Tube Antitrust
Litigation*, Case No. 3:07-cv-05944-SC (N.D. Cal.), ECF No. 306, ⁋ 12 ("CRT PO") (requiring
inadvertently produced documents to be "immediately returned" and precluding "use [of] such
items for an purpose until further Order of the Court."); *In re Lithium Ion Batteries Antitrust
Litigation*, Case No. 4:13-md-02420-YGR (N.D. Cal.), ECF No. 178, ⁋ 12 ("Li-Ion Batteries
PO")) (same).  The same protections should apply here.

2.    Disclosure of Confidential and Highly Confidential Information to Competitor and
      Customer Employees Retained as "Experts."

        A primary purpose of the Protective Order is to protect the parties' confidential trade
secrets, business planning, strategy and pricing information from disclosure to those who may
use the information to harm the parties' commercial interests. The parties generally agree on
this principle, which informs all of the limitations on disclosure that are included—and agreed
between the parties—in the Protective Order, including the explicit recognition that—contrary
to Plaintiffs' articulated position above—Highly Confidential information will be disclosed.

        Plaintiffs' version of the Protective Order, however, has a loophole that threatens to
defeat the Protective Order's purpose.  Specifically, Plaintiffs appear to contemplate that the
parties will retain "experts" employed by or engaged in commercial activities for the parties'
competitors and customers who would be permitted full access to all Confidential and Highly
Confidential-Outside Counsel Eyes Only material produced in the litigation.  Plaintiffs agree

Hon. Nathaneal Cousins
November 1, 2018
Page 5

that it would be inappropriate and harmful to expose such information to other manufacturers of Inductors, but they seek to allow such harmful disclosure to other of Defendants competitors (i.e., other sellers of inductors) as well as Defendants customers and Plaintiffs' competitors.

The potential for competitive harm is significant. There is no effective way to ensure that employees of the parties' competitors do not use competitively sensitive information to further their employers' commercial interests at the expense of the disclosing party other than precluding their access to Confidential and Highly Confidential Information. This is particularly true given that the disclosing party may never know what confidential information is disclosed to a person retained as an expert by another party, and may, in fact, never even know that an employee of a competitor has been retained by another party as a consulting expert. It is more than a little ironic that plaintiffs are seeking a mechanism to allow disclosure of confidential information to competitor employees in a case in which plaintiffs' claims are predicated on allegations that sharing non-public information is anticompetitive. Beyond the potential sharing of this information with competitors who are acting experts, moreover, Defendants are also concerned that Plaintiffs may share confidential, non-public, sensitive pricing and negotiating strategy documents with the very customers with whom they are having the negotiations, who are also potentially competitors of Plaintiffs and members of the putative class.

Defendants' proposal does not impose a significant constraint on the parties, given the many potential experts that are available to testify. It is a necessary constraint, however, as recognized in many different protective orders entered in similar types of cases which impose the same types of limitations on exposure of Confidential information to experts employed by competitors. *See In re Resistors Antitrust Litigation*, Case No. 5:15-cv-03820-RMW (N.D. Cal.), ECF No. 122, ¶ 2.7 (defining experts entitled to receive Confidential or Highly Confidential material to exclude current employees of competitors); CRT PO, ¶ 2.12 (same); *FTC v. Qualcomm, Inc.*, Case No. 5:17-cv-00220 (N.D. Cal.), ECF No. 81, ¶ 2.8 (same); *Li-Ion Batteries PO*, ¶ 2.12 (same). In fact, the Model Protective Order for Patent or Highly Confidential Litigation, in Sec. 2.7, defines "experts" to exclude "past or current employee[s] of a Party or a Party's competitor," which goes beyond what Defendants have proposed here.

Respectfully Submitted,

 

BLEICHMAR FONTI & AULD LLP

*/s/ Lesley E. Weaver*

HAUSFELD LLP

*/s/ Michael P. Lehmann*

Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories above.

Date: November 1, 2018

*/s/ Matthew S. Weiler*
Matthew S. Weiler
