1    Marguerite M. Sullivan (*pro hac vice*)
     Allyson M. Maltas (*pro hac vice*)
2    LATHAM & WATKINS LLP
     555 Eleventh St., NW, Suite 1000
3    Washington, D.C. 20004
     Tel: (202) 637-2200
4    Fax: (202) 637-2201
     marguerite.sullivan@lw.com
5    allyson.maltas@lw.com

6    Alfred Carroll Pfeiffer, Jr. (SBN 120965)
     LATHAM & WATKINS LLP
7    505 Montgomery Street, Suite 2000
     San Francisco, CA 94111
8    Tel: (415) 395-8898
     Fax: (415) 391-0600
9    al.pfeiffer@lw.com

10   *Attorneys for Defendants Sumida Corporation;*
     *Sumida Electric Co., Ltd.; and*
11   *Sumida America Components Inc.*

12   Additional Moving Defendants and Counsel Listed on Signature Page

13

14                    **UNITED STATES DISTRICT COURT**

                   **NORTHERN DISTRICT OF CALIFORNIA**
15
                        **SAN JOSE DIVISION**

16                                          | Case No. 5:18-cv-00198-EJD

17
                                            | **DEFENDANTS' REPLY MEMORANDUM**
18   IN RE INDUCTORS ANTITRUST             | **OF POINTS AND AUTHORITIES IN**
     LITIGATION                            | **SUPPORT OF JOINT MOTION TO**
19                                          | **DISMISS COMPLAINT**

20
                                            | Date: March 7, 2019
21                                          | Time: 9:00 a.m.
                                            | Judge: Edward J. Davila
22                                          | Location: Courtroom 4 – 5th Floor

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1

## <u>TABLE OF CONTENTS</u>

2                                                                                                    **Page**

3    INTRODUCTION ................................................................................................................... 1

4    ARGUMENT ......................................................................................................................... 2

5    I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THE CAC FAILS TO
           STATE A CONSPIRACY CLAIM RELATING TO OFF-THE-SHELF
6          INDUCTORS ............................................................................................................... 2

7          A.    The Pleading Standard That This Court Must Apply Is Far More
                 Stringent Than Plaintiffs Suggest ................................................................... 2
8
           B.    Plaintiffs Do Not Dispute That The CAC Does Not Contain Any
9                Factual   Allegations   Regarding   The   Alleged   Off-The-Shelf
                 Inductors Conspiracy ...................................................................................... 3
10
           C.    The Overbroad "Import Index" Does Not Reveal "Parallel
11               Conduct" ......................................................................................................... 3

12         D.    Plaintiffs Ignore That Their Own Allegations Demonstrate That
                 Their Alleged Conspiracy Is Not Plausible .................................................... 6
13
           E.    The Court Cannot Infer A Conspiracy From Plaintiffs' Information
14               Exchange Allegations ...................................................................................... 8

15         F.    Plaintiffs Admit That The Existence Of A DOJ Investigation Does
                 Not Save The CAC ........................................................................................ 11
16
           G.    Plaintiffs' Alleged "Plus Factors" Separately Do Not Meet Their
17               Burden ........................................................................................................... 12

18   II.   PLAINTIFFS FAIL TO REBUT DEFENDANTS' ARGUMENTS THAT
           THE "PRODUCTS CONTAINING INDUCTORS" SUB-CLASS IS
19         BARRED AS A MATTER OF LAW ............................................................................ 13

20         A.    Plaintiffs Do Not Plead Any Facts That Would Bring The
                 "Products Containing Inductors" Class Under The Control
21               Exception To *Illinois Brick* ......................................................................... 14

22         B.    The FTAIA Also Bars Plaintiffs Arch And Cambridge's Claims ...................... 16

23   III.  PLAINTIFFS' RELIANCE ON *ARANDELL* FAILS BECAUSE THEY
           DO NOT PLEAD ANY FACTS TYING U.S. SUBSIDIARIES TO ANY
24         ALLEGED CONSPIRACY .......................................................................................... 18

25   CONCLUSION .................................................................................................................... 20

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

ii

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### CASES

4

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
  758 F.2d 1486 (11th Cir. 1985) ........................................................10

5

*In re ATM Fee Antitrust Litigation*,
  686 F.3d 741 (9th Cir. 2012) ..........................................................14

6

7

*B&R Supermarket, Inc. v. Visa, Inc.*,
  No. C 16-01150 WHA, 2016 WL 5725010 (N.D. Cal. Sept. 30, 2016)...................9

8

9

*In re Broiler Chicken Antitrust Litigation*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ...............................................5, 7

10

*In re Capacitors Antitrust Litigation*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ...............................................11

11

12

*In re Capacitors Antitrust Litigation*,
  154 F. Supp. 3d 918 (N.D. Cal. 2015) ................................................20

13

*In re Capacitors Antitrust Litigation*,
  No. 14-CV-03264-JD, 2018 WL 4558265 (N.D. Cal. Sept. 20, 2018) ..................18

14

15

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ..............................................18

16

17

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 732 (1984)..................................................................18

18

*In re Domestic Airline Travel Antitrust Litigation*,
  221 F. Supp. 3d 46 (D.D.C. 2016) .....................................................5

19

20

*In re Flash Memory Antitrust Litigation*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ......................................10, 11, 13

21

*Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
  795 F. Supp. 2d 847 (E.D. Wis. 2011).................................................16

22

23

*In re Graphics Processing Units Antitrust Litigation*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...........................................11, 13

24

25

*In re Hydrogen Peroxide Antitrust Litigation*,
  702 F. Supp. 2d 548 (E.D. Pa. 2010) .................................................16

26

*Kelsey K. v. NFL Enters., LLC*,
  No. 17-16508, 2018 WL 6721730 (9th Cir. Dec. 21, 2018)...............................4

27

28

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

*In re Late Fee & Over-Limit Fee Litigation*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ..............................................................7, 12

*In re Lithium Ion Batteries Antitrust Litigation*,
    No.: 13–MD–2420 YGR, 2014 WL 309192 (N.D. Cal. 2014) ..............................16

*In re Lithium Ion Batteries Antitrust Litigation*,
    No. 13-md-02420-YGR, 2017 WL 2021361 (N.D. Cal. May 12, 2017)..................16

*In re Lithium Ion Batteries Antitrust Litigation*,
    No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ...................16

*Mitchael v. Intracorp. Inc.*,
    179 F.3d 847 (10th Cir. 1999) .............................................................................9

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ...............................................................................6

*In re Packaged Seafood Prods. Antitrust Litigation*,
    No. 15-MD-2670 JLS (MDD), 2017 WL 35571 (S.D. Cal. Jan. 3, 2017) .............11

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ...............................................................................6

*In re Resistors Antitrust Litigation*,
    15-CV-03820-JD, 2017 WL 3895706 (N.D. Cal. Sept. 5, 2017) ....................10, 11

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) .............................................................................14

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ...............................................................................6

*In re Static Random Access Memory Antitrust Litigation*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................10, 13

*In re Static Random Access Memory Antitrust Litigation*,
    264 F.R.D. 603 (N.D. Cal. 2009).........................................................................5

*In re Tableware Antitrust Litigation*,
    363 F. Supp. 2d 1203 (N.D. Cal. 2005) ..............................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..............................................................18

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011) ................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    No. C 09-5840 SI, 2010 WL 2610641 (N.D. Cal. June 28, 2010)..........................16

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1

2

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   No. M 07-1827 SI, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) .........................................15

3

*United States v. Hsiung*,
   778 F.3d 738 (9th Cir. 2015) ................................................................................................17

