Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com

*Interim Co-Lead Counsel for the Direct Purchaser Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INDUCTORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL DIRECT PURCHASER ACTIONS<br>*Flextronics International USA, Inc. v. Murata Manufacturing Co., Ltd. et al.*, 5:19-cv-00078-EJD | Case No. 5:18-cv-00198-EJD-NC<br>Case No. 5:19-cv-00078-EJD<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: May 2, 2019<br>Time: 10:00 A.M.<br><br>Hon. Edward J. Davila |

The Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs"), Flextronics International USA, Inc. ("Flextronics"), and Defendants submit this Joint Case Management Conference Statement to apprise the Court on progress made in discovery since the last case management conference on February 7, 2019.

## I.   DPPS' POSITION ON DISCOVERY

Although the parties mutually agreed that the case management conference that was set for March 21, 2019 was not necessary given that the hearing date on Defendants' motion to dismiss was reset to May 2, 2019, Plaintiffs continue to believe that setting frequent case management conferences is important to the progress of this litigation. Plaintiffs received numerous productions in advance of the date the Court had set for the last Case Management Conference, and frequent case management conferences will become even more valuable should the litigation advance beyond the pleadings.

**Flex's Position**: Flex has not received any documents from Defendants and thus takes no position regarding the timing of document productions.  Defendants should have produced documents to Flex as well as to the Direct Purchaser Plaintiffs.   Defendants should be required to produce to Flex all documents produced thus far in the litigation by May 5, 2019, and should include Flex on all future productions.  Flex does concur that regular case management conferences are appropriate.

### A.   DPPs' Position on Defendants' Responses to Their First Request for Production

#### 1.   DPPs' Position on Progress of Non-Transactional Data Documentary Discovery In Response to Their First Request for Production.

Defendants have been required to produce documents in response to Plaintiffs' First Request for production of Documents ("First RFP") since September 17, 2018. *See* ECF No. 217. Other than with respect to transactional data, Plaintiffs have narrowed, at

this stage of the litigation, their First RFP to documents available from readily accessible sources, such as spreadsheets and summary information on revenues and products.

On March 1, 2019, Plaintiffs sent each Defendant a letter following up on their productions made in response to Plaintiffs' First RFP. Plaintiffs received additional productions after meeting and conferring individually with Defendants concerning their productions. As part of these efforts, Plaintiffs have exchanged follow up correspondence with Defendants, and have met and conferred telephonically concerning certain issues raised by the parties in their correspondence. The documents produced by Defendants to date are as follows:

| Defendant | Pages of Documents | Number of Documents |
|-----------|--------------------|--------------------|
| Sagami Defendants | 1,548 | 377 |
| TDK Defendants | 1,494 | 178 |
| Panasonic Defendants | 1,928 | 144 |
| Taiyo Yuden Defendants | 6,479 | 86 |
| Murata Defendants | 3,718 | 210 |
| Sumida Defendants | 3,141 | 68 |
| Tokin Defendants | 12,597 | 447 |

Substantial work remains to be done on non-transactional discovery responsive to Plaintiffs' First RFPs. The Defendants have taken a restrictive view of their discovery obligations while their motion to dismiss is pending, and have not produced certain documents that have been identified because in their view these documents are not "readily accessible."

The discovery served to date confirms what Plaintiffs allege—Inductors are standardized products that are to a large degree interchangeable among product type. Defendants compete with one another across different types of Inductors. Plaintiffs have

focused their follow up efforts on obtaining the following types of information, which will assist in assessing the size of the market and the product characteristics of the Inductors that are at issue here:

1.      An understanding of Defendants' transactional data and related information, including whether any data is missing;

2.      Summaries of revenues and amounts of U.S. sales of Inductors;

3.      Production and capacity information;

4.      Cost information, including raw material costs.

Defendants have generally taken the position that the foregoing information is not maintained in summary form, or in readily accessible sources. This is surprising. For example, Defendants regularly exchanged information concerning volume of U.S. sales at trade association meetings, including through the World Inductors Trade Statistics ("WITS") program. Similarly, information on costs and capacity are necessary in order for Defendants to produce accurate financial reports. The information Plaintiffs seek must be accessed and analyzed at several points throughout the year by Defendants' finance personnel, and available at short notice. That no Defendant has produced anything but yearly and quarterly financial reports confirms their narrow view of their discovery obligations.