4

## OTHER AUTHORITIES

5

6

Fed. Trade Comm'n, OECD Competition Comm., Delegation of the United
   States, *Roundtable on Information Exchanges Between Competitors Under
   Competition Law* (Oct. 27-28, 2010) .....................................................................................9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

## INTRODUCTION

1        The Ninth Circuit's binding authority compels this Court to dismiss plaintiffs' conspiracy
2  claims.  But plaintiffs disregard—and in some instances completely ignore—that case law in
3  their opposition.  Plaintiffs do not even attempt to explain how, in light of *In re Musical*
4  *Instruments & Equipment Antitrust Litigation*[1] ("*Musical Instruments*"), a complaint alleging a
5  conspiracy related to so-called "off-the-shelf" inductors ("Inductors") can proceed when it does
6  not contain a single fact about them.  Nor do plaintiffs explain how under *Musical Instruments*,
7  this Court can infer a conspiracy from average import index data that does not actually reflect
8  prices charged by any defendant for any off-the-shelf Inductor.  Or how, under *In re Citric Acid*
9  *Antitrust Litigation*[2] ("*Citric Acid*"), this Court can infer a conspiracy from allegations of three
10  information exchanges that occurred at trade association meetings over an 11-year period.
11  Finally, plaintiffs cannot reconcile their claim that the Court should ignore both obvious
12  alternative non-conspiratorial explanations for the pricing patterns alleged in the complaint, and
13  the fact that their own factual allegations render the alleged conspiracy implausible, with *Eclectic*
14  *Properties East, LLC v. Marcus & Millichap Co.*[3] ("*Eclectic Properties*"), yet another binding
15  Ninth Circuit case that requires dismissal.

16        Likewise, plaintiffs offer no reason for this Court to conclude that their subclass of
17  purchasers of "products containing inductors" is anything other than a class of indirect
18  purchasers whose claims are barred by *Illinois Brick v. Illinois*.[4]  Plaintiffs do not plead
19  ownership or control necessary to make their claims permissible.  Nor do they show why foreign
20  sales of inductors—which are not a substantial cost component of any finished product—would
21  satisfy the FTAIA's "domestic effects" exception, such that the subclass's claims could proceed.
22  Finally, plaintiffs' effort to invoke *Arandell v. Centerpoint Energy Services, Inc.*,[5] to save their

---

[1] 798 F.3d 1186 (9th Cir. 2015).
[2] 191 F.3d 1090 (9th Cir. 1999).
[3] 751 F.3d 995 (9th Cir. 2014).
[4] 431 U.S. 720 (1977).
[5] 900 F.3d 623 (9th Cir. 2018).

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1  claims against the U.S. subsidiaries also fails because they have not alleged facts sufficient to

2  show that any U.S. subsidiaries acted in furtherance of the alleged conspiracy.

3  **ARGUMENT**

4  **I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THE CAC FAILS TO STATE A
        CONSPIRACY CLAIM RELATING TO OFF-THE-SHELF INDUCTORS**

5
6  **A.    The Pleading Standard That This Court Must Apply Is Far More Stringent
            Than Plaintiffs Suggest**

7  Plaintiffs pay only lip service to the pleading standard that the Supreme Court adopted in

8  *Bell Atlantic Corp. v. Twombly*[6] and *Ashcroft v. Iqbal*[7].  Plaintiffs argue that the Corrected

9  Consolidated Amended Class Action Complaint ("CAC") can proceed because it "puts

10  Defendants on fair notice of the claims against them" and that "the Defendants do not have to

11  speculate about what Plaintiffs are alleging."  Pls.' Opp'n to Mot. to Dismiss ("Opp'n") at 10,

12  17, ECF No. 265.  Neither is the standard this Court must apply.

13  Even a complaint that may technically provide "notice" cannot survive where it fails to

14  "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555-56.  Plaintiffs

15  must plead *facts* which, if true, present "plausible grounds to infer an

16  agreement."  *Id*.  "[A]llegations that are merely consistent with conspiracy are not enough."

17  *Musical Instruments*, 798 F.3d at 1197 n.13.  Additionally, "labels and conclusions" are not

18  *facts*, and the Court cannot "assume their veracity."  *Iqbal*, 556 U.S. at 678-79.  "[W]here the

19  well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,"

20  the complaint must be dismissed.  *Id*. at 679.

21  The cases plaintiffs cite—*Starr v. Baca*[8] and *Eclectic Properties*—do not articulate a

22  different standard, as plaintiffs suggest.  *See* Opp'n at 9-10.  *Starr* confirmed that *Twombly*

23  "required more than just notice of a claim.  It required that the claim be plausible."  652 F.3d at

24  1213; *accord Eclectic Props.*, 751 F.3d at 995 (*Twombly* standard "represents a balance between

25  Rule 8's roots in relatively liberal notice pleading and the need to prevent 'a plaintiff with a

26  _____

[6] 550 U.S. 544 (2007).

27  [7] 556 U.S. 662 (2009).

28  [8] 652 F.3d 1213 (9th Cir. 2011).

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

largely groundless claim' from 'tak[ing] up the time of a number of other people.'").  The court in *Eclectic Properties* further held that "courts must also consider an 'obvious alternative explanation' for defendant's behavior," and "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability," plaintiffs must allege more than allegations that are consistent with both explanations.  751 F.3d at 996-97.  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Id*.; *see also Starr*, 652 F.3d at 1216-17.

### B. Plaintiffs Do Not Dispute That The CAC Does Not Contain Any Factual Allegations Regarding The Alleged Off-The-Shelf Inductors Conspiracy

Plaintiffs do not address a critical basis for dismissal: that the CAC is devoid of any allegations regarding off-the-shelf Inductors, which were supposedly the subject of the alleged conspiracy.  Opp'n at 3 (admitting that their claims focus entirely on off-the-shelf Inductors); CAC ¶ 124 n.27, ECF No. 210.  Plaintiffs' brief does not identify *a single fact* in the CAC that relates to that subset of inductors (as opposed to other types of inductors that were not the subject of the alleged conspiracy).  This is because there are none.  All of plaintiffs' allegations, from defendants' market share to the import index to the alleged "information exchanges" relate to inductors generally, not off-the-shelf Inductors.  *See* Defs.' Mot. to Dismiss ("Mot.") at 8-10, ECF No. 223.  The CAC contains no allegations regarding pricing, market share, inelasticity, barriers to entry, information exchanges, or any other facts to support plaintiffs' conclusory claim that defendants engaged in a conspiracy relating to off-the-shelf Inductors.  As the Ninth Circuit held in *Musical Instruments*, this Court cannot infer the existence of a conspiracy for this sub-set of products based on facts alleged regarding a different, more expansive, selection of products.  *Musical Instruments*, 798 F.3d at 1197 & n.12.  Plaintiffs' CAC fails for that reason alone.

### C. The Overbroad "Import Index" Does Not Reveal "Parallel Conduct"

Having pled no direct evidence of conspiracy, plaintiffs recognize that the CAC cannot survive without alleging, as a threshold matter, parallel pricing conduct by each of the defendants.  Opp'n at 10.  Plaintiffs argue that the CAC alleges "parallel conduct" whereby

3

1   "complex and historically unprecedented changes in pricing structure [were] made at the very

2   same time by multiple competitors, and made for no other discernible reasons."  Opp'n at 11

3   (citing *Twombly*, 550 U.S. at 556 n.4); *see also id.* at 13.  But the CAC contains no such

4   allegations.  Parallel conduct describes separate actions by separate defendants that occur at or

5   around the same time, "such as competitors adopting similar policies around the same time in

6   response to similar market conditions."  *Musical Instruments*, 798 F.3d at 1193 (citing *Twombly*,

7   550 U.S. at 553-54).[9]  Here, plaintiffs do not plead a single price charged for any product by any

8   defendant at any time.