The parties are still discussing Defendants' access to information and production plans. Although at this stage of the litigation Plaintiffs must accept Defendants' representations, they are concerned that Defendants' parsimonious approach to discovery thus far may make it difficult to meet the deadlines set by the Court and prevent the efficient resolution of this case.

1

2

**2.      DPPs' Position on Progress of Transactional Data Documentary**

**Discovery In Response To Plaintiffs' First RFP**

3      **Overview**: All Defendants made productions of transactional data on or before the

4   April 1, 2019 substantial completion deadline.[1] . As for Defendants' contentions

5   concerning U.S. sales, Plaintiffs believe that the transactional data figures reported by

6   Defendants at this time are likely overly conservative, because: (1) they do not include data

7   from all of the entities controlled by Defendants that sell Inductors; (2) they do not include

8   sales from backup media; and (3) they do not include recoverable "foreign sales," as

9   discussed below.[2] Plaintiffs will raise additional issues concerning completeness for certain

10  Inductors in letters to Defendants individually.

11      Due to Defendants' initial delays in responding to Plaintiffs' requests for

12  production, and the iterative nature of the process of collecting transactional data from

13  manufacturers that use different systems to record and store data, Plaintiffs expect that

14  follow up concerning transactional data productions may extend for several months beyond

15  the April 1, 2019 substantial production deadline.

16      **Production of Transactional Data from Back Up Media**: Defendants have

17  undertaken to identify backup media that contain transactional data for U.S. sales. Some

18  Defendants have indicated that transactional data production from backup media is

19  forthcoming. Plaintiffs will continue to meet and confer with Defendants concerning

20  production of U.S. sales data from backup media.

21      **Production of Foreign Transactional Data**: The parties have agreed to focus on

22  U.S. sales in the early stages of this litigation, and Plaintiffs have reserved the right to seek

23

24  _____

[1] Defendants maintain that they are not conceding the Inductors sales they produced are U.S.

25  commerce, or are the "off the shelf" products Plaintiffs seek. Plaintiffs claims' concern standardized Inductors that are often available for sale on Defendants' websites, and listed in their product catalogs. *See* ECF No. 251 at 16.  No Defendant claims they produced transactional data

26  concerning products not found in the product catalogs they produced.
[2] Plaintiffs and Defendants have resolved an issue concerning production of data from TOKO, Inc.

27  ("TOKO"). Plaintiffs anticipate receiving additional data concerning TOKO's sales.

28

4

1    transactional data concerning Defendants' foreign sales. The foreign sales that interest

2    Plaintiffs are sales of Inductors that were made abroad and incorporated into products

3    imported into the U.S. It is often easy to tell that these sales are U.S. commerce because

4    the sales were made to foreign contract manufacturers who purchased inductors to

5    incorporate into products for companies to sell into the U.S., or to U.S. companies that

6    purchased inductors abroad for products that were imported into the U.S.

7        Defendants have objected to producing such data, arguing that much of the foreign

8    sales are not recoverable under any exception to the Foreign Trade Antitrust Improvements

9    Act of 1982 ("FTAIA"). Defendants are wrong. "The locus of a transaction is not

10   dispositive under the FTAIA." *In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2016

11   WL 5724960, at *5 (N.D. Cal., Sept. 30, 2016).  In the *Resistors* litigation, Judge Donato

12   rejected the same arguments made by Defendants here and ordered production of global

13   transactional data, as he had done in *Capacitors*. *See In re Resistors Antitrust Litig.*, Case

14   No. 15-3820-JD, ECF No. 316 (N.D. Cal. Aug. 1, 2017) ("The requested transactional data

15   cannot be said to be wholly irrelevant to this antitrust action. The burden objection is also

16   overruled. The scope of work outlined by defendants is well within acceptable parameters

17   for antitrust discovery.").