9         The CAC relies entirely upon import index data, which reflect average prices for a group

10   of products that include irrelevant "electrical transformers," "static converters and parts," and

11   inductors other than off-the-shelf Inductors.  *See* CAC ¶¶ 8-9.  As defendants explained in their

12   opening brief, in *Musical Instruments*, the Ninth Circuit affirmed the dismissal of a complaint

13   that relied on "over-inclusive" pricing data from both low-cost imports (which were not the

14   products at issue) and high-end guitars and amplifiers (which were relevant) because ***average***

15   ***data do not permit the court to discern anything about prices for the relevant product***.  798

16   F.3d at 1197 & n.14.  So too here.

17         Ignoring that holding, plaintiffs argue that "[i]t can be readily inferred" that off-the-shelf

18   Inductors comprise the majority of products reflected in the import index and that "[i]t stands to

19   reason" that customized inductors form only a small percentage of total inductor sales.  Opp'n at

20   13.  That is not the pleading standard; plaintiffs must plead ***facts*** that support desired inferences.

21   But plaintiffs do not allege a single actual fact from which this Court could conclude that the

22   observed pattern in the import index reflects prices of off-the-shelf Inductors.  *See* CAC at

23   *passim*.  Plaintiffs' claim that off-the-shelf Inductors comprise the majority of the products in the

24   import index is also wholly unsupported by any facts in the CAC.  *See* Opp'n at 13.[10]

25

26   [9]  Of course, parallel conduct standing alone is insufficient to state a claim of conspiracy.  *See,
     e.g., Kelsey K. v. NFL Enters., LLC*, No. 17-16508, 2018 WL 6721730, at *2 (9th Cir. Dec. 21,
     2018) (citing *Twombly*, 550 U.S. at 570); *Musical Instruments*, 798 F.3d at 1194.

27

28   [10] Plaintiffs' attempt to explain away the presence of transformers in the import index also fails.
     Opp. at 13.  Plaintiffs do not allege any facts from which the Court could conclude that the

4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1       Plaintiffs also ignore *Musical Instruments* by urging this Court to find that "averaged

2   data" is "sufficient for pleading purposes."   *Compare* Opp'n at 12, *with Musical Instruments*,

3   798 F.3d at 1197 n.14 (average pricing cannot show the "uniformity and simultaneity" required

4   to survive a motion to dismiss).   The cases plaintiffs cite do not help them:  the averages in those

5   cases had nothing to do with allegations of parallel conduct.   *In re Broiler Chicken Antitrust*

6   *Litigation* ("*Broiler Chicken*")[11] is completely irrelevant here because in that case the plaintiffs

7   alleged that the defendants conspired to manipulate the Georgia Dock average price index, and

8   then used it to negotiate artificially high prices.   In ruling on the defendants' motion to dismiss,

9   the court compared the Georgia Dock average price index with other composite and average

10  pricing to assess whether the plaintiffs' manipulation claims were plausible, not to show parallel

11  conduct.   *Id*. at 786-87.

12      *In re Static Random Access Memory (SRAM) Antitrust Litigation*[12] is also inapposite, as

13  it involved the use of average price data to support class certification, not to allege parallel

14  conduct at the pleading stage.   *Id*. at 614.   And, in *In re Domestic Airline Travel Antitrust*

15  *Litigation*,[13] the court considered data on average fares per route as a plus factor only after

16  concluding that the plaintiffs had sufficiently pled parallel conduct in the form of public

17  announcements of capacity limitations.   *Id*. at 63.   In contrast, the CAC here alleges no parallel

18  conduct.   In the Ninth Circuit, plaintiffs' allegations are simply not enough.

19      Plaintiffs attempt to excuse their failure to "plead more granular statistical data" by

20  blaming defendants for not producing more discovery.   *See* Opp'n at 12; *see also id*. at 15.   But

21  plaintiffs have the burden without the benefit of discovery to plead "a claim to relief that is

22  plausible on its face."   *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . .

23  does  not  unlock  the  doors  of  discovery  for  a  plaintiff  armed  with  nothing  more  than

24

25  transformers in the import index somehow reflect inductor prices instead of the costs of all
    components of transformers.   *Id*.   And, plaintiffs ignore entirely that "static converters" are
26  included.

    [11] 290 F. Supp. 3d 772 (N.D. Ill. 2017).

27  [12] 264 F.R.D. 603 (N.D. Cal. 2009).

28  [13] 221 F. Supp. 3d 46 (D.D.C. 2016).

conclusions.").[14]   Plaintiffs' assertion that they cannot meet their pleading burden without the benefit of discovery is merely a concession that they have failed to plead the facts required to state a claim.

Plaintiffs' discovery complaints are particularly absurd because certain of the named plaintiffs claim to be direct purchasers.  Thus, they should have been first-hand witnesses to defendants' pricing and could have alleged any parallel pricing if it had occurred.  They did not do so.  Plaintiffs also allege that defendants' websites have contained public inductors pricing information and interchangeability calculators.  CAC ¶¶ 89-90, 97, 127.  In the face of this access to information about defendants' pricing, plaintiffs' failure to allege any facts regarding defendants' prices for the products at issue suggests they have no basis to allege parallel pricing.

### D.   Plaintiffs Ignore That Their Own Allegations Demonstrate That Their Alleged Conspiracy Is Not Plausible

Plaintiffs want this Court simply to ignore allegations that demonstrate the implausibility of the alleged conspiracy, offer an obvious, non-conspiratorial explanation for the observed patterns in the import index, and undermine their conclusory market allegations.  Opp'n at 9-10.  But as previous explained, this Court must consider "obvious alternative explanations," (*supra* § I.A.), and it further cannot set aside the "contradictory market facts alleged in the complaint."  *Somers*, 729 F.3d at 964; *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (dismissing complaint with prejudice because plaintiff could not remedy defects without contradicting facts pled in the original complaint).[15]

---

[14] *See also Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme Court has stated . . . that Plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."); *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (affirming dismissal despite plaintiff's argument that she "might later establish some set of undisclosed facts" to support her antitrust claim, because plaintiffs must plead "specificity of facts" before moving into discovery).

[15] Plaintiffs' effort to avoid their own allegations by arguing that defendants have raised factual disputes fails.  Opp'n at 2.  All but one of defendants' points arise from the four corners of the CAC, and the one point that is beyond the CAC is well within the scope of judicial notice.  Mot. at 10-16.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

*First*, plaintiffs' repeated insistence that the CAC pleads "concentration and barriers to entry" (Opp'n at 22) does not make it so. The CAC alleges that *over 200* manufacturers entered the market over the span of a few years, and that during the so-called conspiracy period, defendants' combined market share fell from 83% to only 64%. *See* Mot. at 10-11; Opp'n at 4, 15. Plaintiffs confusingly argue that "Murata's growth" in market share is explained by its purchase of Toko, not from taking market share from other defendants. Opp'n at 15. But plaintiffs allege in the CAC that Murata's share actually declined from 22% to 14%, apparently even though it absorbed another major manufacturer. *See id.*; CAC ¶¶ 120-22. These facts show a "fiercely competitive" market and completely undermine plaintiffs' conclusory assertion that the market was concentrated and had barriers to entry. Plaintiffs' own allegations do not support an inference of conspiracy. *In re Late Fee & Over-Limit Fee Litig.* ("*Late Fee*"), 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014). And plaintiffs do not explain why Panasonic, a major consumer but small producer of inductors, would have any incentive to conspire to raise prices within the same market in which it purchases inductors to manufacture its finished products. *See* Mot. at 12.