18       Even assuming none of Defendants' foreign sales met an exception to the FTAIA,

19   the data is relevant to motive and opportunity to conspire, the scope of the conspiracy, and

20   Plaintiffs' allegations concerning fraudulent concealment. *In re Auto. Refinishing Antitrust

21   Litig.*, MDL No. 1426, 2004 WL 7200711, at *4 (E.D. Pa. Oct. 29, 2004) ("evidence of

22   foreign price-fixing activities is relevant in determining the nature and scope of an alleged

23   international conspiracy"); *In re Aspartame Antitrust Litig.*, No. 2:06–CV–1732–LDD,

24   2008 WL 2275531, at *2 (E.D. Pa., May 13, 2008) (foreign transactional data "relate[s], to

25   among other things, the non-U.S. manufacture, sale and distribution of aspartame may

26   prove relevant to establishing the existence of a global conspiracy to allocate the market

27

28

for aspartame, the ability of market participants to engage in domestic price fixing and the mechanisms employed by market participants in price fixing."). Plaintiffs propose that production of foreign transactional data commence immediately once the Court sustains Plaintiffs' complaint.

**B.  DPPs' Position on Defendants' Responses to Plaintiffs' Second Request for Production.**

On December 21, 2018, Plaintiffs served Defendants with their Second Request for Production of Documents ("second RFP"). Plaintiffs' Second RFP seeks documents related to the merits of Plaintiffs' claims, from a limited number of custodians that are identified in Plaintiffs' Consolidated Amended Complaint. Defendants have objected to Plaintiffs' Second RFP on the basis that production of documents related to the merits is not proportional to needs of the litigation.

For now Plaintiffs have held their Second RFP in abeyance. Plaintiffs will serve a revised Second RFP at a later appropriate time.

**C.  DPPs' Position on Production of Documents in Response to Defendants' Request for Production**

Defendants served their request for production on December 28, 2018. Defendants' Request for Production of Documents ("Defendants' RFP") seeks many of the same categories of information that Plaintiffs' First RFP seeks. Plaintiffs objected to Defendants' requests to the extent they seek production beyond readily accessible sources of information, which is what the parties have agreed is proportional to the needs of this litigation at this stage. Plaintiffs also objected to the extent Defendants seek downstream sales data for Plaintiffs' sale of Inductors or products containing Inductors.

On March 7, 2019, Plaintiffs and Defendants met and conferred on Defendants' RFP. Plaintiffs have agreed to produce documents from readily accessible sources that are

1   responsive to Defendants' RFP on a rolling basis. Plaintiffs made their first production of

2   over a thousand pages on April 16, 2019, and other productions will be forthcoming.

3          With respect to transactional data, during the March 7, 2019 meet and confer,

4   Plaintiffs advised Defendants that they are seeking to provide whatever transactional data

5   is available by July 1, 2019, to which no Defendant objected.[3] Plaintiffs still anticipate

6   producing the  transactional data that they are able to locate on that timeline.

7   **II.     Flextronics' Position**

8          Flex takes no position with respect to the progress of discovery thus far, because Flex has

9   not yet been involved in the discovery process.  As set forth above, Defendants should

10  immediately produce all materials produced to the DPPs to Flex, and should include Flex in future

11  productions.   At this stage, both the DPPs and the Defendants' characterizations of the

12  "Plaintiffs'" positions thus far, whatever their merit, necessarily do not apply to Flex.   Flex and

13  DPPs have agreed to coordinate future discovery efforts to minimize undue expense and reduce

14  the likelihood of duplicative effort.    Flex and DPPs are conferring regarding the terms of an

15  appropriate case management order that we will submit to the Court.

16         Flex opposes Defendants' effort to limit the scope of discovery in this action to data or

17  documents regarding domestic purchases.    Unlike the DPP action, Flex's action includes claims

18  by foreign Flex entities that seek to recover damages associated with foreign purchases of

19  inductors where either: (a) the inductors were purchased to manufacture products for Flex's U.S.