Plaintiffs cite no legal support for their claim that a striking drop in defendants' market share is consistent with a conspiracy. Again, *Broiler Chicken* does not help them. In that case, the plaintiffs alleged parallel conduct in the form of publicly announced production cuts and that the defendants' combined market share held steady at nearly 90%. 290 F. Supp. 3d at 779-80. The plaintiffs' theory was that a conspiracy was plausible because, absent coordination, the defendants would not publicly announce that they were cutting production, fail to meet demand, and still maintain market share. *Id.* at 783.[16] By contrast, defendants' alleged combined share here fell precipitously through the alleged "conspiracy period" and hundreds of companies entered the market.[17]

---

[16] The court in *Broiler Chicken* also found a conspiracy plausible because the plaintiffs pled facts regarding barriers to entry, including that entry would cost "in excess of $100 million" and that "no company" had entered "in decades." *Id.* (internal quotation marks omitted).

[17] Plaintiffs' citation to the European Commission's Citric Acid cartel decision is curious as it has nothing to do with the pleading standard here. Regardless, the Citric Acid cartel experienced "increased tension" and began to break apart when cartel members experienced a collective share

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1    *Second*, plaintiffs do not dispute that their own allegations show that higher inductor

2    prices corresponded with increased costs and demand.  Plaintiffs simply assert with no support

3    that defendants' argument "fail[s]."  Opp'n at 16.  In reality, plaintiffs concede that they allege

4    that demand for "passive electronic components" actually rose during the purported conspiracy

5    period at the same time that the import index increased.  *Id*.  Likewise, the cost data alleged in

6    the CAC is also consistent with pricing trends and thus inconsistent with a conspiracy:  as costs

7    rose in 2014, so did the average import index; and as costs fell, it did too.  Mot. at 15-16; CAC at

8    ¶¶ 8, 10, 12.  Plaintiffs' claims concerning rising prices are therefore consistent with basic

9    economic principles and refute any permissible inference of a conspiracy.  In response, plaintiffs

10   suggest that the Court can just ignore these inconvenient allegations and speculate that while

11   increased demand may account for a portion of increased prices, "collu[sion]" is responsible for

12   the rest.  Opp'n at 16.  But the Court cannot ignore these "obvious alternative explanation[s]" of

13   increased demand and costs.  *Eclectic Props*., 751 F.3d at 996-97.

14       *Third*, with respect to the other import indices cited by defendants, this Court can take

15   judicial notice of the patterns contained in those indices because they are published on an official

16   Federal Reserve website.  *See* Mot. at 16 n.5.  Those indices reveal a pattern of ups and downs

17   similar to that in plaintiffs' import index, which is the only source of pricing contained in the

18   CAC, and was copied from the very same source.  Defendants ask the Court to review these

19   other indices because plaintiffs suggested that the Court could infer nefarious conduct from the

20   pattern observed in their index.  However, the fact that the same pattern appears in both sets of

21   indices proves that such an inference would be baseless.

22   **E.    The Court Cannot Infer A Conspiracy From Plaintiffs' Information
             Exchange Allegations**

23

24       Plaintiffs also dramatically overstate their allegations of information exchanges, asserting

25   with no support that they have alleged "frequent in-person exchanges of current and forward-

26   looking data on price, capacity, marketing strategies and other confidential matters . . . for the

27   decline of 70% to 52% over 3 years.  In contrast, plaintiffs claim that the alleged conspiracy

28   persisted over at least 11 years despite plummeting market shares.  That makes no sense.

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

purpose of stabilizing or raising prices." Opp'n at 18. Plaintiffs claim that the CAC alleges facts showing that "[d]efendants . . . 'got in a room' and agreed to uniform conduct." Opp'n at 20 (quoting *B&R Supermarket, Inc. v. Visa, Inc.*, No. C 16-01150 WHA, 2016 WL 5725010, at *5 (N.D. Cal. Sept. 30, 2016)). That just isn't true. The CAC alleges only that defendants were members of a trade association and engaged in a smattering of information exchanges. CAC ¶¶ 172-74.

Under Ninth Circuit law—which plaintiffs once again either ignore or downplay (Opp'n at 18)—the Court cannot infer a conspiracy from these allegations.[18] *Citric Acid* squarely holds that this Court cannot infer a conspiracy based only on information exchanges—even exchanges of price information—at trade association meetings: "Gathering information about pricing and competition in the industry is standard fare for trade associations. If [the court] allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action." 191 F.3d at 1098.

The Ninth Circuit reiterated this principle more recently in *Musical Instruments*, a decision that is hardly "markedly different" from this case, as plaintiffs claim. Opp'n at 20. Going beyond the allegations here, the plaintiffs in *Musical Instruments* alleged that the defendants participated in trade-association meetings, where the manufacturer defendants were encouraged by another defendant to all adopt minimum advertised retail price policies. 798 F.3d at 1197. Just as in *Citric Acid*, the Ninth Circuit held that the court could not infer an agreement to adopt the policies from the fact that the defendants may have discussed them at trade association meetings because "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *Id.* at 1196; *see also Mitchael v. Intracorp. Inc.,* 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information" are insufficient to show conspiracy absent "an agreement to engage in

---

[18] Plaintiffs fail to address Ninth Circuit case law, and instead discuss an irrelevant 2010 statement by the Department of Justice. That statement lists several criteria that *could* be "problematic" or have "anticompetitive implications," but does not state that all information exchanges are so. *See* Fed. Trade Comm'n, OECD Competition Comm., Delegation of the United States, *Roundtable on Information Exchanges Between Competitors Under Competition Law* at 4 (Oct. 27-28, 2010).

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1    unlawful conduct."); *Amey, Inc. v. Gulf Abstract & Title, Inc*., 758 F.2d 1486, 1505 (11th Cir.

2    1985) ("[T]here is nothing unlawful about competitors meeting and exchanging price

3    information or discussing problems common in their industry, or even exchanging information as

4    to the cost of their product.").  Plaintiffs do not even allege that defendants reached an agreement

5    in this case.

6         Plaintiffs cite a host of cases for the proposition that "allegations of the exchange of price

7    data and other information among competitors with either an unlawful purpose or an

8    anticompetitive effect support denial of a motion to dismiss." Opp'n at 17.  None are on point.

9    In *In re Flash Memory Antitrust Litigation* ("*Flash Memory*"),[19] for example, the Court found

10   that the plaintiffs pled sufficient facts to support their allegation that the defendants exchanged

11   highly sensitive competitive information for the purpose of facilitating and monitoring their price

12   fixing conspiracy.  There, unlike here, the complaint cited email communications in which

13   certain defendants reported to each other that they would "raise . . . prices across the board,"

14   encourage other competitors to raise (or at least not lower) prices and not "retreat from the last

15   quoted price." *Id*. at 1143-44.  Similarly in *In re Resistors Antitrust Litigation* ("*Resistors*"),[20]

16   the complaint included "detailed allegations" of numerous meetings among the defendants over

17   more than a decade, in which the defendants methodically and regularly exchanged

18   "competitively sensitive" financial, sales, and pricing strategy details, including  specific

19   customer prices, in an effort to coordinate market behavior.  Finally, in *SRAM*,[21] in the context of

20   a market structure that allowed an inference that information exchanges may lead to higher

21   prices, plaintiffs quoted communications in which the defendants requested "product roadmaps,"

22   exchanged revenue data, and internally considered other defendants' information. *Id*. at 901-02.

23        By contrast, plaintiffs here allege that (i) some of the defendants met in 2003 to discuss

24   "projections for prices for 2004"; (ii) a different group of defendants met in 2004 to discuss

25   "projections about their orders" and "projected business conditions"; and (iii) then certain

---

26   [19] 643 F. Supp. 2d 1133 (N.D. Cal. 2009).