20  customers; or (b) the inductors were purchased to manufacture products shipped to the United

21  States.[4]   As Defendants concede, Flex's similar claims in the Capacitors litigation are proceeding

22  to trial following a two-step separate summary judgment process.  *See In re Capacitors*, 2018 WL

23

24  [3] Defendants' contention that Plaintiffs have received a July 1, 2019 "extension" for a deadline for
their transactional data production is incorrect. The April 1 date set by the Court applied only to
25  the "Deadline for Defendants to Complete Substantial Production of Transactional Data." ECF
No. 228. The Court's order pertains only to Defendants, and was entered two months before
26  Defendants even served the requests  that seek transactional data from Plaintiffs.
[4] Unlike the DPP action, Flex's action also: (a) does not seek to represent a class; and (b) does not
27  assert claims arising from purchases of manufactured goods containing inductors

28

4558265, at *1 (N.D. Cal. Sept. 20, 2018) (denying summary judgment as to the category of foreign purchase claims asserted here).   Flex's claims arising from foreign purchases necessarily require discovery of foreign transaction data.

Flex also opposes Defendants request to stay all merits discovery pending resolution of the motion to dismiss.  There is essentially no chance given the evidence adduced thus far that Flex's action will be dismissed in its entirety.   A stay would thus accomplish nothing besides delay.

## III.  Defendants' Position

### A.  Plaintiffs' First Request for Production

#### 1.  Non-Transactional Data Documentary Discovery In Response to Plaintiffs' First Request for Production

As acknowledged above, Plaintiffs[5] stated, at the parties' meet and confer teleconferences on September 25 and October 11, 2018, that discovery sought by the First Requests is limited to that which is proportional to the needs of the case at this juncture. Specifically, Plaintiffs seek categories of existing and "readily accessible" documents and data stored in central files.  Defendants have conducted their investigations for responsive materials in accordance with those parameters and within the scope of discovery permitted by Magistrate Judge Cousins' subsequent order regarding non-merits discovery, which stated that discovery "must be proportional to the needs of the case at this juncture" (ECF No. 205).  As Plaintiffs also acknowledge, Defendants have exchanged extensive correspondence with Plaintiffs, met and conferred regularly and made numerous productions of documents and data to Plaintiffs in response to their First Requests.  In other words, Defendants have worked, and continue to work, diligently to comply with their discovery obligations in the most efficient manner possible and in accordance with Magistrate Judge Cousins' order and the parties' agreements implementing that order. Plaintiffs' assertion that "Defendants have taken a restrictive view of their discovery

---

[5] As used in this section, Plaintiffs refers to the DPP Plaintiffs.  Where relevant, Flextronics is referred to as Flex.

obligations … and have not produced certain documents that have been identified because in their view these documents are not 'readily accessible'" is perplexing.  Plaintiffs themselves articulated the "readily accessible" standard they now seek to characterize as "restrictive" (and which they have also applied to their own document productions: "Plaintiffs have agreed to produce documents from **readily accessible sources** that are responsive to Defendants' RFP on a rolling basis" (emphasis added)) as reflecting "what the parties have agreed is proportional to the needs of this litigation at this stage" (*see* above at 7).

Plaintiffs insist that "[s]ubstantial work remains to be done on non-transactional discovery responsive to Plaintiffs' First RFPs" and then go on to list certain materials they seek in the form of follow-up productions (see above at p. 2), some of which are, to the extent they exist, within the scope of the First Requests, and some of which are plainly not. As to the materials listed which are sought by the First Requests, all Defendants confirm they have produced, to the extent they exist and are readily accessible, most or all materials responsive to Plaintiffs' requests for information relating to revenues, production and costs for off-the-shelf inductors and that either no additional responsive, readily accessible documents exist, or that they are continuing to cooperate individually with Plaintiffs to investigate whether additional responsive materials shall be produced.  Certain Defendants have stated repeatedly that they do not track inductors in a way to be able to provide information on off-the-shelf inductors, even with respect to transactional data.  In fact, contrary to Plaintiffs' footnoted assertion above that "[n]o Defendant claims they produced transactional data concerning products not found in the product catalogs they produced," several Defendants have expressly told Plaintiffs that their transactional data *does* include custom designed inductors that were not available in product catalogs because those Defendants were not able to reasonably limit their transactional data to off-the-shelf

1    inductors.  Defendants will continue to engage with Plaintiffs to make sure that they

2    understand this point.