27   [20] 15-CV-03820-JD, 2017 WL 3895706, at *2-4 (N.D. Cal. Sept. 5, 2017).

28   [21] 580 F. Supp. 2d 896 (N.D. Cal. 2008).

1   defendants met three years later to discuss "company questionnaires" and a joint study on raw

2   material costs.  CAC ¶¶ 172-74; *see also* Opp'n at 18.  Even if we were to assume that these

3   exchanges related to off-the-shelf Inductors, **which the CAC does not allege,** these allegations

4   would be insufficient.  *See, e.g.*, *Resistors,* 2017 WL 3895706 at *2-4 (holding that the court

5   could not infer a conspiracy from similar information exchanges); *see also* Mot. at 19.

6        Plaintiffs claim that the CAC refers to "dozens of meetings" (Opp'n at 17), but the CAC

7   does not allege any facts that suggest that defendants exchanged information at any other

8   meeting.   Plaintiffs' argument that they have sufficiently alleged an "unlawful purpose" based

9   on their conclusory allegation that defendants exchanged price information "for the express

10  purpose of fixing the prices of Inductors" (*id.* (citing CAC ¶ 170)), is also meritless.  Plaintiffs

11  do not support that claim with a single fact that would suggest that defendants discussed fixing

12  prices at any meeting. *See id*.  If plaintiffs had more facts to plead, they surely would have pled

13  them.   And without something more, plaintiffs' description of sporadic trade association

14  meetings is "not . . . enough to cross the *Twombly* bar."  *Resistors*, 2017 WL 3895706, at * 2.

15   **F.      Plaintiffs Admit That The Existence Of A DOJ Investigation Does Not Save**

16   **        The CAC**

17        Plaintiffs  acknowledge  that  "the  existence  of  a[]  [government]  investigation  is  not

18  dispositive."  Opp'n at 21.  They assert that judges in this district have given "little weight to

19  pending government investigations" in deciding motions to dismiss in other cases  *Id*. at 21-22

20  (citing *e.g.*, *In re Capacitors Antitrust Litig.* ("*Capacitors*"), 106 F. Supp. 3d 1051 (N.D. Cal.

21  2015), and *In re Graphics Processing Units Antitrust Litig.* ("*In re GPU*"), 527 F. Supp. 2d 1011

22  (N.D. Cal. 2007)).  In reality, those courts gave *no* weight to the existence of DOJ investigations.

23  *See Capacitors*, 106 F. Supp. at 1064; *In re GPU*, 527 F. Supp. at 1024.  *Accord Flash Memory*,

24  643 F. Supp. 2d 1149, n.11 ("[T]he mere fact that an investigation is under way is not by itself an

25  appropriate consideration for purposes of determining the adequacy of the pleadings."); *In re*

26  *Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005) ("rejecting out-of-hand"

27  any significance to the fact that the New York Attorney General was conducting an investigation

28  into the same alleged conduct); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1    JLS (MDD), 2017 WL 35571, at *8 (S.D. Cal. Jan. 3, 2017) (explaining that "it would be

2    improper to draw a conclusion that a pending government investigation on its own supplies

3    sufficient factual material to survive a 12(b)(6) motion to dismiss" but noting that the DOJ

4    announced that a merger review investigation had revealed that "the market [was] not

5    functioning competitively").

6         As in those cases, the fact that a DOJ investigation may be pending here does not make

7    plaintiffs' conspiracy claim plausible.  That is particularly true, given that four of the seven

8    defendant groups—Sumida, Sagami, Panasonic and TOKIN—are not even alleged to be the

9    subject of any investigation at all.  *See* CAC ¶ 184 (alleging only that three defendants may have

10   received DOJ subpoenas).[22]  Plaintiffs do not attempt to explain how the alleged issuance of

11   subpoenas to three defendants supports any claim against the other four defendant groups.  If

12   anything, the fact that four of the seven defendant groups are not the subject of any government

13   investigation actually undermines plaintiffs' alleged industry-wide conspiracy claim.

14        **G.    Plaintiffs' Alleged "Plus Factors" Separately Do Not Meet Their Burden**

15        Plaintiffs are equally wrong that they have adequately pled "plus factors" in support of a

16   conspiracy.  As a threshold matter, "plus factors" are only relevant if a plaintiff sufficiently

17   alleges parallel conduct.  *See Musical Instruments*, 798 F.3d at 1194.  As shown above, plaintiffs

18   have utterly failed to allege parallel conduct. *See supra* § I.C.  Alleged "plus factors" are

19   therefore meaningless.  And, even if plaintiffs had pled parallel conduct, their so-called "plus

20   factors" would still be insufficient.

21        As discussed above, the CAC's factual allegations contradict plaintiffs' conclusory

22   assertion that they allege barriers to entry and market concentration.  *See supra* § I.D.  The CAC

23   describes a market featuring rapid entry by new manufacturers and reflecting low barriers to

24   entry and the defendants' decreasing market share over time.  *Id*.  Likewise, allegations of

25   opportunities to conspire are not enough to push a claim from conceivable to plausible.  *See, e.g*.,

26   *Late Fee*, 528 F. Supp. 2d at 963-64 (finding that defendants' membership in common networks,

---

27   [22] The DOJ, in a letter sent to counsel for Panasonic on April 18, 2018, has confirmed that
28   Panasonic is not a subject of any inductors investigation. *See* Dkt. 147-6 at n.7, ECF No. 223.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

relationships with shared third party consultants, and participation in industry-wide trade associations—even coupled with allegations regarding defendants' parallel pricing patterns and additional plus factors concerning market concentration, high barriers to entry, and motives to conspire—were insufficient to survive a motion to dismiss); *In re GPU*, 527 F. Supp. 2d at 1014-17, 1023.[23]

There also is no support for plaintiffs' argument that alleged conduct by some defendants in the capacitors and resistors markets "show[s] the development and background of a current conspiracy" among all defendants for off-the-shelf Inductors. *See* Opp'n at 23 (quoting *Flash Memory*, 643 F. Supp. 2d at 1149). The CAC alleges only that alleged conduct relating to capacitors and resistors also occurred at JEITA meetings. *See, e.g.*, CAC ¶¶ 14, 17. But plaintiffs ignore that the Ninth Circuit found similar allegations insufficient in *Citric Acid*. *See* Mot. at 23. And the Court cannot infer a conspiracy involving all defendants (or even any defendant) based on the allegation that a single employee from one of seven defendant groups attended JEITA meetings related to inductors and was indicted for conduct relating to capacitors. *Compare Flash Memory*, 643 F. Supp. 2d at 1149 & n.10 (inferring a connection between DRAM and flash memory because plaintiffs alleged multiple employees, who pled guilty in DRAM, worked for two defendants that collectively paid half a billion dollars in DRAM criminal fines and controlled the majority of the flash memory market).

## II.   PLAINTIFFS FAIL TO REBUT DEFENDANTS' ARGUMENTS THAT THE "PRODUCTS CONTAINING INDUCTORS" SUB-CLASS IS BARRED AS A MATTER OF LAW

Plaintiffs confirm that they are not alleging a conspiracy targeting some or all unidentified "products containing inductors" and that the alleged sub-class that purchased those products seeks only to recover for alleged overcharges on inductors. Plaintiffs also seem to concede that this class asserts claims against only Panasonic and cannot proceed against the other

---

[23] The *SRAM* decision that plaintiffs cite is also inapposite. *See* Opp'n at 22. The *SRAM* court noted that allegations regarding participation in trade organization could not, on their own, support the plaintiffs' claims. 580 F. Supp. 2d at 903. Instead, the allegations of opportunities to conspire were additional to detailed allegations that defendants "agreed to limit the supply of SRAM" and ensured compliance through a series of communications. *Id.* at 899-903.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1  defendants.  But the plaintiffs that purchased "products containing inductors" fail to assert any

2  legal basis for their claims against Panasonic, or any other defendant.  Those claims fail because

3  they are indirect purchaser claims and are barred by both *Illinois Brick* and the FTAIA.