3           Moreover, to the extent Plaintiffs seek "[a]n understanding of Defendants'

4    transactional data and related information, including whether any data is missing,"

5    Defendants are providing responses appropriately and in accordance with their discovery

6    obligations.  Plaintiffs' complaint that "no Defendant has produced anything but yearly and

7    quarterly financial reports" is nonsensical bearing in mind that Plaintiffs seek materials

8    held in central files and the start of the relevant period is some 16 years in the past.  Based

9    on their reasonable investigations to date, and subject to any ongoing investigations being

10   carried out in coordination with Plaintiffs, Defendants are not aware of any other

11   responsive and readily accessible materials.  And again, Plaintiffs seek financial reports

12   specifically limited to off-the-shelf inductors, which generally do not exist based on the

13   investigations Defendants have undertaken to date.  Since no Defendant is refusing to

14   produce responsive material that is readily accessible, including financial information, it is

15   unclear how Defendants' wholly appropriate approach to discovery risks jeopardizing any

16   deadlines (which Plaintiffs do not identify with specificity) set by the Court at this

17   juncture.

18

19          Plaintiffs' assertion that Defendants' approach to discovery is "parsimonious" is

20   therefore entirely without merit.  That is especially true where, as discussed below,

21   Plaintiffs have produced no transactional data by April 1 and, at their request, Defendants

22   agreed to extend that production deadline to July 1 without complaint.

23          **B. Transactional Data Documentary Discovery In Response To Plaintiffs' First**

24              **Requests**

25          All Defendants have substantially completed their productions of transactional data in

26   advance of the April 1, 2019 deadline.  Plaintiffs' claim that Defendants' productions are

27

28

1   "incomplete in several material ways" mischaracterizes the status quo in several ways.  *First*, to

2   the extent Defendants have agreed to produce smaller volumes of responsive data that is

3   supplemental to their productions to date, they are coordinating with Plaintiffs in order to do so in

4   an efficient manner.[6]   Moreover, since Plaintiffs will not be producing their transactional data until

5   July 2019, an extension of time to which Defendants did not object, transactional data productions

6   will inevitably extend for several more months, such that these supplemental productions will not

7   impede the Court's schedule.  *Second*, Plaintiffs expressly did not seek "global data" from

8   "foreign sales" (*see* ECF 279, at 3:7-9), and cannot now claim that the omission of such data,

9   production of which Defendants maintain is not proportional to the needs of the case at this

10   juncture, renders the productions "incomplete."  Moreover, as noted, certain Defendants have

11   clearly informed Plaintiffs that their productions of data were not limited to off-the-shelf inductors

12   because the data systems of those Defendants were unable to segregate off-the-shelf from

13   customized inductors.

14        **Production of Foreign Transactional Data:** As Plaintiffs admit, the parties have agreed

15   to focus on U.S. sales in the early stages of this litigation and Plaintiffs are not currently pursuing

16   the production of foreign transactional data.  Therefore, there is no dispute or issue to describe to

17   the Court at this time.  Defendants continue to take the position that the production of global

18   transactional data is not proportional at this juncture in the case and reserve their rights to oppose

19   production if and when actually sought.  Previously, Plaintiffs articulated a narrow reason for

20   wanting any transactional data before resolution of the motion to dismiss: to understand "the

21   commerce that is at issue, the [a]ffect[ed] commerce."  Hr'g Tr., Dec. 17, 2018, at 24:6-13.  The

22   Consolidated Amended Complaint ("CAC") expressly limits the alleged "AFFECTED

23   COMMERCE" to "off the shelf" Inductors "billed to" or "shipped to" the U.S. See ECF 184 ¶ 67

24   ("Defendants sold Inductors . . . in the United States. . . . Inductors are shipped . . . into the United

---

25   [6] For example, Panasonic has already produced the vast majority of its transactional data for the
26   period April 1, 2001-December 31, 2016, and has informed Plaintiffs that it intends to provide a
    supplemental production of data in relation to a small volume of inductor sales for a business
27   division of Panasonic Corporation of North America ("PNA") as soon as reasonably practicable.