4       **A.**    **Plaintiffs Do Not Plead Any Facts That Would Bring The "Products Containing Inductors" Class Under The Control Exception To *Illinois Brick***

5

6       Plaintiffs concede that the "products containing inductors" purchasers are indirect

7  purchasers.  Plaintiffs' half-hearted invocation of *Arandell* in the indirect purchaser context fails

8  (as they anticipated it would).  Opp'n at 25.  *Arandell* has nothing to do with indirect purchaser

9  standing because the plaintiffs in that case purchased natural gas, the allegedly price-fixed

10  product, directly from a defendant.  900 F.3d at 625-26.  Here, the purchasers of "products

11  containing inductors" do not allege that they purchased price-fixed off-the-shelf Inductors

12  directly from any defendant.

13       Nor do plaintiffs allege facts to bring their claim under the "ownership" or "control"

14  exception to *Illinois Brick*, as described in *Royal Printing Co. v. Kimberly-Clark Corp*., 621 F.2d

15  323 (9th Cir. 1980).  *See* Opp'n at 25-27.  Under that exception, indirect purchasers may be able

16  to sue when "a conspiring seller owns or controls the direct purchaser" such as "if the direct

17  purchaser is a division or subsidiary of the price-fixing seller."  *In re ATM Fee Antitrust Litig*.,

18  686 F.3d 741, 749 (9th Cir. 2012).  Here, that exception could apply if a plaintiff had purchased

19  an off-the-shelf Inductor from a subsidiary controlled by the allegedly conspiring defendant.  But

20  that is not alleged here.

21       Rather, the indirect purchaser plaintiffs allege that they purchased inductors by

22  purchasing "products containing inductors," which only "Panasonic" manufactures and sells.

23  Thus, to make the ownership control exception even potentially relevant, at a minimum,

24  plaintiffs Arch and Cambridge would have had to allege:  (1) a Panasonic entity manufactured

25  off-the-shelf Inductors and conspired with other inductor manufacturers to fix the price of off-

26  the-shelf Inductors; (2) that same Panasonic entity sold the price-fixed off-the-shelf Inductors to

27  a second Panasonic entity that it fully controlled; (3) the fully controlled Panasonic entity

28  incorporated those price-fixed off-the-shelf Inductors into "products containing inductors"; and

1  (4) the fully controlled entity sold those "products containing ['off-the-shelf'] inductors" to

2  plaintiffs Arch and Cambridge at prices higher than they otherwise would have been.  The CAC

3  does not plead any of those facts.

4      The CAC identifies four Panasonic defendants[24] but never identifies which entity

5  allegedly engaged in an off-the-shelf Inductors price-fixing conspiracy.  The CAC is similarly

6  vague as to which Panasonic entity manufactured "products containing inductors" or from which

7  other Panasonic entity—or other unidentified entity—it purchased the inductors incorporated

8  into those products.  Plaintiffs do not even allege that Panasonic uses off-the-shelf Inductors in

9  its finished products either generally or specifically in the finished products plaintiffs Arch and

10  Cambridge allegedly purchased.   Plaintiffs Arch and Cambridge also do not allege what

11  "products" they purchased or from which Panasonic entity they were purchased.  CAC ¶¶ 23-24.

12  Plaintiffs are aware of these deficiencies:  counsel for plaintiff Inductors, Inc. argued earlier in

13  this case that plaintiffs Arch and Cambridge had not properly alleged standing because they do

14  not "allege anywhere in their complaint that the inductors that were contained in the products

15  that they purchased from a defendant were actually manufactured by that defendant."  Hr'g Tr. at

16  52:11-17, ECF No. 132.[25]

17      As the cases plaintiffs cite confirm, it is not sufficient for plaintiffs to assert that "the

18  Japanese parents closely control the activities and operations of their respective subsidiaries"

19  (Opp'n at 3) without pleading any facts about what those activities and operations were and by

20  whom they were carried out.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827

21  SI, 2013 WL 1164897, at *3 (N.D. Cal. Mar. 20, 2013) (Complaint did not "adequately allege

22  that its claims fall within the control exception to *Illinois Brick*" because complaint contained

23

---

24  [24] Counsel for Panasonic informed plaintiffs by letter dated December 17, 2018 that PEDCA and
25  PIDCA do not exist as legal entities: PEDCA changed its name to Panasonic Industrial on April
   1, 2012, and PIDCA was merged into PCNA on March 31, 2016.

26  [25] Moreover, to state a plausible claim by this sub-class, the CAC would further have to allege
   some plausible reason why, even assuming Panasonic had conspired with other inductors
27  manufacturers to sell off-the-shelf Inductors to third parties at inflated prices, Panasonic would
   charge its own controlled subsidiaries elevated prices and then raise the prices of Panasonic's
28  finished products, which would serve only to make those finished products less competitive.

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

only "conclusory" alleged control and failed "to allege sufficient facts to support or explain the type of control exercised."); *In re Lithium Ion Batteries Antitrust Litig.*, No.: 13–MD–2420 YGR, 2014 WL 309192, *8 (N.D. Cal. 2014) (Plaintiffs neither "allege[d] facts that lead to a plausible inference that they have suffered an antitrust injury traceable to a purchase from an entity owned or controlled by an alleged conspirator" nor "articulate[d] a cognizable theory of ownership or control, coupled with plausible, non-conclusory evidentiary facts supporting that theory."). *Compare In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *25 (N.D. Cal. Oct. 2, 2014) (Plaintiffs cured previously identified deficiencies by alleging "the particular batteries and battery products purchased by each DPP, specifying type, brand, and frequently, model number."). Arch and Cambridge's indirect purchaser claims fail for want of any of these minimum, essential allegations.

## B.     The FTAIA Also Bars Plaintiffs Arch And Cambridge's Claims

Plaintiffs cannot avoid defendants' FTAIA argument against the "products containing inductors" sub-class by arguing that FTAIA arguments are premature. Opp'n at 30. Federal courts repeatedly consider FTAIA arguments at the pleading stage, and judges in this district have granted motions to dismiss on FTAIA grounds.[26] This Court should do so as well.

Here, plaintiffs do not dispute that foreign sales of component parts ***that are not substantial cost components*** of a finished product have never been found to constitute import trade, nor have they been deemed to satisfy the FTAIA's "domestic effects" exception by having a direct, substantial, and reasonably foreseeable effect on domestic commerce. *See* Mot. at 25.

---

[26] *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-5840 SI, 2010 WL 2610641, at *5, 10 (N.D. Cal. June 28, 2010) (granting motion to dismiss because plaintiffs failed to allege proximate cause under the FTAIA); *In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548, 560 (E.D. Pa. 2010) (same). None of the cases Plaintiffs cite concludes that it is inappropriate to grant a motion to dismiss on FTAIA grounds; they simply hold that those specific pleadings were sufficient to allege import trade or domestic effects. *See Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 795 F. Supp. 2d 847, 850-51 (E.D. Wis. 2011); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 963 (N.D. Cal. 2011); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2017 WL 2021361, at *4-5 (N.D. Cal. May 12, 2017).