28

States."), ¶ 76 ("Defendants . . . shipped millions of Inductors . . . into the United States. . . . Inductors that were shipped to [other] countries . . . were billed to United States companies."), ¶ 228 (alleged conspiracy regarding "the prices of Inductors sold to customers in the United States" and "the effect . . . on the prices of Inductors sold in the United States during the Class Period") (emphases added).  Consequently, Defendants agreed to produce, and have so produced, transactional data with "bill to" or "ship to" addresses in the United States.[7]  ***Plaintiffs expressly agreed to that limitation as what is proportional to the case at this juncture.***

Plaintiffs now assert that, at some point in the future, they will seek data on "foreign sales . . . of Inductors that were made abroad and incorporated into products imported into the U.S." However, the Plaintiffs that purchased "products containing inductors" from an unidentified Panasonic entity have failed to assert any legal basis for their claims, and those claims fail because they are indirect purchaser claims and are barred by both *Illinois Brick* and the FTAIA.  *See* ECF 278, at 13-20.

In the event that the motion to dismiss is denied in part or in whole, which Defendants believe is unlikely, the parties can confer over whether global data is—rather than "may" be— necessary based on whatever claims or allegations (if any) survive or appear in an amended complaint (if any).

To the extent that occurs, it is useful to note that neither the Resistors or Capacitors litigation—cited by Plaintiffs—actually support production of foreign transactional data in this case.  The *Resistors* case involved a direct purchaser plaintiff class ***and*** an indirect purchaser class, with the latter seeking damages based on, among other things, overseas indirect sales that would be reflected in global sales data.  *See, e.g.*, *In re Resistors Antitrust Litig.*, Case No. 15-3820-JD, Discovery Letter, ECF No. 309 (N.D. Cal. May 31, 2017).

And, the real lesson from the *Capacitors* litigation with respect to the Plaintiffs is that after

---

[7]  A portion of the data from one Defendant is not limited to "bill to" or "ship to" addresses in the United States because that historical data for its U.S. entity (the only entity that sold inductors to or in the United States) did not include adequate address information and therefore the Defendant produced all sales from that entity.

having the court expend judicial resources to issue a general ruling on potential claims based on foreign sales under the FTAIA, the direct purchaser plaintiff class did not end up pursing claims for foreign sales.  *Compare* 2016 WL 5724960, at *6 (general ruling),  *with* 2018 WL 4558265, at *1 (N.D. Cal. Sept. 20, 2018) (DPP class did not seek "Phase II" ruling to pursue foreign sales).  The only plaintiff that pursued foreign sales under the FTAIA in *Capacitors* was an individual opt-out plaintiff based on company-specific allegations of proximate cause.  *Id*. at 5.  Those allegations were possible for an individual plaintiff, but any theory that depends on individualized proof of proximate cause cannot be pursued in this litigation by the DPP class.[8]

In this context, the expansion to include global sales would substantially increase the data that would need to be collected and analyzed by Defendants.  And that work would bring the inherent difficulties, including language barriers, related to collecting and producing foreign data.  For now, data with "bill to" and "ship to" addresses in United States will provide Plaintiffs with the information they seek to understand at this juncture without requiring potentially unnecessary further discovery and without prejudicing Plaintiffs' ability to seek this data if their pleadings survive and they are able to articulate actual relevance proportional to the needs of the case and the issues in dispute.  And, as noted, Plaintiffs have previously agreed to this limitation.