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1    Plaintiffs misinterpret *United States v. Hsiung*[27] by confusing the "domestic effects" issue

2    with the "import trade" issue.  Opp'n at 29.  The court in *Hsiung* did not address whether

3    commerce associated with TFT-LCD panels that were incorporated into finished products

4    constituted import trade; instead, it focused solely on whether the sale of those products satisfied

5    the "domestic effects" exception, which only applies to non-import trade.  778 F.3d at 754-60.

6    The court distinguished between component parts and manufactured goods by analyzing only the

7    sale of the relevant components (*individual TFT-LCD panels*) under the "import trade"

8    framework, taking for granted that the manufactured goods at issue—notebook computers,

9    desktop computer monitors, and televisions—did not constitute cognizable import trade.  *See id.*

10   Although the *Hsiung* court concluded that the sale of manufactured products containing TFT-

11   LCD panels satisfied the "domestic effects" exception, *id.* at 758, the decision was based on the

12   "constellation of events that surrounded the conspiracy," which included, first and foremost, the

13   fact that "TFT-LCDs are a ***substantial cost component*** of the finished products," comprising

14   between 30% and 80% of the total cost," as well as the fact that evidence demonstrated that

15   conspiratorial meetings had "led to direct [pricing] negotiations with United States companies."

16   *Id.* at 759 (emphasis added).

17   Plaintiffs make no similar allegations here.  In fact, plaintiffs admit that inductors

18   comprise a "tiny, tiny part of the cost" of finished products, which the CAC alleges to include

19   "televisions, stereo equipment, Blue-Ray/DVD players, and cameras/camcorders."  *See* Hr'g Tr.

20   at 35:19-25, ECF No. 132; CAC ¶ 35.  And plaintiffs do not allege that conspiratorial meetings

21   led to direct negotiations with U.S. companies regarding the price of off-the-shelf Inductors;

22   indeed, the CAC does not describe a single interaction between any defendant and any

23   plaintiff—let alone any pricing interaction related to any off-the-shelf Inductor.  Plaintiffs'

24   assertion that the alleged conspiracy "[t]argeted the United States" (CAC § IV.B) is therefore

25   entirely conclusory.[28]

---

26   [27] 778 F.3d 738 (9th Cir. 2015).

27   [28] A class could not proceed on the basis of having to prove individual interactions between
     defendants and class members to establish proximate causation:  that is the opposite of a class
28   action.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1   Plaintiffs' reliance on a recent and extremely narrow order in *Capacitors* is also

2   misplaced.  There, the court merely concluded that import trade might not be limited to situations

3   in which a defendant has directly brought a good into the U.S. and thus it could not "definitively

4   exclude [the transactions at issue] at this juncture." *In re Capacitors Antitrust Litig.*, No. 14-CV-

5   03264-JD, 2018 WL 4558265, at *5 (N.D. Cal. Sept. 20, 2018).  The court did not determine

6   whether the transactions at issue constitute import trade, or whether ***inter-defendant transactions***

7   ***abroad*** can qualify as import trade.  *See id.*  And the court's conclusion that a jury issue existed

8   as to "import trade" that included sales of capacitors by a foreign defendant to a foreign affiliate

9   of a plaintiff—which were then incorporated by the affiliate into finished goods overseas and

10  sold into the U.S.—was premised on evidence that defendants had targeted one particular U.S.

11  company that had sued on its own behalf, not as a class, and facts regarding causation that cannot

12  be pled here on a class-wide basis.  *Id*.

13  **III.   PLAINTIFFS' RELIANCE ON *ARANDELL* FAILS BECAUSE THEY DO NOT**
14  **PLEAD ANY FACTS TYING U.S. SUBSIDIARIES TO ANY ALLEGED**
    **CONSPIRACY**

15  Plaintiffs argue that the Ninth Circuit's recent decision in *Arandell* compels this Court to

16  deny defendants' motion to dismiss claims against the U.S. subsidiary defendants.  *See* Opp'n at

17  24-25.  That is wrong.  The *Arandell* ruling is inapplicable here because it relies on a number of

18  important caveats and specific facts that are missing from the CAC.[29]  Most critically, plaintiffs

19  have failed to plead sufficient facts regarding the "coordinated activity" required for a finding of

20  anticompetitive intent or anticompetitive acts by a subsidiary.  *Arandell*, 900 F.3d at 632.  In

21  *Arandell*, the Ninth Circuit emphasized that *Copperweld Corp. v. Independence Tube Corp.*, 467

22  U.S. 732 (1984) "does *not* supply a theory of unbounded vicarious liability for the *acts* of legally

23  distinct entities" and "does not support holding a subsidiary liable for the parent's independent

24
    _____

25  [29] Plaintiffs' other cases (*see* Opp'n at 23-24) are also distinguishable because those plaintiffs
    pled with more specificity that the subsidiaries engaged in anticompetitive conduct, including
26  allegations that senior executives instructed subordinate employees in the United States to carry
    out illegal acts, that parent corporations directed pricing for U.S., and that conspiracy included
27  discussions of subsidiary pricing.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp.
    2d 1179, 1184-85 (N.D. Cal. 2009); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp.
28  2d 1011, 1018-19 (N.D. Cal. 2010).

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

conduct." *Id*. at 633 (first emphasis added). "As with any antitrust defendant, Plaintiffs must put forth evidence that [the subsidiary] engaged in anticompetitive conduct." *Id*. Thus, the court explicitly relied on specific evidence of "coordinated activity," including: "that the Reliant 'economic unit' had an anticompetitive purpose during the Class Period"; that the U.S. subsidiaries "resold the overpriced gas to Wisconsin businesses, collected millions of dollars in overcharges at the expense of the class members, and funneled the revenues from these sales to the Reliant parent"; and that "[t]he officers and directors of the Reliant parent orchestrated this scheme, directing [the subsidiary] to manipulate retail prices and instructing [another subsidiary] to send its illegal profits to the Reliant parent." *Id*. at 628, 632.

   In contrast, plaintiffs do not allege any facts specific to any defendant's U.S. subsidiaries—failing even to specify whether plaintiffs purchased inductors from any U.S. subsidiaries. *See, e.g.*, CAC ¶ 22 ("Each Plaintiff purchased one or more Inductor or products containing Inductors from a Defendant conspirator or an entity owned or controlled by a Defendant conspirator."). Based on the allegations in the CAC here, it is impossible to conclude that the role played by the subsidiaries (if any) amounted to "critical contributions to the conspiracy." *Arandell*, 900 F.3d at 635. The CAC also does not contain any facts suggesting that any defendant's U.S. subsidiary's role "was essential to securing the benefit of the other [] defendants' price-fixing" or that its acts "were the immediate cause of Plaintiffs' injuries." *Id*. at 634-35. Plaintiffs' conclusory assertions that "the individual participants in the conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish among the entities within a corporate family" and that "[t]he individual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families" (CAC ¶ 65) are completely lacking in factual support. Plaintiffs ignore that similar allegations in the cases they cite were considered in conjunction only with additional facts not pled in the CAC and were deemed relevant only to the question of anticompetitive intent.[30]

---

[30] For example, in *Capacitors*, the Court credited specific factual examples "from emails and other documents" showing that the defendants used generic corporate names at meetings, did not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1    Plaintiffs also do not plead sufficient facts to support a finding that the U.S. subsidiaries

2 knowingly acted to further the alleged price-fixing scheme.  Unlike in *Arandell*, the CAC does

3 not allege that there was any overlap among the directors and personnel of the subsidiaries and

4 their alleged parent corporation or that "manipulative practices were a matter of common

5 knowledge within [the corporate family]."  900 F.3d at 633.