### C.  DPPs' Responses to Defendants' Request for Production

Only two Plaintiffs have produced any documents to date: Arch Electronics (367 pages) and Dependable Component Supply Corp. (635 pages).  Based on Defendants' preliminary review, Arch's production consists almost entirely of invoices for their purchases of things like stereos, VCRs, etc. and do not show the purchase of any inductor from any Defendant.  Nor do they show whether the inductors that were in the finished products were customized or off-the-shelf, or were even manufactured by a Defendant.  Dependable's production includes the company's annual report filing forms from 1997 to 2012 (which calls into question why Plaintiffs

---

[8]  The individual *Capacitors* plaintiff was Flextronics.  Defendants reserve all of their arguments if Flextronics seeks to pursue similar types of claims here.

1   complain about Defendants' productions of quarterly and annual reports), but do not appear to

2   actually contain the annual reports.  Plaintiffs have not produced any transactional data.

3   Defendants did not object to Plaintiffs' request to substantially complete their productions by July

4   1.  To the extent Defendants have concerns with Plaintiffs' productions, Defendants will raise

5   those concerns with Plaintiffs and only bring those concerns to the Court's attention if the parties

6   are unable to resolve any disputes.

7            **D.  Next Steps in Discovery**

8            Plaintiffs state that they "will serve a revised Second RFP at a later appropriate time."

9   Defendants propose that further discovery be stayed pending the Court's ruling on Defendants'

10  motion to dismiss, except for completion of the parties' transactional data productions and

11  completion of Plaintiffs' non-merits productions from their readily accessible central files.  Once

12  the scope of the claims and parties are settled, discovery will be able to be guided by this

13  preliminary discovery without unduly and potentially unnecessarily burdening any party with

14  discovery that may become moot depending on the Court's ruling.  At that point, the parties can

15  confer on the most efficient way to conduct and stage discovery.

16           As for Flex, their requests above demanding Defendants' productions to the DPP Plaintiffs

17  are made here for the first time.  And Flex's requests were not raised with Defendants until the

18  DPP Plaintiffs shared Flex's portion of this joint report late in the afternoon on the day the report

19  is due.  Flex has served no discovery.  Defendants will confer with Flex about appropriate next

20  steps.  As for Flex's arguments about foreign sales data, again, Flex has not served any document

21  requests and Defendants reserve all of their objections.

22

23   Dated: April 22, 2019

24

25                                    Respectfully submitted,

26                                    **BLEICHMAR FONTI & AULD LLP**

27

28

By: */s/ Lesley E. Weaver*
     Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com

**HAUSFELD LLP**

By: */s/ Michael P. Lehmann*
     Michael P. Lehmann

Michael P. Lehmann (SBN 77152)
Bonny E. Sweeney (SBN 176174)
Christopher L. Lebsock (SBN 184546)
Samantha Stein (SBN 302034)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

*Interim Co-Lead Counsel for the Direct
Purchaser Class*

**WILLIAMS MONTGOMERY &
JOHN LTD.**

By: */s/ Charles E. Tompkins*
     Charles E. Tompkins

Charles E. Tompkins (*pro hac vice*) 1200
18th Street NW, Suite 325
Washington D.C. 20036
Telephone: (202) 791-9951
Facsimile: (312) 630-8586
cet@willmont.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eric R. Lifvendahl (*pro hac vice*)
233 S. Wacker Drive, Suite 6800
Chicago, IL 60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
erl@willmont.com

*Counsel for Flextronics International
USA, Inc. in Case No. 5:19-cv-00078-EJD
(N.D. Cal.).*
**KIRKLAND & ELLIS LLP**

By: */s/ Eliot A. Adelson*
       Eliot A. Adelson

Eliot A. Adelson (SBN 205284)
Margaret A. Webb (SBN 319269)
555 California Street
27th Floor
San Francisco, CA 94104
eadelson@kirkland.com
margaret.webb@kirkland.com

Tammy A. Tsoumas (SBN 250487)
John C. Korevec (SBN 310157)
333 South Hope Street
Los Angeles, CA 90071
ttsoumas@kirkland.com
john.korevec@kirkland.com

James Mutchnik (*pro hac vice*)
300 North LaSalle Street
Chicago, IL 60654
james.mutchnik@kirkland.com