6    Finally, plaintiffs assert that the subsidiaries played a role in the conspiracy by

7 distributing products containing Inductors because defendants wanted to "ensure that the prices

8 paid for such products would not undercut the pricing agreements reached at these various

9 meetings."  CAC ¶ 65.  This is illogical in light of the relatively tiny cost of inductors

10 incorporated into finished products such as "televisions, stereo equipment, Blue-Ray/DVD

11 players, and cameras/camcorders."  *Id.* ¶ 35.

12                                      **CONCLUSION**

13    For the reasons discussed above, and in defendants' Motion to Dismiss, the CAC should

14 be dismissed in its entirety with prejudice.

15 January 28, 2019                         Respectfully Submitted,

16                                          */s/ Marguerite M. Sullivan*
                                            Marguerite M. Sullivan (*pro hac vice*)
17                                          Allyson M. Maltas (*pro hac vice*)
                                            LATHAM & WATKINS LLP
18                                          555 Eleventh Street, NW, Suite 1000
                                            Washington, DC  20004
19                                          Telephone: 202.637.2200
                                            Facsimile: 202.637.2201
20                                          Email: marguerite.sullivan@lw.com
                                            Email: allyson.maltas@lw.com
21
                                            Alfred C. Pfeiffer, Jr. (SBN 120965)
22                                          505 Montgomery Street, Suite 2000
                                            San Francisco, CA  94111
23                                          Telephone: 415.391.0600
                                            Facsimile: 415.395.8095
24                                          Email: al.pfeiffer@lw.com

25 _____

26 distinguish between entities within a corporate family, and that foreign parent defendants
reached agreements on behalf of, and gave meeting reports to, their U.S. subsidiaries.  *In re*
27 *Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 928-29 (N.D. Cal. 2015).  Here, plaintiffs make
only conclusory assertions—unsupported by any "factual examples"—regarding defendants'
28 U.S. subsidiaries.  *See* CAC ¶¶ 169, 172-75.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendants*
*SUMIDA CORPORATION, SUMIDA*
*ELECTRIC CO., LTD., AND SUMIDA*
*AMERICA COMPONENTS INC.*

KIRKLAND & ELLIS LLP

 */s/ Eliot A. Adelson*
Eliot A. Adelson (SBN 205284)
Margaret A. Webb (SBN 319269)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: margaret.webb@kirkland.com

Tammy A. Tsoumas (SBN 250487)
Heather F. Canner (SBN 292837)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: ttsoumas@kirkland.com
Email: heather.canner@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com

*Attorneys for Defendants*
*MURATA MANUFACTURING CO., LTD.;*
*MURATA ELECTRONICS NORTH*
*AMERICA, INC. and MURATA POWER*
*SOLUTIONS, INC.*

GIBSON, DUNN & CRUTCHER LLP

 */s/ Daniel G. Swanson*
Daniel G. Swanson (SBN 116656)
Frances A. Smithson (SBN 313700)
333 South Grand Avenue
Los Angeles, CA 90071-3197

21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: dswanson@gibsondunn.com
Email: fsmithson@gibsondunn.com

Scott D. Hammond (*pro hac vice*)
Cynthia E. Richman (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 415.393.8200
Facsimile: 415.393.8306
Email: shammond@gibsondunn.com
Email: crichman@gibsondunn.com

*Attorneys for Defendants*
*PANASONIC CORPORATION;*
*PANASONIC CORPORATION OF NORTH*
*AMERICA*

ARNOLD & PORTER KAYE SCHOLER
LLP

 */s/ Michael A. Rubin*
James L. Cooper (*pro hac vice*)
Michael A. Rubin (*pro hac vice*)
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: 202.942.5000
Facsimile: 202.942.4999
Email: james.cooper@arnoldporter.com
Email: michael.rubin@arnoldporter.com

Daniel B. Asimow (SBN 165661)
Matthew H. Fine (SBN 300808)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400
Email: daniel.asimow@arnoldporter.com
Email: matthew.fine@arnoldporter.com

*Attorneys for Defendants*
*TAIYO YUDEN CO. LTD. & TAIYO*
*YUDEN (USA) INC.*

MORGAN, LEWIS & BOCKIUS LLP

 */s/ Michelle Park Chiu*
Michelle Park Chiu (SBN 248421)
One Market, Spear Street Tower
San Francisco, California 94105-1596
Telephone: 415.442.1000
Facsimile: 415.442.1001

22

1       Email: michelle.chiu@morganlewis.com

2       Scott A. Stempel (*pro hac vice*)
        J. Clayton Everett, Jr. (*pro hac vice*)
3       Greta L. Burkholder (*pro hac vice*)
        Cindy Seunghee Hong (*pro hac vice*)
4       1111 Pennsylvania Ave., NW
        Washington, DC  20004
5       Telephone: 202.739.3000
        Facsimile: 202.739.3001
6       Email: scott.stempel@morganlewis.com
        Email: clay.everett@morganlewis.com
7       Email: greta.burkholder@morganlewis.com
        Email: cindy.hong@morganlewis.com

8
        *Attorneys for Defendants*
9       *TDK CORPORATION; TDK-EPC*
        *CORPORATION; TDK (USA)*
10      *CORPORATION, AND TDK*
        *CORPORATION OF AMERICA*
11

12      PILLSBURY WINTHROP SHAW
        PITTMAN LLP
13

14      */s/ Roxane A. Polidora*
        Roxane A. Polidora
15
        Roxane A. Polidora (SBN 135972)
16      Jacob R. Sorensen (SBN 209134)
        Four Embarcadero Center
17      22nd Floor
        San Francisco, CA 94111-5998
18      Tel: (415) 983-1000
        Fax: (415) 983-1200
19      Email: roxane.polidora@pillsburylaw.com
        Email: jake.sorensen@pillsburylaw.com
20

21      *Attorneys for Defendants*
        *TOKIN CORPORATION AND TOKIN*
22      *AMERICA INC.*

23

24      KESSENICK GAMMA & FREE, LLP

25      */s/ J. Maxwell Cooper*
        J. Maxwell Cooper (SBN 284054)
26      Michael A. Gawley (SBN 294190)
        Scott C. Kessenick (SBN 295999)
27      44 Montgomery Street, Suite 3880
        San Francisco, CA 94104
28

                         23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

Telephone: 415.362.9400
Facsimile: 415.362.9401
Email: mcooper@kgf-lawfirm.com
Email: mgawley@kgf-lawfirm.com
Email: skessenick@kgf-lawfirm.com

*Attorneys for Defendants*
*SAGAMI ELEC CO., LTD. AND SAGAMI*
*AMERICA LTD.*

24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1

**CERTIFICATE OF SERVICE**

2

I, Marguerite M. Sullivan, declare:

3

I am employed in Washington, D.C.  I am over the age of eighteen years and not a party

4

to this action.   My business address is Latham & Watkins LLP, 555 11th Street, N.W. Suite

5

1000, Washington, D.C. 20004.

6

On January 28, 2018, I served the following document(s) described as:

7

8

• **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO DISMISS COMPLAINT**

9

via the Court's CM/ECF filing system.

10

I declare that I am a member of the bar of the state of Virginia and Washington, D.C., and

11

that the foregoing is true and correct.  Executed on January 28, 2019, in Washington, D.C.

12

13

By:      */s/ Marguerite M. Sullivan*
Marguerite M. Sullivan

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFS.' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 5:18-CV-00198-EJD

1

**ATTESTATION OF FILER**

2     I, Marguerite M. Sullivan, am the ECF user whose ID and password are being used to file

3 this Reply Memorandum Of Points And Authorities In Support Of Joint Motion To Dismiss

4 Complaint.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the

5 filing of this document has been obtained from each of the other signatories.

6

7 Dated:  January 28, 2019                          By:      _/s/ Marguerite M. Sullivan_

8                                                                     Marguerite M. Sullivan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.