*Attorneys for Defendants Murata
Electronics North America, Inc., Murata
Manufacturing Co., Ltd., and Murata
Power Solutions, Inc.*

**GIBSON DUNN & CRUTCHER LLP**

By: */s/ Daniel G. Swanson*
       Daniel G. Swanson

1

2

3

4

5

Daniel G. Swanson (SBN 116656)
Frances A. Smithson (SBN 313700)
333 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 229-7000
Fax: (213) 229-7520
dswanson@gibsondunn.com
fsmithson@gibsondunn.com

6

7

8

9

10

Scott Hammond (*pro hac vice*)
Cynthia Richman (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Tel: (415) 393-8200
Fax: (415) 393-8306
shammond@gibsondunn.com
crichman@gibsondunn.com

11

12

13

*Attorneys for Defendants Panasonic
Corporation of North America; and
Panasonic Corporation*

14

15

16

**LATHAM & WATKINS LLP**

17

18

By: */s/ Marguerite Sullivan*
    Marguerite Sullivan

19

20

21

22

23

Marguerite Sullivan (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com
allyson.maltas@lw.com

24

25

26

Alfred Carroll Pfeiffer, Jr.
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8898
Fax: (415) 391-0600
al.pfeiffer@lw.com

27

28

*Attorneys for Defendants Sumida America Components, Inc.; Sumida Corporation; and Sumida Electric Co., Ltd.*

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: */s/ Michael A. Rubin*
        Michael A. Rubin

Daniel B. Asimow
Benjamin Halbig
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
daniel.asimow@arnoldporter.com
ben.halbig@arnoldporter.com

James L. Cooper
Michael Adam Rubin
601 Massachusetts Ave., NW
Washington, DC 20001
James.Cooper@apks.com
michael.rubin@apks.com

*Attorneys for Defendants Taiyo Yuden (U.S.A.) Inc. and Taiyo Yuden Co., Ltd.*

**MORGAN LEWIS & BOCKIUS LLP**

By: */s/ Colin C. West*
        Colin C. West

Colin C. West (SBN 184095)
One Market
Spear Street Tower
San Francisco, California 94105-1596
Tel: (415) 442-1000
Fax: (415) 442-1001
colin.west@morganlewis.com

J. Clayton Everett, Jr. (*pro hac vice*)

Scott A. Stempel (*pro hac vice* forthcoming)
Greta L. Burkholder (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
San Francisco, California
Tel: (202) 739-3000
Fax: (202) 739-3001
clay.everett@morganlewis.com
scott.stempel@morganlewis.com
greta.burkholder@morganlewis.com

*Attorneys for Defendants TDK U.S.A.*
*Corporation; TDK Corporation; TDK-*
*EPC Corporation; and TDK Corporation*
*of America*

**PILLSBURY WINTHROP SHAW**
**PITTMAN LLP**

By:  */s/ Roxane A. Polidora*
        Roxane A. Polidora

Roxane A. Polidora (SBN 135972)
Jacob R. Sorensen  (SBN 209134)
Four Embarcadero Center
22nd Floor
San Francisco, CA 94111-5998USA
Tel: (415) 983-1000
Fax: (415) 983-1200
roxane.polidora@pillsburylaw.com
jake.sorensen@pillsburylaw.com

*Attorneys for Defendants Tokin*
*Corporation and Tokin America, Inc.*

**KESSENICK GAMMA & FREE, LLP**

By:  */s/ J. Maxwell Cooper*
        J. Maxwell Cooper

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J. Maxwell Cooper (SBN 284054)
Michael A. Gawley (SBN 294190)
44 Montgomery Street, Suite 3880
San Francisco, CA 94104
Tel: 415-362-9400
Fax: 415-362-9401
mcooper@kgf-lawfirm.com
mgawley@kgf-lawfirm.com

*Attorneys for Defendant Sagami Elec Co.,
Ltd. and Sagami America Ltd.*

Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories above.

Date: April 22, 2019

*/s/ Matthew S. Weiler*
Matthew S. Weiler